Christopher A. Carr (#44444)
ccarr@afrct.com
Yaw-Jiun (Gene) Wu (#228240)
gwu@afrct.com
ANGLIN, FLEWELLING, RASMUSSEN
CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue, Suite 600
Pasadena, CA 91101
T: (626) 535-1900
F: (626) 577-7764

Attorneys for Defendant
AMERICA'S SERVICING COMPANY, a
division of Wells Fargo Bank, N.A.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| DANIEL MAJOR EDSTROM, an individual; and TERI ANNE EDSTROM, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>NDEX WEST, LLC, a Delaware limited liability company; MORTGAGE LENDERS NETWORK USA, INC., a Delaware corporation; AMERICA's SERVICING COMPANY, an entity form unknown; MORTGAGE ELECTRONIC REGISTRATION SERVICES (MERS); and DOES 1-10,000,<br><br>Defendants. | CASE NO.:<br><br>NOTICE OF REMOVAL BY DEFENDANT AMERICA'S SERVICING COMPANY PURSUANT TO 28 U.S.C. §1441(b)<br><br>[FEDERAL QUESTION] |

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND THE HONORABLE UNITED

STATES DISTRICT JUDGE:

PLEASE TAKE NOTICE that defendant AMERICA'S SERVICING COMPANY, a

division of Wells Fargo Bank, N.A. ("Defendant"), hereby provides Notice of Removal pursuant

to 28 U.S.C. §1441, *et seq.*, and hereby removes to this Court the state court action described

below.

1.      JURISDICTION.  As more particularly set forth below, this court has jurisdiction

of this case under 28 U.S.C. §1331 because claims arising under the laws of the United States

1   (*inter alia*, 12 U.S.C. §§2601-2617, 15 U.S.C. §1601, *et seq.* and 15 U.S.C. §1639, *et seq.*) are

2   being made.

3        2.        INTRADISTRICT ASSIGNMENT.  This case is being removed to the

4   Sacramento Division of this court because the existing state court case is pending in El Dorado

5   County.

6        3.        On December 14, 2009, Case Number PC20090773 (the "State Court Action")

7   was filed in the El Dorado County Superior Court for the State of California, entitled "*Daniel*

8   *Major Edstrom and Teri Anne Edstrom vs. NDEX West, LLC; Mortgage Lenders Network USA,*

9   *Inc.; America's Servicing Company; Mortgage Electronic Registration Services (MERS; and*

10  *DOES 1-10,000, inclusive.*"  A copy of the Complaint in the State Court Action is attached as

11  Exhibit A.  None of the named Defendants ever appeared in the State Court Action.  Attached as

12  Exhibit B are all of the other documents in Defendant's possession from the State Court Action,

13  which were either filed by the plaintiff or issued by the Court.  There is no proof of service

14  relating to any defendant in the State Court Action and therefore no joinder of other defendants in

15  this Notice is required.

16       4.        Paragraph 319 of the Twenty-Seventh Cause of Action of the Complaint contains

17  claims against Defendant based upon alleged violations of 12 U.S.C. §§2601-2617, commonly

18  called the Real Estate Settlement Procedures Act ("RESPA").  Paragraph 322 of the Twenty-

19  Eighth Cause of Action of the Complaint contains claims against Defendant based upon alleged

20  violations of 15 U.S.C. §1601, *et seq.* commonly called the Truth in Lending Act ("TILA").

21  Paragraph 328 of the Thirtieth Cause of Action of the Complaint contains claims against

22  Defendant based upon alleged violations of 15 USC §1639, commonly called the Home

23  Ownership and Equity Protection Act, ("HOEPA").  Thus, claims arising under the laws of the

24  United States, or "Federal questions," are presented, which gives this court jurisdiction over the

25  claims under 28 U.S.C. §1331 and makes the State Court Action removable to this court under 28

26  U.S.C. §§1441(a) and (b).

27       5.        This Notice is timely because it is being filed within thirty days of the filing of the

28  Complaint in the State Court Action, as required by 28 U.S.C. §1446(b).

1    6.    Pursuant to 28 U.S.C. §1446(a), Defendant files this Notice in the District Court of

2  the United States for the district and division within which the State Court Action is pending.

3    7.    Pursuant to 28 U.S.C. §1446(d), a copy of this Notice with its attachments will

4  promptly be served on plaintiff in the State Court Action and notice thereof will be filed with the

5  clerk of the El Dorado County Superior Court.

6    WHEREFORE, Defendant hereby removes El Dorado County Superior Court Case

7  Number PC020090773 to the Sacramento Division of the United States District Court for the

8  Eastern District of California.

9                              Respectfully submitted,

10  Dated:  January 13, 2010        ANGLIN, FLEWELLING, RASMUSSEN,
                                    CAMPBELL & TRYTTEN LLP
11

12                              By:    /s/ Christopher A. Carr
                                         Christopher A. Carr
13                                   Attorneys for
                                     AMERICA'S SERVICING COMPANY
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  RICHARD A. HALL (SBN 135483)
   **BOTTOMLINE LAWYERS**
2  985 Lincoln Way, Suite 206
   Auburn, California 95601
3  Telephone: (530) 888-7100
   Facsimile: (866) 305-1238
4

5  Attorneys for Plaintiffs
   DANIEL MAJOR EDSTROM, an individual;
6  and TERI ANNE EDSTROM, an individual

7                    SUPERIOR COURT OF CALIFORNIA

8                        COUNTY OF EL DORADO

9

10 DANIEL MAJOR EDSTROM, an          )   CASE NO.
   individual; and TERI ANNE         )
11 EDSTROM, an individual,           )   COMPLAINT AND DEMAND FOR JURY
                                     )   TRIAL
12        Plaintiffs,                )
                                     )
13 v.                                )
                                     )
14 NDEX WEST, LLC, a Delaware limited )
   liability company; MORTGAGE       )
15 LENDERS NETWORK USA, INC., a      )
   Delaware corporation; AMERICA'S   )
16 SERVICING COMPANY, an entity      )
   form unknown; MORTGAGE            )
17 ELECTRONIC REGISTRATION           )
   SERVICES (MERS); and DOES 1-      )
18 10,000,                           )
                                     )
19        Defendants.                )
                                     )

20

21        1.      At all times relevant herein plaintiffs have been residents of the County of El

22 Dorado, state of California and the owner of real property, including but not limited to the

23 property at issue herein, 2690 Brown Bear Court, Cool, California 95614, APN 073-141-03-100

24 (hereafter, "Real Property").

25        2.      Defendant Mortgage Lenders Network USA, Inc.  (hereafter, "Mortgage

26 Lenders") at all times herein mentioned, was a Delaware corporation, and doing business in the

27 County of El Dorado, State of California, and was the original Lender for Plaintiffs' Deed of

28 Trust Deed and Note. Mortgage Lenders forfeited its status to do business in California on some

EL DORADO CO. SUPERIOR CT.

**FILED** DEC 1 4 2009

BY _____
              Deputy

PC 200 90773

COMPLAINT AND DEMAND FOR JURY TRIAL      **E. Romero**  -1-

1  unknown date.

2      3.      Defendant MORTGAGE ELECTRONIC REGISTRATION SERVICES

3  (hereinafter "MERS") at all times herein mentioned was presumed to be doing business in the

4  County of El Dorado, State of California and alleged to be the Beneficiary regarding Plaintiffs'

5  Real Property as described above and as situated in El Dorado County, California.

6      4.      Defendant NDex West LLC (hereinafter "NDex West") at all times herein

7  mentioned, was a Delaware limited liability company, registered to do business in California and

8  was doing business in the County of El Dorado and is handling the Notice of Trustee's Sale for

9  this property.

10      5.      On information and belief, defendant American's Servicing Company at all times

11  herein mentioned was doing business in the State of California and is the contact agency on the

12  Notice of Default recorded in El Dorado County on December 23, 2008.

13      6.      Plaintiffs are ignorant of the true names and capacities of defendants sued herein

14  as DOES 1 through 10,000, inclusive, and therefore sues these defendants by such fictitious

15  names and all persons unknown claiming any legal or equitable right, title, estate, lien, or interest

16  in the property described in the complaint adverse to plaintiff's title, or any cloud on Plaintiffs'

17  title thereto. Plaintiff will amend this complaint to allege their true names and capacities when

18  ascertained.

19      7.      Plaintiffs are informed and believe and thereon alleges that, at all times herein

20  mentioned each of the defendants sued herein was the agent and employee of each of the

21  remaining defendants. Plaintiffs alleges that each and every defendant alleged herein ratified the

22  conduct of each and every other defendant. Plaintiffs further allege that at all times said

23  defendants were was acting within the purpose and scope of such agency and employment.

                        FACTUAL ALLEGATIONS

25      8.      Plaintiffs purchased the foregoing Real Property on or about September 7, 2005,

26  when they financed their purchase through Mortgage Lenders, by virtue of a Deed of Trust. The

27  loan was in the sum of $500,000.00 by monthly payment commencing thereof. Plaintiff executed

28  an "Adjustable Rage Note" promising to pay Mortgage Lenders, at the rate of 7.2000%, the

                COMPLAINT AND DEMAND FOR JURY TRIAL                    -2-

1   monthly amount of $3,393.95 for 360 months.

2       9.    Plaintiffs are informed and believe that directly after, Mortgage Lenders caused
3   Mortgage Electronic Registration Systems ("MERS") to go on title as the "Nominee
4   Beneficiary," which is routinely done in order to hide the true identity of the successor
5   Beneficiaries when and as the loan was sold.  MERS, however, acted as if they were the actual
6   beneficiary although a Nominee is an entity in whose name a security is registered though true
7   ownership is held by another party, in other words MERS is not the Beneficiary but is used to
8   hide the true identity of the Beneficiary.  Based on this failure to disclose, and the lack of
9   consideration paid by MERS, Plaintiffs allege that the Deed of Trust was never perfected and is a
10  nullity as the MERS recording separates the Debt from the Lien, and this is more so especially
11  upon a sale of the Note and Trust Deed.

12      10.    Plaintiffs further allege that MERS acts as a Nominee for more than one principal,
13  and conceals their identity therefore if a Nominee is the same as an agent. MERS cannot act as an
14  agent for multiple Banks, insurance and title companies and Mortgage Companies because of a
15  serious Conflict of interest.  In addition Plaintiffs allege that a Deed of Trust cannot lawfully be
16  held by a Nominee who has no financial interest in the instrument without disclosing the identity
17  of the actual Beneficiary, and that if a party with no interest in the Note records it in their name,
18  the recorded deed is Nullity.

19      11.    Plaintiffs further allege that MERS failure to transfer beneficial interests as the
20  Note and deed are sold further renders the Deed recording a nullity.

21      12.    Plaintiffs further allege that defendants allege that Plaintiffs became in default of
22  their loan and that payments were due to MERS and Mortgage Lenders as Beneficiary. However
23  this default of the loan was occasioned by the high payments, the structure of the loan and
24  interest rate and the fact that Plaintiffs were not provided full disclosure of the terms of their
25  loan.

26      13.    Plaintiffs were forced into default of their payments due to non-full disclosure of
27  their loan through Mortgage Lenders.  Moreover, the Declaration of Due Diligence attached to
28  the Notice of Default is void because the required "penalty of perjury" and signature of a person

1   with actual knowledge is missing (discussed later in the complaint).

2        14.     Plaintiffs allege that the loan contract was procedurally and substantively

3   unconscionable because at the time, defendants did not did not disclose to Plaintiffs the terms

4   and conditions of the repayment, and Plaintiffs executed documents without any explanation

5   whatsoever.

6        15.     Plaintiffs allege that the employees and/or agents of Mortgage Lenders

7   represented that said employees and/or agents could work-around the fact that Plaintiffs' credit

8   was not in good standing and could get Plaintiffs approved for the loan.

9        16.     Plaintiffs allege that the loan contract, deed of trust and accompanying documents

10  were offered to Plaintiff on a take it or leave it basis.

11       17.     Further, on information and belief, Plaintiffs allege that the Defendants charged

12  and obtained improper fees for the placement of their loan as "sub-prime" when they qualified

13  for a prime rate mortgage which would have generated less in fees and interest.

14       18.     On information and belief, Plaintiffs alleges that the service of the purported note

15  was, without their knowledge, by some means transferred from or by Mortgage Lenders either

16  completely or by association or other means to MERS, who unknown to Plaintiff provided

17  services in various forms to be determined to others which were of such a nature to render them a

18  "Servicer."

19       19.     Also on or about September 7, 2005 Plaintiffs executed a "Deed of Trust" which

20  cited the lenders as Mortgage Lenders and stated in the definition section that: (E) "MERS is

21  Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting

22  solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary

23  under this Security Instrument."

24       20.     Plaintiffs allege that Defendant Mortgage Lenders had a superior bargaining

25  strength over Plaintiff, and that Plaintiffs were relegated only the opportunity to adhere to the

26  contract or reject it; that Mortgage Lenders drafted all of the documents related to the loan; that

27  no negotiations were possible between Plaintiff and Mortgage Lenders, and the remaining

28  defendants; and that the contract was a contract of adhesion.

21.     Plaintiffs alleges that the loan was unconscionable in that the repayment terms were unfair and unduly oppressive, because the payments exceeded Plaintiffs' entire combined income and as such, Defendants, and each of them, cannot enforce the terms and conditions of the loan against Plaintiffs, and any non-judicial foreclosure arising therefrom is void.

22.     Plaintiffs are informed and believes and thereupon alleges that Defendants, especially and each of them, entered into a fraudulent scheme, the purpose of which was to make a loan to Plaintiffs, which Defendants, and each of them, were keenly aware that Plaintiffs could not afford, at a cost way above the then prevailing market rate; made a loan to Plaintiffs and falsely represented to Plaintiffs that they could not qualify for any other financing; that Plaintiff could not qualify under any reasonably underwriting guidelines; that such scheme was devised to extract illegal and undisclosed compensation from Plaintiffs by virtue of an undisclosed yield spread premium and which Defendants, and each of them, shared in some presently unknown percentage.

23.     Plaintiffs are informed and believe and therefore allege that the loan, after it was originated and funded, sold on multiple occasions, bundled into a group of Trust Deeds and subsequently sold to investors as a Derivative, "Mortgage Backed Security", and that therefore none of these defendants, and each of them, own this loan, or Note and cannot be and are not the Beneficiary, or lawfully appointed trustee, and have no right to declare a default, to cause notices of default to issue or to be recorded, or to foreclose on Plaintiffs' interest in the subject property,

24.     Defendants and each of them were not the note Holder or the Note holder in due course or any Beneficiary at any time in regards to this loan.

25.     Plaintiffs further allege that none of these Defendants, and each of them, were ever disclosed as the beneficiary in accordance with California Code of Civil Procedure section 2924 et seq.

26.     Moreover The California Legislature passed Senate Bill 1137, impacting residential mortgage lenders, foreclosure procedures and eviction procedures.  The Governor has signed this law into effect and it has taken effect as Urgency Legislation.  The law has three pertinent parts.  It amends California Code of Civil Procedure Section 1161(b) regarding notice

COMPLAINT AND DEMAND FOR JURY TRIAL                                          -5-

1   of an eviction.  It adds a provision strengthening the right of local governments to adopt "blight"

2   ordinances and moreover, it modifies the non-judicial foreclosure procedures set forth in

3   California Civil Code Section 2924.  The legislature recognized that the need for such legislation

4   by stating as follows:

5         "…It is essential to the economic health of California for the state
      to ameliorate the deleterious effects on the state economy and local

6         economies and the California housing market that will result from
      the continued foreclosures of residential properties in

7         unprecedented numbers by modifying the foreclosures process to
      require mortgagees, beneficiaries, or authorized agents to contact

8         borrowers and explore options that could avoid foreclosure…"

9       27.    This law became effective in September 2008, and extends on to January 1,

10  2013. This law impacts owner-occupied primary residences only and only loans made on

11  January 1, 2003 and December 3, 2007.  California Civil Code Section 2924 states in

12  part:

13        **"Foreclosure:** The primary purpose for the Statute is
      foreclosure procedures and imposes an unprecedented duty

14        upon lenders relating to contact with borrowers. The Statute
      amends provisions of the non-judicial foreclosure procedures

15        found in California Code of Civil Procedure §2924, by adding
      requirements for meetings, due diligence, and notification of

16        counseling."

17      28.    Some of the more important provisions include all of the following:

18        • The lender, beneficiary or authorized agent must wait thirty (30) days

19  after contact is made with the borrower, or thirty days (30) after satisfying the due

20  diligence requirements set forth in the Statute, in order to commence the filing of a Notice

21  of Default.

22        • The contact requires that the borrower's financial situation be assessed

23  and requires that the borrower and lender explore options for the borrower to avoid

24  foreclosure. ***This was not done by defendants or the lender.***

25        • The Statute requires the lender or their authorized agent to advise the

26  borrower that the borrower has the right to a subsequent meeting within fourteen (14)

27  days of the initial contact.

28        • The borrower is to be provided a toll free telephone number available at

COMPLAINT AND DEMAND FOR JURY TRIAL      -6-

1  HUD for certified housing counseling agencies.

2         • The borrower may designate an authorized agent, such as a counseling

3  service, REALTOR® or attorney, to act as their authorized agent but must expressly

4  approve any workout  agreement reached by that agent.

5         • The Notice of Default must include a declaration indicating that the

6  lender has made the contact or made a diligent effort to make the contact and will not

7  apply in the event of surrender of the property.

8         • If the Notice of Default was already recorded prior to the date of the

9  Statute, this  declaration must be included in Notices of Sale.

10        • In the event that the lender is initially unable to contact the borrower, they

11 must attempt telephone contact on three separate occasions at three different times.

12        • The lender must provide the borrower with an (800) number that will be

13 answered by a live person during normal business hours and provide certain links to web

14 pages. The web page must be a prominent link and must link to the following

15 information:

16         - Options for borrowers who cannot afford their payments.

17         - A list of financial documents to gather when discussing their options.

18         - A toll-free telephone number available by HUD for certified counseling

19 services.

20         - A toll-free telephone number for borrower's to discuss options to avoid

21 foreclosure with the lender or lender's representative. *Defendants did not fully comply*

22 *with this code therefore the title is not duly perfected.*

23     29.    Plaintiffs further allege on information and belief that none of these alleged

24 beneficiaries or representatives of the Beneficiary have the original note to prove that they

25 are in fact the party authorized to conduct the foreclosure.

26     30.    Plaintiffs further allege that the foreclosure proceedings of the Subject

27 Property are not being executed in accordance with the requirements of California Civil

28 Code Sections 2923.5, 2932.5 and Commercial Code section 3302 et seq.

COMPLAINT AND DEMAND FOR JURY TRIAL                        -7-

31.    Plaintiffs further allege that the notices and foreclosure proceedings thus far have ailed to conform with the provisions of California Civil Code Sections 2923.5, 2932.5 et seq., and Commercial Code section 3302 et seq.

32.    Furthermore, the Notice of Default did not have a penalty of perjury disclosure, nor is the agent of personal knowledge. Therefore, it is not a valid declaration.

33.    Plaintiffs further allege that California Civil Code section 2924 et seq. and its subparts are being applied to Plaintiffs in a manner that is unlawful, because at least in part the party acting as the Trustee is proceeding with the foreclosure of Plaintiffs' Subject Property notwithstanding the fact that the Trustee is not in possession of the original Note; that the Note when it was assigned from Mortgage Lenders and its assigns did not covey the power of sale because it violated the terms of California Civil Code section 2932.5; that when the assignment was made, the Note executed by Plaintiffs was no longer a negotiable instrument because the assignment was not physically applied to the Note pursuant to the holding of *Pribus v. Bush,* (1981) 118 Cal.App.3d 1003, although there was sufficient room on the back of the Note to complete the assignment, and as such any foreclosure sale of Plaintiffs' subject property will not conform to the strict mandates of Civil Code section 2924.76.

34.    Plaintiffs allege that the employees and/or agents of Mortgage Lenders represented that said employees and/or agents could work-around the fact that Plaintiffs' credit was not in good standing and could get Plaintiffs approved for the loan. Defendants did not disclose at any time to Plaintiffs that the initial loan payment would exceed their entire income.

35.    Plaintiffs allege that the loan contract, deed of trust and accompanying documents were offered to Plaintiffs on a take it or leave it basis. That by virtue of the method and manner of Defendants carrying out Civil Code section 2924 et seq., any foreclosure of Subject Property will be void ab initio as a matter of law.

36.    Plaintiffs allege that Defendants, and each of them, are engaged in and continue to engage in violations of California law including but, not limited to: Civil

1  Code section 2924 et seq. and 2932.5 et seq., and unless restrained will continue to

2  engage in such misconduct, and that a public benefit necessitates that Defendants be

3  restrained from such conduct in the future.

4      37.    Recently, the California Legislature found and declared the following in

5  enacting California Civil Code 2923.6 on July 8, 2008:

6          "(a)    California is facing an unprecedented threat to its
           state economy because of skyrocketing residential property
7          foreclosure rates in California. Residential property
           foreclosures increased sevenfold from 2008 to 2007, in 2007,
8          more than 84,375 properties were lost to foreclosure in
           California, and 254,824 loans went into default, the first step
9          in the foreclosure process.

10         "(b) High foreclosure rates have adversely affected property
           values in California, and will have even greater adverse
11         consequences as foreclosure rates continue to rise. According
           to statistics released by the HOPE NOW Alliance the number
12         of completed California foreclosure sales in 2007' increased
           almost threefold from 2002 in the first quarter to 5574 in the
13         fourth quarter of that year. Those same statistics report that
           10,556 foreclosure sales, almost double the number for the
14         prior quarter, were completed just in the month of January
           2008. More foreclosures means less money for schools, public
15         safety, and other key services.

16         "(c) Under specified circumstances, mortgage lenders and
           servicers are authorized under their pooling and servicing
17         agreements to modify mortgage loans when the modification is
           in the best interest of investors. Generally, that modification
18         may be deemed to be in the best interest of investors when the
           net present value of the income stream of the modified loan is
19         greater than the amount that would be recovered through the
           disposition of the real property security through a foreclosure
20         sale.

21         "(d) It is essential to the economic health of California for the
           state to ameliorate the deleterious effects on the state economy
22         and local economies and the California housing market that
           will result from the continued foreclosures of residential
23         properties in unprecedented numbers by modifying the
           foreclosure process to require mortgages, beneficiaries, or
24         authorized agents to contact borrowers and explore options
           that could avoid foreclosure. These Changes in accessing the
25         state's foreclosure process are essential to ensure that the
           process does not exacerbate the current crisis by adding more
26         foreclosures to the glut of foreclosed properties already on the
           market when a  foreclosure could have been avoided. Those
27         additional foreclosures will further destabilize the housing
           market with significant, corresponding deleterious effects on
28         the local and state economy.

COMPLAINT AND DEMAND FOR JURY TRIAL                              -9-

1      *"(e) According to a survey released by the Federal Home Loan*
   *Mortgage Corporation (Freddie Mac) on January 31, 2008,*
2      *57 percent of the nation's late-paying borrowers do not know*
   *their lenders may offer alternative to help them avoid*
3      *foreclosure.*

   *"(f) As reflected in recent government and industry-led efforts*
4      *to help troubled borrowers, the mortgage foreclosure crisis*
   *impacts borrowers not only in nontraditional loans, but also*
5      *many borrowers in conventional loans.*

6      *"(g) This act is necessary to avoid unnecessary foreclosures of*
7      *residential properties and thereby provide stability to*
   *California's statewide and regional economies and housing*
8      *market by requiring early contact and communications*
   *between mortgages, beneficiaries, or authorized agents and*
9      *specified borrowers to explore options that could avoid*
   *foreclosure and by facilitating the modification or*
10     *restructuring of loans in appropriate circumstances.*

11     *"Operation Malicious Mortgage' is a nationwide operation*
   *coordinated by the U.S. Department of Justice and the FBI to*
12     *identify, arrest, and prosecute mortgage fraud violators."* San
   Diego Union Tribune, June 19, 2008.  As shown below,
13     Plaintiff were victims of such mortgage fraud.

14     *"Home ownership is the foundation of the American Dream.*
   *Dangerous mortgages have put millions of families in*
15     *jeopardy of losing their homes."*  CNN Money, December 24,
   2007.  The Loan which is the subject of this action to Plaintiffs
16     are of such character.

17     *"Finding ways to avoid preventable foreclosures is a*
   *legitimate and important concern of public policy. High rates*
18     *of delinquency and foreclosure can have substantial spillover*
   *effects on the housing market, the financial markets and the*
19     *broader economy. Therefore, doing what we, can to avoid*
   *preventable foreclosures is not just in the interest of the*
20     *lenders and borrowers. It's in everybody's best interest."* Ben
   Bernanke, Federal Reserve Chairman, May 9, 2008.
21
     38.   Plaintiffs allege that Defendants had the duty to prevent such foreclosure,
22
but failed to so act.  *"Most of these homeowners could avoid foreclosure if present loan*
23
*holders would modify the existing loans by lowering the interest rate and making it fixed,*
24
*capitalizing the arrearages, and forgiving a portion of the loan.  The result would benefit*
25
*lenders, homeowners, and their communities."*  CNN Money, id.
26
     39.   On behalf of former President Bush, former Secretary Paulson encouraged
27
lenders to voluntarily freeze interest rates on adjustable-rate mortgages.  Mark Zandl,
28
chief economist for Mood's commented, *"There is no stick in the plan.  There are a*

1   *significant number of investors who would rather see homeowners default and go into*

2   *foreclosure."* San Diego Union Tribune, id. *"Fewer than 1%· of homeowners have*

3   *experienced any help "from the Bush-Paulson plan."* San Diego Union Tribune, id.

4   Plaintiff' are not of that sliver that have obtained help.

5       40.     The Gravamen of Plaintiffs' complaint is that Defendants violated State

6   laws which were specifically enacted to protect such abusive, deceptive, and unfair

7   conduct by Defendants, and that Defendants cannot legally enforce a non-judicial

8   foreclosure.

9       41.     Plaintiffs are "debtors" as defined by the Rosenthal Act, *California Civil*

10  *Code 1788.2(h).*

11      42.     Defendants are engaged in the collection of debts from consumers using the

12  mail and telephone.

13      43.     Defendants regularly attempt to collect consumer debts alleged to be due to

14  another.

15      44.     Defendants are "debt collectors" as defined by the Rosenthal Act, California

16  Civil Code §1788.2(c).

17      45.     he purported debt which Defendants are attempting to collect from Plaintiffs

18  are a "consumer debt" as defined by the Rosenthal Act, *California Civil Code §1788.2(f).*

19      46.     Defendants Are Not Holders In Due Course Since Plaintiff Was Duped Into

20  An Improper Loan And There Is No Effective Endorsement.

21      47.     Plaintiffs incurred a "debt" as that term is defined by *California Civil 17*

22  *Code §1788(d),* when they obtained a Loan on their Personal Residence.

23      48.     The loan was memorialized via a Deed of Trust and Promissory Note, each

24  of which contains an attorney fees provision for the lender should they prevail in the

25  enforcement of their contractual rights.

26      49.     Plaintiffs have no experience beyond basic financial matters.

27      50.     Plaintiff were ***never explained the full terms of their loan***, including but

28  not limited to the rate of interest how the interest rate would be calculated, what the

COMPLAINT AND DEMAND FOR JURY TRIAL                    -11-

1  payment schedule should be, the risks and disadvantages of the loan, the prepay penalties,
2  the maximum amount the loan payment could arise to.

3      51.    Certain fees in obtaining the loan, were also not explained to the Plaintiffs,
4  including but not limited to "underwriting fees," "MERS registration fee," "appraisal
5  fees," "broker fees", "loan tie in fees," etc.

6      52.    A determination of whether Plaintiffs would be able to make the payments
7  as specified in the loan was never truly made.

8      53.    Plaintiffs' income was never truly verified

9      54.    Plaintiff could not understand any of the documents and signed them based
10  on representations and the trust and confidence the Plaintiffs placed in Defendants'
11  predecessors.

12      55.    Plaintiffs are informed and believe that Defendants and/or Defendants'
13  predecessors established and implemented the policy of failing to disclose material facts
14  about the Loan, failing to verify Plaintiffs' incomes, falsifying Plaintiffs' income,
15  agreeing to accept a Yield Spread Premium, and causing Plaintiffs' Loan to include a
16  penalty for early payment.

17      56.    Plaintiffs are informed and believe that Defendants and/or Defendants'
18  predecessors established such policy so as to profit, knowing that Plaintiffs would be
19  unable to perform future terms of the Loan.

20      57.    Plaintiffs were victims of Fraud in the Factum since the forgoing
21  misrepresentations caused them to obtain the home loan without accurately realizing, the
22  risks, duties, or obligations incurred.

23      58.    The Promissory Note contains sufficient space on the note itself for
24  endorsement whereby any assignment by allonge is ineffective pursuant to *Pribus v.*
25  *Bush,* 118 Cal. App. 3d 1003 (May 12, 1981).

26      59.    Defendants are not holders in due course due to Fraud in Factum and
27  ineffective endorsement.

28

1      60.    Defendants have no standing to enforce a non-judicial foreclosure un

2  California Civil Code section 2923.5.

3      61.    Defendants are strangers to this transaction, and have no authority to go

4  forward with the foreclosure and Trustee's Sale.

5      62.    Plaintiffs executed an adjustable rate note (hereinafter the "Note") and a

6  Deed of Trust to Mortgage Lenders.

7      63.    Mortgage Lenders  is the Lender and only party entitled to enforce the Note

8  and any security interest with it.

9      64.    Defendant America's Servicing Company and NDex West are not listed

10  anywhere in the Deed of Trust or Promissory Note.

11      65.    In California, *California Civil Code § 2932.5* governs the Power of sale

12  under an assigned mortgage, and provides that the power of sale can only vest in a person

13  entitled to money payments:

14        *"Where a power to sell real property is given to a mortgagee,*
         *or other encumbrancer, in an instrument intended to secure*

15       *the payment of money, **the power is part of the security** and*
         *vests in any person who by assignment becomes entitled to*

16       ***payment** of the money secured by the instrument. The power*
         *of sale may be exercised by the assignee if the assignment is*

17       *duly acknowledged and recorded."*

18      66.    The El Dorado County Recorder does not contain any evidence of a

19  recorded assignment from Mortgage Lenders.

20      67.    Mortgage Lenders has never assigned its rights under the Note.

21      68.    The power of sale may not be exercised by any of the Defendants since

22  there was never an' acknowledged and recorded assignment pursuant to California Civil

23  Code § 2932.5.

24      69.    Since the Defendants did not comply with *California Civil Code§2932.5*,

25  the Notice of Default provisions of *California Civil Code § 2924*  were likewise never

26  complied with.

27      70.    America's Servicing Company never complied with the Notice of Default

28  provisions of *California Civil Code §2924.*

71.   NDex West never complied with the Notice of Default provisions of *California Civil Code §2924*.

72.   Defendants lack standing to enforce a non-judicial foreclosure pursuant to California Commercial Code § 3301.

73.   A promissory note is personal property, and the deed of trust securing a note is a mere incident of the debt it secures, with no separable ascertainable market value. California Civil Code §§ 657, 663.  (Kirby v. Palos Verdes Escrow Co., 183 Cal. App. 3d 57, 62.)

74.   Any transfers of the notice and mortgage fundamentally flow back to the note:

"The assignment of a mortgage without a transfer of the Indebtedness confers no right, since debt and security are inseparable and the mortgage alone is not a subject of transfer," Hyde v. Mangan (1891) 88 Cal. 319, 26 P 180, 1891 Cal LEXIS 693; Johnson v, Razy (1919)181 Cal 342, 184 P 657; 1919 Cal LEXIS 358; Bowman v. Sears (1923, Cal App) 63 Cal App 235, 218 P 489, 1923 Cal App LEXIS 199; Treat v. Burns (1932) 216 Cal 216, 13 P2d,724, 1932 Cal LEXIS 554.80.

"A mortgagee's purported assignment of the mortgage without an assignment of the debt which is secured is a legal nullity."   Kelley V. Upshaw (1952) 39 Cal 2d 179, 246 P2d 23, 1952 Cal. LEXIS 248.

"A trust deed has no assignable quality independent of the debt; it may not be assigned or transferred apart from the debt; and an attempt to assign the trust deed without a transfer of the debt is without effect." Domarad v. Fisher & Burke, Inc. (1969 Cal. App. 1st Dist) 270 Cal. App. 2d 543, 76 Cal. Rptr. 529, 1969 Cal. App. LEXIS 1556.

The Promissory Note is a negotiable instrument. Transferring a Deed of Trust by itself does not allow enforcement of the instrument unless the Promissory Note is properly negotiated. Where an instrument has been transferred, enforceability is determined based upon possession.

75.   *California Commercial Code § 3301* limits a negotiable instrument's enforcement to the following:

*"Person entitled. to enforce" an Instrument means* (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the

instrument pursuant to Section 3309 or subdivision (d) of Section 3418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

76.     None of the Defendants are present holders of the instrument.

77.     None of the Defendants are nonholders in possession of the instrument who has rights of the holder.

78.     None of the Defendants are entitled to enforce the instrument pursuant to section *3309 or subdivision (d) of Section 3418.*

79.     Defendants have no enforceable rights under *California Commercial Code 3301(a)* to enforce the negotiable instrument.

80.     Since there is no right to enforce the negotiable instrument, the Notice of Default provisions of *California Civil Code § 2924* and Notice of Sale provisions of *California Civil Code § 2924(f)* have never been complied with, and there is no subsequent incidental right to enforce any deed of trust and conduct a non-judicial foreclosure.

81.     The Trustee and the loan servicer are acting as agents of the Beneficiary and signing documents as the agent of the agent of the agent of the Beneficiary for Plaintiffs Notes and the notices therein, notwithstanding the fact that the Notes are not negotiable.

82.     By virtue of the method and manner of Defendants carrying out Civil Code section 2924 et seq., any foreclosure of the Subject Property will be void ab initio as a matter of law.

83.     MERS was NOT and never has been a Beneficiary of this loan or any other. MERS is solely a registration service for tracking these Trust Deeds and mortgages and also the Notes. MERS records these Trust Deeds in their name as a "nominee", with NO actual ownership interest in these Loans, the purpose is allegedly to allow the sale and transfer of these instruments without the need for further recordation, however what actually occurs is that the real Beneficiary remains obscured, and unknown.

84.     In addition MERS is NOT a TRUSTEE and has no right to collect any TD payments on the Note, neither does MERS have any right to enforce the notes or to be a

1 | party in any Foreclosure proceedings.  Yet MERS has represented itself under oath in this
2 | case to be the BENEFICIARY and in that "stated" but "false" capacity has unlawfully
3 | nominated a successive trustee.

4 |     85.    While MERS remain on title as a "nominee" for the Trust Deed and Note,
5 | both are sold on several occasions afterward and ultimately bundled as a security and sold
6 | to a final investor.  MERS actually helps to conceal the real beneficiary which is in
7 | violation of California statutory law, Cal. Civ. Code Sec. 2924 et. Seq.  The Beneficiary
8 | is completely shielded and not disclosed as required.  Also the forms that they used to
9 | give Notices are defective.

10 |     86.    Evidence in prior cases has demonstrated that MERS is nothing more than a
11 | Registration Service, and does not even service the loan. MERS cannot prove or show
12 | ownership in the form of an "original Note" (i) with proper indorsements, to them, or that
13 | they are actually in the chain of ownership and (ii) to establish the actual relationship of
14 | the holder of the Note, as a Holder in Due course, and (iii) with the right to enforce the
15 | Note.

16 |     87.    April Charney, a lawyer at Jacksonville Legal Aid in Florida, in 2007 had
17 | over 300 foreclosure cases dismissed or postponed due to "MERS" attempting to
18 | foreclose on those Mortgages.

19 | FIRST CAUSE OF ACTION
20 | INJUNCTIVE RELIEF
21 | (Against All Defendants and DOES 1-10,000)

22 |     88.    Plaintiffs reallege and incorporate by reference all above paragraphs as
23 | though set forth at length herein again.

24 |     89.    Cal. Civ. Code section 2932.5 provides a condition precedent for an
25 | assignee of a Deed of Trust prior to commencing a foreclosure:

26 |         "Where a power to sell real property is given to a mortgagee,
        or other encumbrancer, in an instrument intended to secure
27 |         the payment of money, the power is part of the security and
        vests in any person who by assignment becomes entitled to
28 |         payment of the money secured by the instrument.  The power

COMPLAINT AND DEMAND FOR JURY TRIAL

-16-

1   of sale may be exercised by the assignee *if* the assignment is
2   duly **acknowledged and recorded**.  (Emphasis added)

3   90.   Defendants drafted the Deed of Trust, and Plaintiffs had no opportunity to
4   negotiate the terms of the instrument.

5   91.   Defendants failed to record the assignment prior to commencing the
6   foreclosure, and as such the foreclosure is not being conducted in accordance with Cal
7   Civ. Code Sec 2924 and 2932.5.

8   92.   There is in existence a certain written instrument which purports to be a
9   Notice of Default that is in the possession of Defendants, and each of them.

10   93.   Defendants cannot prove that the nonjudicial foreclosure which is occurring
11   strictly complied with the tenets of *California Civil Code Sections* 2923.5 and 2924 in
12   order to maintain an action for possession pursuant to California Code of Civil Procedure
13   section 1161.

14   94.   As of September 6, 2008, *California Civil Code Section* 2923.5 applies to
15   loans made from January 1, 2003, to December 31, 2007, and loans secured by residential
16   real property that are for owner-occupied residences.  For purposes of *Section* 2923.5,
17   "owner-occupied" means that the residence is the principal residence of the borrower.
18   Prior to filing a Notice of Default, Section 2923.5 of the California Civil Code provides
19   in pertinent part: (1) *A trustee may not file a notice of default pursuant to Section 2924*
20   *until 30 days after contact is made* as required by paragraph (2) or 30 days after
21   satisfying the due diligence requirements as described in subdivision (g). (2) *An*
22   *authorized agent shall contact the borrower* in person or by telephone *in order to assess*
23   *the borrower's financial situation and explore options for the borrower to avoid*
24   *foreclosure.* During the initial contact, the mortgagee, beneficiary, or authorized agent
25   shall advise the borrower that he or she has the right to request a subsequent meeting and,
26   if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to
27   occur within 14 days. (3) *A notice of default filed pursuant to Section 2924 shall*
28   *include a declaration from the mortgagee, beneficiary, or authorized agent that it has*

COMPLAINT AND DEMAND FOR JURY TRIAL                           -17-

1  *contacted the borrower, tried with due diligence to contact the borrower as required by*

2  *this section,* or the borrower has surrendered the property to the mortgagee, trustee,

3  beneficiary, or authorized agent.

4      95.      The purpose of permitting a declaration under penalty of perjury, in lieu of a

5  sworn statement, is to help ensure that declarations contain a truthful factual

6  representation and are made in good faith.  (In re Marriage of Reese & Guy, 73 Cal. App.

7  4th 1214, 87 Cal. Rptr. 2d 339 (4th Dist. 1999).

8      96.      In addition to *California Civil Code §2923.5, California Code of Civil*

9  *Procedure §2015.5* states:

10          "Whenever, under any law of this state or under any rule,
            regulation, order or requirement made pursuant to the law of
11          this state, any matter is required or permitted to be supported,
            evidenced, established, or proved by the sworn statement,
12          **declaration**, verification, certificate, oath, or affidavit, in
            writing of the person making the same, such matter may with
13          like force and effect be supported, evidenced, established or
            proved by the unsworn statement, **declaration**, verification, or
14          certificate, in writing of such person which recites that is
            certified or **declared by him or her to be true under penalty**
15          **of perjury**, is subscribed by him or her, and (1), if executed
            within this state, states the date and place of execution; (2) if
16          executed at any place, within or without this state, states the
            date of execution and that is so certified or declared under the
17          laws of the State of California.  The certification or declaration
            must be in substantially the following form: If executed within
18          this state:"I certify (or declare) under penalty of perjury that
            the foregoing is true and correct":

19      _____          _____
20            (Date and Place)                        (Signature)

21      97.      For our purposes we need not look any farther than the Notice of Default

22  to find the declaration is not signed under penalty of perjury; as mandated by new Civil

23  Code §2923.5(c). (Blum v. Superior Court (Copley Press Inc.) (2006) 141 Cal App 4th

24  418, 45 Cal. Reptr. 3d 902 ).

      98.      The Declaration is merely a form declaration with a check box.

25      99.      According to Giles v. Friendly Finance Co. of Biloxi, Inc., 199 So. 2nd 265

26  (Miss. 1967), "an affidavit on behalf of a corporation must show that it was made by an

27  authorized officer or agent, and the officer him or herself must swear to the facts."

28  Furthermore, in Giles v. County Dep't of Public Welfare of Marion County (Ind.App. 1

          COMPLAINT AND DEMAND FOR JURY TRIAL                           -18-

1  Dist.1991) 579 N.E.2d 653, 654-655 states in pertinent part, "a person who verified a

2  pleading to have personal knowledge or reasonable cause to believe the existence of the

3  facts stated therein."

4       100.    Here, the Declaration for the Notice of Default by the agent does not state

5  if the agent has personal knowledge and how he obtained this knowledge.

6       101.    The proper function of an affidavit is to state facts, not conclusions

7  (Lindley v. Midwest Pulmonary Consultants, P.C., 55 S.W.3d 906 (Mo. Ct. App. W.D.

8  2001) and affidavits that merely state conclusions rather than facts are insufficient (Jaime

9  v. St. Joseph Hosp. Foundation, 853 S.W.2d 604 (Tex. App. Houston 1st Dist. 1993).  An

10  affidavit must set forth facts and show affirmatively how the affiant obtained personal

11  knowledge of those facts. (M.G.M. Grand Hotel, Inc. v. Castro, 8 S.W.3d 403 (Tex. App.

12  Corpus Chrisit 1999).

13       102.    Here, The Notice of Default does not have the required agent's personal

14  knowledge of facts and if the Plaintiff borrower was affirmatively contacted in person or

15  by telephone to assess the Plaintiffs' financial situation and explore options for the

16  Plaintiffs to avoid foreclosure.  A simple check box next to the "facts" does not suffice.

17       103.    Furthermore, "it has been said that personal knowledge of facts asserted in

18  an affidavit is not presumed from the mere positive averment of facts, but rather, a court

19  should be shown how the affiant knew or could have known such facts, and, if there is no

20  evidence from which the inference of personal knowledge can be drawn, then it is

21  presumed that from which the inference of personal knowledge can be drawn, then it is

22  presumed that such does not exist." Bova v. Vinciguerra, 139 A.D.2d 797, 526 N.Y. S.2d

23  671 (3d Dep't 1988).

24       104.    The declaration signed by agent does not state anywhere how he knew or

25  could have known if Plaintiff was contacted in person or by telephone to explore different

26  financial options.  It is vague and ambiguous if he himself called plaintiff.

27       105.    Defendants have not adhered to the mandates laid out by legislature before

28  a foreclosure can be considered duly perfected.

106.   Notwithstanding the language in the Notice of Default, Defendants do not have the Deed of Trust, nor do they provide any documents evidencing obligations secured thereby. For the aforementioned reasons, the Notice of Default is void as a matter of law.

107.   Furthermore, according to California Penal Code § 115 in pertinent part:

"(a) Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony.

"Each instrument which is procured or offered to be filed, registered, or recorded in violation of subdivision (a) shall constitute a separate violation of this section."

108.   In addition, California Evidence Code § 669 states in pertinent part:

(a) The failure of a person to exercise due care is presumed if:  (1) He violated a <u>statute</u>, ordinance, or regulation of a public entity; ..."

109.   Here, as stated above the Declaration of Due Diligence as required by Section 2923.5 of the California Civil Code is missing and/or improper for the Notice of Default.

110.   Therefore, Defendants are guilty of a felony for recording the Notice of Default with a false instrument according to California Penal Code §115.  Since Defendants have violated a statute, the failure of them to exercise due care is presumed.

111.   Any trustee's deed upon sale acquired by Defendants will be in violation of statutes including but, not limited to: California Civil Code 2924b etc. et seq., California Civil Code §§§ 2924b(a), 2924b(d), 2924b(e), by failing and/or refusing to mail the Notice of Default within ten business days to Plaintiff; by failing and/or refusing to post and mail the Notice of Default;  by failing and/or refusing to mail Plaintiffs the Notice of Default within one month, pursuant to California Civil Code § 2924b (c (1), (2); by failing and/or refusing to properly set the sale date pursuant to California Civil Code § 2924f(b); by failing and/or refusing to publish the Notice of Sale twenty days

1   prior to the date set for sale pursuant to California Civil Code § 2924f(b); by failing

2   and/or refusing to record the Notice of Sale pursuant to California Civil Code § 2924g(d).

3        112.   The sale of the property at issue will be invalid pursuant to *California*

4   *Civil Code Sections* 2923.5 and 2924, and thus the Defendants' claim of title and

5   allegation thereto are erroneous.

6        113.   Plaintiffs allege that Defendants, and each of them, willfully, wrongfully

7   and without justification, and without privilege are seeking to conduct an invalid

8   foreclosure sale against Plaintiffs' subject property, thereby, slandering Plaintiffs' title

9   thereto.

10       114.   Furthermore, the California Foreclosure Prevention Act became effective

11  June 15, 2009. This new law delays the non-judicial foreclosure process by requiring an

12  **additional 90-day delay (beyond the current three-month period) between recording**

13  **a notice of default and a notice of stay for certain residential properties**. The law

14  applies to: 1. Loans recorded between January 1, 2003 and January 1, 2008, inclusive, 2.

15  The borrower occupies the property as his/her principal residence and occupied it at the

16  time the loan became delinquent; 3. A notice of default has been recorded on the

17  property; and 4. The loan is secured by a first lien on residential property that is located in

18  California.

19       115.   In the instant case, Plaintiffs property is their principal place of residence

20  and their deed is within the time limitations stated hereinabove. Therefore, the California

21  Foreclosure Prevention Action applies and Plaintiffs must be allowed an additional 90

22  days (plus the three-month period already) after Notice of Default is recorded.

23       116.   Any Trustee's Deed Upon Sale obtained from a sale of plaintiffs' home

24  will be false, cause a doubt to be cast on Plaintiffs' title to the property described above,

25  and will directly impair Plaintiff's right to possession and ownership of the Subject

26  Property.

27       117.   Furthermore, the aforementioned acts of Defendants, and each of them,

28  have been motivated by oppression, fraud, and malice in that Defendants, and each of

COMPLAINT AND DEMAND FOR JURY TRIAL                    -21-

1  them, by their respective acts, omissions, nonfeasance, misfeasance and/or malfeasance

2  are attempting to execute an invalid foreclosure sale of Plaintiffs' Subject Property, in

3  order to deny Plaintiffs of their rights of possession and ownership.

4       118.    Plaintiffs seek a determination as to the legal status of the parties as to the

5  Adjustable Rate Note and the Deed of Trust.

6       119.    The Adjustable Rate Note states that the Lender is Mortgage Lenders. It

7  also states, "Lender or anyone who takes this Note by transfer and who is entitled to

8  receive payment under this Note is called the "Note Holder."

9       120.    Mortgage Lenders sent to Plaintiffs a statement with a coupon asking for

10  payment.

11       121.    The Deed of Trust which cited the lender as Mortgage Lenders and stating

12  in the definition section that: "MERS" is Mortgage Electronic Registration Systems, Inc.

13  MERS is a separate corporation that is acting solely as a nominee for Lender and

14  Lender's successors and assigns; MERS is the beneficiary under this Security Instrument.

15       122.    Additionally, based upon information and belief, Mortgage Electronic

16  Registration Systems is not qualified to do business in the state of California and

17  therefore, would not have standing to seek non-judicial remedies as well as judicial

18  remedies.

19       123.    Defendants should be required to provide the original note with the

20  appropriate endorsements thereon to Plaintiffs or this Honorable Court so that it may

21  determine under California law, who owns the right to receive payments and exercises the

22  rights relating to said ownership.

23       124.    Only the Note Holder is authorized to collect payments and, in the event of

24  a default, commence foreclosure proceedings, including authorizing the substitution of a

25  Trustee.

26       125.    Until Defendants are able to provide Plaintiffs and this Honorable Court

27  the aforementioned documents, this Honorable Court should order that Plaintiffs are not

28  required to make any further payments on the Adjustable Rate Note and enjoin any

COMPLAINT AND DEMAND FOR JURY TRIAL                                    -22-

1 further collection activity on the Note, including staying the count down towards the date

2 of the trustee's sale.

3     126.   Any foreclosure sale will be defective and as such will have to be restored

4 to Plaintiffs or Plaintiffs will be entitled to the value thereof.

5                           SECOND CAUSE OF ACTION

6               VIOLATION OF CALIFORNIA CIVIL CODE §2923.6

7                     (Against All Defendants and DOES 1-10,000)

8     127.   Plaintiffs reallege and incorporate by reference all above paragraphs as

9 though fully set forth herein.

10     128.   Defendants' Pooling and Servicing Agreement (hereinafter "PSA")

11 contain a duty to maximize net present value to its investors and related parties.

12     129.   California Civil Code 2923.6 broadens and extends this PSA duty by

13 requiring servicers to accept loan modifications with borrowers.

14     130.   Pursuant to *California Civil Code 2923.6(a),* a servicer acts in the best

15 interest of all parties if it agrees to or implements a loan modification where the (1) loan

16 is in payment default, and (2) anticipated recovery under the loan modification or

17 workout plan exceeds the anticipated recovery through foreclosure on a net present value

18 basis.

19     131.   California Civil Code 2923.6(b) now provides that the mortgagee,

20 beneficiary, or authorized agent offer the borrower a loan modification or workout plan if

21 such a modification or plan is consistent with its contractual or other authority.

22     132.   Plaintiffs' loan is presently in an uncertain state.

23     133.   Plaintiffs are willing, able, and ready to execute a modification of their

24 loan on a reasonable basis

25     134.   The Joint Economic Committee of Congress estimated in June, 2007, that

26 the average foreclosure results in $77,935.00 in costs to the homeowner, lender, local

27 government, and neighbors.

28

135.    Of the $77,935.00 in foreclosure costs, the Joint Economic Committee of Congress estimates that the lender will suffer $50,000.00 in costs in conducting a non-judicial foreclosure on the property, maintaining, rehabilitating, insuring, and reselling the property to a third party.  Freddie Mac places this loss higher at $58,759.00.

136.    Pursuant to *California Civil Code §2823.6,* Defendants are now contractually bound to accept a reasonable loan modification and tender is deemed made pursuant to Defendants' Pooling and Service Agreement, California Civil Code 2923.6(a), and California Civil Code 2923.6(b), taken individually or entirely.

137.    Plaintiffs invoke the remedies embodied in the aforementioned agreement and/or codes with a willingness to execute a modification of their loan.

138.    Alternatively, Plaintiffs allege that tender, if any, is excused by obstruction or prevention or imposition of unwarranted conditions by the person or corporate entity to whom it was to be made.

139.    Alternatively, Plaintiffs allege that obstruction or imposition of unwarranted conditions by defendants has occurred when defendants have evaded the Plaintiffs' attempts to provide tender as specified and encouraged by defendants' pooling agreement, California Civil Code 2923.6(a), and California Civil Code 2923.6(b). [Hudson v. Morton, 231 Ala. 392, 165 So. 227 (1936); Loftis v. Alexander, 139 Ga. 346, 77 S.E. 169 (1913); Kennedy v. Neil, 333 Ill. 629, 165 N.E. 148 (1929); Borden v. Borden, 5 Mass. 67, 1809 WL 989 (1809); Loughney v. Quigley, 279 Pa. 396, 123 A. 84 (1924); Montague Corp. v. E.P. Burton Lumber Co., 136 S.C. 40, 134 S.E. 147 (1926); Stansbury V. Embrey, 128 Tenn. 103, 158 S.W. 991 (1913); Loehr v. Dickson, 141 Wis. 332, 124 N.W. 293 (1910)]

140.    Alternatively, Plaintiffs further allege that obstruction or imposition of unwarranted conditions by defendants have occurred when defendants have manifested to the Plaintiffs that tender, if made, will not be accepted, the Plaintiffs are excused from making tender as it would be a futile gesture, and the law will not require the doing of a useless act.  [Simmons v. Swan, 275 U.S. 113, 48 S. Ct. 52, 72 L. Ed. 190 (1927); Lee v.

1  Joseph E. Seagram & Sons, Inc., 552 F.2d 447 (2d Cir. 1977); Buckner v. Tweed, 157

2  F.2d 211 (App. D.C. 1946); Peterson v. Hudson Ins. Co., 41 Ariz. 31, 15 P.2d 249

3  (1932); Woods-Drury, Inc. v. Superior Court in and for City and County of San

4  Francisco, 18 Cal. App. 2d 340, 63 P.2d 1184 (1st District 1936); Chesapeake Bay

5  Distributing Co. v. Buck Distributing Co., Inc. 60 Md. App. 210, 481 A.2d 1156 (1984);

6  Issacs v. Caterpillar, Inc., 765 F. Supp. 1359 (C.D. Ill. 1991); Platsis v. Diafokeris, 68

7  Md. App. 257, 511 A.2d 535 (1986)]

8       141.    Alternatively, Plaintiffs further allege that obstruction or imposition of

9  unwarranted conditions by defendants has occurred when defendants' objection for want

10  of actual tender of money has been waived by defendants' refusal to receive the money if

11  produced.  [Shaner v West Coast Life Ins. Co, 73F.2d 681 (C.C.A. 10th Cir. 1934); Buell

12  v. White, 908 P.2d 1175 (Colo. Ct. App. 1995) (when party, who is willing and able to

13  pay, offers to pay another a sum of money and is advised that it will not be accepted, offer

14  amounts to tender even though money is not produced); Hall v. Norwalk Fire Ins. Co., 57

15  Conn. 105, 17 A. 356 (1888); Lamar v. Sheppard, 84 Ga. 561, 10 S.E. 10984 (1890);

16  Ventres v. Cobb, 105 Ill. 33, 1882 WL 10475 (1882); Metropolitan Credit Union v.

17  Matthes, 46 Mass. App. Ct. 326, 706 N.E.2d 296 (1999)].

18                          THIRD CAUSE OF ACTION

19            (VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200

20                    (Against All Defendants and DOES 1-10,000)

21       142.    Plaintiffs reallege and incorporate by reference all above paragraphs as

22  though set forth at length herein again.

23       143.    Beginning in July 2008 and continuing to the present time, Defendants

24  committed acts of unfair competition as defined by *Business and Professions Code §*

25  *17200*, by engaging in the practices identified above.

26       144.    These acts and practices, as described in the previous paragraphs, violate

27  *Business and Professions Code § 17200* because they violate all the statutes as previously

28

1 │ listed and *California Civil Code § 1709*, and consequently, constitute an unlawful

2 │ business act of practice within the meaning of *Business and Professions Code § 17200*.

3 │      145.    The harm to Plaintiffs and to members of the general public outweighs the

4 │ utility of Defendants' policy and practices, and consequently, constitute an unlawful

5 │ business act of practice within the meaning of Business and Professions Code §17200.

6 │      146.    Further, the foregoing conduct threatens an incipient violation of a

7 │ consumer law, including, or violates the policy or spirit of such law or otherwise

8 │ significantly threatens or harms competition.

9 │      147.    Defendants' practices described above are likely to mislead the general

10 │ public, and therefore, constitute a fraudulent business act of practice within the meaning

11 │ of *Business and Professions Code §17200*.

12 │      *148.*    The Defendants' unfair, unlawful, and fraudulent business practices and

13 │ false and misleading advertising present a continuing threat to members of public in that

14 │ other consumers will be defrauded into closing on similar fraudulent loans. Plaintiffs and

15 │ other members of the general public have no other adequate remedy of law.

16 │      149.    As a result of the aforementioned acts, Plaintiffs have lost money or

17 │ property and suffered injury in fact. Defendants received and continue to hold Plaintiffs'

18 │ money and other members of the public who fell victim to Defendants' scheme.

19 │                       FOURTH CAUSE OF ACTION

20 │     BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

21 │            (Against All Defendants and DOES 1-10,000)

22 │      150.    Plaintiffs reallege and incorporate by reference all above paragraphs as

23 │ though set forth at length herein again.

24 │      151.    Plaintiffs allege that at all times there existed an implied covenant of good

25 │ faith and fair dealing requiring Defendants, and each of them, to safeguard, protect, or

26 │ otherwise care for the assets and rights of Plaintiffs.

27 │      152.    Said covenant prohibited Defendants from activities interfering with or

28 │ contrary to the rights of Plaintiffs.

153.   Plaintiffs allege that the commencement of foreclosure proceedings upon the property lawfully belonging to Plaintiffs without the production of documents demonstrating the lawful rights for the foreclosure constitutes a breach of the covenant.

154.   Defendants breach the provisions as contained within the "Deed of "Trust" which cited the lender as Mortgage Lenders.

155.   Defendants breached the provisions as contained within the "Adjustable Rate Note" promising to pay Mortgage Lenders a monthly payment.

156.   Plaintiffs paid timely monthly payments in accordance with the "Adjustable Rate Note" to Mortgage Lenders or its agents.

157.   As a consequence and proximate result, Plaintiffs have been damaged in a sum to be proven at trial.

FIFTH CAUSE OF ACTION

VIOLATION OF CIVIL CODE §1572

(Against All Defendants and DOES 1-10,000)

158.   Plaintiffs reallege and incorporate by reference all above paragraphs as though set forth at length herein again.

159.   The misrepresentations by Defendants and/or Defendants' predecessors, failures to disclose, and failure to investigate as described above were made with the intent to induce Plaintiff to obligate himself on the Loan in reliance on the integrity of Defendants and/or Defendants' predecessors.

160.   Plaintiffs are an unsophisticated customer whose reliance upon Defendants and/or Defendants' predecessors was reasonable and consistent with the legislative intent and purpose of *California Civil Code § 1572* (enacted in 1872) and designed to assist and protect consumers similarly situated as Plaintiffs in this action.

161.   As unsophisticated customers, Plaintiffs could not have discovered the true nature of the material facts on their own.

162.    The accuracy by Defendants and/or Defendants' predecessors of representation is important in enabling consumers such as Plaintiffs to compare market lenders in order to make informed decisions regarding lending transactions such as a loan.

163.    Plaintiffs were ignorant of the facts which Defendants and/or Defendants' predecessors misrepresented and failed to disclose.

164.    Plaintiffs' reliance on Defendants and/or Defendants' predecessors was a substantial factor in causing their harm.

165.    Had the terms of the Loan been accurately represented and disclosed by Defendants and/or Defendants' predecessors, Plaintiffs would not have accepted the Loan nor been harmed.

166.    Had Defendants and/or Defendants' predecessors investigated Plaintiffs' financial capabilities, they would have been forced to deny Plaintiffs on this particular loan.

167.    Defendants and/or Defendants' predecessors conspired and agreed to commit the above mentioned fraud.

168.    As a proximate result of Defendants and or Defendants' predecessors fraud, Plaintiffs have suffered damage in an amount to be determined at trial.

169.    The conduct of Defendants and/or Defendants' predecessors as mentioned above was fraudulent within the meaning of *California Civil Code § 3294(c)(3)*, and by virtue thereof Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish and make an example of the Defendants.

SIXTH CAUSE OF ACTION

FOR FRAUD

(Against All Defendants and DOES 1-10,000)

170.    Plaintiffs reallege and incorporate by reference all above paragraphs as though set forth at length herein again.

171.    An unknown employee of defendants NDex West and America's Servicing Company executed on behalf the alleged Beneficiary a "Notice of Default,"

COMPLAINT AND DEMAND FOR JURY TRIAL                    -28-

1   which stated that the payments were due to defendants American's Servicing Company

2   and MERS as Beneficiary ("Notice of Default and Election to Sell Under Deed of

3   Trust.")

4        172.    On the Notice of Breach, it stated, in part, as follows:

5            "That by reason thereof, the present beneficiary under such
             deed of trust, has executed and delivered to said agent, a
6            written Declaration of Default and Demand for Same, and
             has deposited with said agent such Deed of Trust and all
7            documents evidencing obligations secured thereby and has
             declared and does hereby declare all sums secured thereby
8            immediately due and payable and has elected and does
             hereby elect to cause the trust property to be sold to satisfy
9            the obligations served thereby."

10       173.    These representations were made by these defendants in order to induce

11  reliance by Plaintiffs.

12       174.    Plaintiffs have relied on these representations, and their reliance is

13  justified.

14       175.    As a result of their reliance, their property is scheduled for foreclosure and

15  wil be foreclosed unless this Court grants the temporary order herein.

16       176.    Plaintiffs are informed and believe that the representation as stated on the

17  Notice of Default are false representations in that documents have not been provided to

18  the trustee that show that America's Servicing Company or MERS is the Beneficiary and

19  entitled to the payments.

20       177.    At the time defendants made the representations they knew they were false

21  and were made for the sole purpose of inducing reliance.

22       178.    Plaintiffs allege that Defendants, and each of them, have been engaged in

23  an illegal scheme, the purpose of which is to execute loans secured by real property in

24  order to make commissions, kick-backs, illegal undisclosed yield spread premiums, and

25  undisclosed profits by the sale of any instruments arising out of the transaction; and to

26  make loans to borrowers who could not afford to repay the loan, given the stated financial

27  situation of the borrowers.

28

COMPLAINT AND DEMAND FOR JURY TRIAL                                    -29-

179.   Plaintiffs allege that Defendants, and each of them, have represented to Plaintiffs and to third parties that defendants are the owners of the Trust Deed and Note, as either the Trustee or the Beneficiary, regarding Plaintiffs' real property.

180.   Based on this representation defendants caused a Notice of Default to be issued and recorded without disclosing the true role of defendants; and, thereafter a notice of trustee's sale.

181.   Plaintiffs allege that the promissory note which was executed by Plaintiffs and which initially formed a basis of a security interest in the subject property was assigned, in violation of Civil Code section 2932.5 et seq., because the assignment was not recorded; and, as such the promissory note was rendered as non-negotiable and no power of sale was conveyed with the note at the time of the assignment, and therefore, Defendants, and each of them, had no lawful security interest in the subject property.

182.   On or about September 9, 2005, representatives, agents and/or employees of Defendants, and each of them, made false representations to Plaintiffs in order to fund a loan, in which the Plaintiffs' personal residence was to be security therefore.

183.   Plaintiffs allege that Defendants, and each of them, made certain representations regarding defendants' honesty, that they were experts in obtaining loans which borrowers could afford, and that they would only offer Plaintiffs a loan which was in their best interests, given their credit history and financial needs and limitations and that Plaintiffs could trust the representations of Defendants, and each of them.

184.   Plaintiffs allege that based upon the representations made by Defendants, and each of them, Plaintiffs reasonably reposed his trust in Defendants' representations and disclosed their private financial information to Defendants, in order that Defendants could in keeping with their representations, find a loan which was in the best interests of Plaintiffs given their financial needs and limitations.

185.   More particularly, Defendants, and each of them, represented that they would not make a loan to Plaintiffs unless they could afford the loan, and that defendants would not make the loan unless and until plaintiffs had passed the underwriting

1 | guidelines of the lender, which further assured to Plaintiffs that the loan being offered to

2 | Plaintiffs was in fact in the Plaintiffs' best interests, and that the loan was within

3 | Plaintiffs' financial needs and limitations.

4 |     186.    Plaintiffs allege that the loans provided by Defendants, and each of them,

5 | contained  a repayment schedule which exceeded Plaintiffs' total spendable income,

6 | contained excessive financing and was approved to allow closing costs to be financed.

7 |     187.    Defendants failed to utilize adequate due diligence regarding Plaintiff's

8 | ability to repay the loan.

9 |     188.    Defendants' as part of their continuing scheme intentionally placed

10 | Plaintiffs in a sub-prime loan to the benefit of the Defendants with excessively high

11 | interest rates.

12 |     189.    Defendants failed to provide Plaintiffs mandated disclosures, and

13 | Defendants repeatedly employed coercive tactics in order to force Plaintiffs to sign the

14 | loan documents.

15 |     190.    Plaintiffs are informed and believe and thereupon allege that defendants

16 | engaged in some degree in making the loan to Plaintiffs including, but not limited to

17 | making the loan to Plaintiffs by "marketing and extending adjustable-rate mortgage

18 | ("ARM") products to Plaintiffs in an unsafe and unsound manner that greatly increased

19 | the risk that Plaintiffs would default on the loan, because the initial payments on the loan

20 | exceeded Plaintiffs' established retirement income, and the loan terms offered to

21 | Plaintiffs included ARM products with one or more of the following characteristics:

22 | utilization of an inadequate analysis of Plaintiffs' ability to repay the debt at the fully-

23 | indexed rate; approving Plaintiffs without considering appropriate documentation and/or

24 | verification of their income; including substantial prepayment penalties and/or

25 | prepayment penalties that extended beyond the initial interest rate adjustment period;

26 | providing Plaintiffs with inadequate and/or confusing information relative to product

27 | choices, material loan terms and product risks, prepayment penalties, and Plaintiffs'

28 | obligations for property taxes and insurance; approving Plaintiffs for a loan with

1  inadequate debt-to-income analyses that did not properly consider the Plaintiffs' ability to

2  meet their overall level indebtedness and common housing expenses; and/or  approving

3  Plaintiffs for loan arrangements with loan-to-value ratios approaching or exceeding 100

4  percent of the value of the collateral;" and making Plaintiffs a mortgage loan without

5  adequately considering the Plaintiffs' ability to repay the mortgage according to its terms.

6      191.    Plaintiffs allege that based upon the foregoing representations of

7  Defendants, and each of them, Plaintiffs did in fact repose their trust in the

8  representations of Defendants, and each of them, and that such trust was reasonable.

9      192.    Plaintiffs allege that Defendants, and each of them, presented a loan to

10  Plaintiffs whereby Defendants represented that they did qualify for ordinary underwriting,

11  and that the loan was within Plaintiffs' personal financial needs and limitations, given the

12  confidential financial information that Plaintiffs shared with Defendants.

13      193.    However, the truth is that the loan payments exceeded Plaintiff'

14  established retirement income.

15      194.    Plaintiffs allege that Defendants, and each of them, had a duty to disclose

16  the true cost of the loan which was made to Plaintiffs, and the fact that Plaintiffs could

17  not afford the loan in the first instance.

18      195.    Defendants, and each of them, provided Plaintiffs a loan through

19  Defendant Mortgage Lenders, and Defendants, and each of them, were secretly

20  compensated.

21      196.    However, defendants did not disclose for this loan that they were being

22  paid for its services, and in a spread of the yield of an amount which has not yet been

23  fully ascertained as a Yield Spread Premium paid-outside and after the close of escrow.

24      197.    Plaintiffs are informed and believe and thereupon allege that after the close

25  of escrow Defendant Mortgage Lenders paid the other Defendants herein fees above and

26  beyond the value of the services actually performed and an illegal kickback and added

27  that additional amount to the total amount being financed; and that such amount was

28  never disclosed to Plaintiff.

COMPLAINT AND DEMAND FOR JURY TRIAL                    -32-

198.   Plaintiffs acquired the foregoing property by virtue of the said funding through Defendant Mortgage Lenders based on the representations of Defendants, and each of them, that the loan was the best they could obtain for Plaintiffs, and that the loan was well within Plaintiffs' financial needs and limitations.

199.   Plaintiffs are informed and believe and thereupon allege that Defendants, and each of them, represented to Plaintiffs that Defendants, and each of them, were working for the benefit of Plaintiffs and in their particular best interest to obtain for them the best loan and at the best rates available.

200.   Defendants, and each of them, made the foregoing false representations to Plaintiffs when they knew that they were untrue and that these representations were material representations, and that no basis in fact existed to support such fraudulent representations.

201.   The foregoing representations were made in order to induce Plaintiffs to act on and take the said loan(s) in order for defendants to make a substantial amount of money thereby and there from.

202.   Plaintiffs were in fact induced to and did take these loans based on the said fraudulent representations.

203.   Plaintiffs were induced to rely and did rely on the representations of these defendants through deception and Plaintiffs' reliance was justified inasmuch as they believed that Defendants, and each of them, were working for Plaintiffs and in their best interests. '

204.   By virtue of Plaintiffs' reasonable reliance and the increased interest they were made to pay, they have been damaged in the loss of their good credit and a higher payment and are now being involved in litigation that they did not bargain for, all to their damage and injury.

205.   Plaintiffs have relied on the representations of Defendants, and each of them, and because of this reliance have made various moves to avoid foreclosure all to no avail, while defendants knew all the time that they were deceiving Plaintiffs.

COMPLAINT AND DEMAND FOR JURY TRIAL                              -33-

206.   Plaintiffs' reliance was justified based upon the false representations of Defendants, and each of them, and had no reason to believe that a party representing a bank would go to such lengths to deceive and to convert Plaintiffs' property by utilizing such a fraud and artifice.

207.   Plaintiffs are informed and believe that Defendants, and each of them, at the time of execution of the Deed of Trust and Note maintained an interest in the Subject Property; however at the time the Note and Deed of Trust were assigned, the Note was no longer negotiable and the power of sale was not conveyed during the assignment, notwithstanding the foregoing, Defendants, and each of them, are attempting to foreclose on Plaintiffs' Trust Deed, in concert with their scheme to defraud Plaintiffs out of their property.

208.   Plaintiffs have recently learned that Defendants, and each of them, are not the legal owners of the Note and trust deed, notwithstanding the fact that the note was not negotiable and did not contain a valid power of sale.

209.   Plaintiffs allege that Defendants, and each of them, knew at the time they made these representations to Plaintiffs that the representations were untrue, and defendants know that they have to right to foreclose on plaintiffs' home.

210.   Plaintiffs allege Defendants, and each of them, intentionally and fraudulently converted Plaintiffs' right, title and interest to his property, and any equity therein.

211.   Plaintiffs allege that due to their reliance on Defendants representations, they have been damaged in an amount that will be proven at trial.

212.   Defendants' conduct as set forth above was intentional, oppressive fraudulent and malicious so as to justify an award of punitive damages in an amount sufficient that such conduct will not be repeated.

213.   Plaintiffs will be damaged in having their home wrongfully foreclosed and a slander of their title, and being required to become involved in this litigation all to their damages and injuries the amount of which is subject to proof at the time of trial.

COMPLAINT AND DEMAND FOR JURY TRIAL                                    -34-

1    214.    The actions of Defendants and each of them were fraudulent, oppressive

2 and malicious so as to warrant the imposition of exemplary damages, and that by virtue of

3 Defendants' conduct as set forth herein, Plaintiffs are entitled to exemplary damages.

4                    SEVENTH CAUSE OF ACTION

5                    FOR DECLARATORY RELIEF

6            (Against All Defendants and DOES 1-10,000)

7    215.    Plaintiffs reallege and incorporate by reference all above paragraphs as

8 though set forth at length herein again.

9    216.    A dispute has arisen between and among Plaintiffs and Defendants and

10 each of them as to the duties and obligations of the respective parties with regard to the

11 loan or the foreclosure.

12    217.    These disputes concern but are not limited to the ownership rights and the

13 validity of the commencement of the foreclosure process.

14    218.    As to these issues, Plaintiffs are required to seek this relief.

15    219.    Plaintiffs further allege that a declaration of rights and duties of the parties

16 herein are essential to determine the actual status and validity of the loan, deed of trust,

17 nominated beneficiaries, actual beneficiaries, loan servicers, trustees instituting

18 foreclosure proceedings and related matters.

19                    EIGHTH CAUSE OF ACTION

20           FOR INTENTIONAL MISREPRESENTATION

21            (Against All Defendants and DOES 1-10,000)

22    220.    Plaintiffs reallege and incorporate by reference all above paragraphs as

23 though set forth at length herein again.

24    221.    Plaintiffs are informed and believe that the representation as stated on the

25 Notice of Default were a false representation in that documents were not provided to the

26 trustee that showed that any of the Defendants was the Beneficiary and entitled to the

27 payments.

28

222.    At the time Defendants made the representations they knew they were false and were made for the sole purpose of inducing reliance and confusing Plaintiffs.

### NINTH CAUSE OF ACTION

### VIOLATION OF THE ROBBINS-ROSENTHAL

### FAIR DEBT COLLECTION PRACTICES ACT

(Against All Defendants and DOES 1-10,000)

223.    Plaintiffs fully incorporate herein by reference all paragraphs heretofore set forth in the complaint.

224.    The Robbins-Rosenthal Fair Debt Collection Practices Act (Robbins-Rosenthal Act), Civil Code § 1788, et seq., prohibits unfair and deceptive acts and practices in the collection of consumer debts.

225.    All defendants are debt collectors under the Rosenthal Act. To the extent lender is not a "debt collector," it is vicariously liable for the acts of defendant trustee and defendant servicer of the loan.

226.    Each of defendants threatened plaintiff with the attachment and sale of his home with no legal authority to do so, in violation of California Civil Code section 1788.10(e).

227.    Moreover, none of the defendant have legal authority to enforce or collect on the loan because defendants are not the note holder of said debt and as such cannot authorize defendant trustee or anyone else for that matter to enforce or collect on the loan.

228.    By their acts and practices as hereinabove described, defendants have violated the Robbins-Rosenthal Act as follows, without limitation:  a) in failing to inform consumers that defendants would engage in debt collection practices during the loan application and approval process, defendants have violated § 1788.13(i), which prohibits the false representation of the true nature of the business or services being rendered by the debt collector. Mortgage Lenders represented itself as a lender but failed to disclose the material fact that it is acting as a debt collector with respect to the same transaction; and (b) by failing to include certain debt collection notices required by law.

COMPLAINT AND DEMAND FOR JURY TRIAL                           -36-

1    229.    As a direct and proximate result of these violations as alleged herein,

2    plaintiff, under § 1788.30 of the Robbins-Rosenthal Act, is entitled to recover his actual

3    damages sustained as a result of defendants' violations of the Robbins-Rosenthal Act.

4    Such damages include, without limitation, monetary losses and damages, and emotional

5    distress damages suffered by plaintiff, the amount of which will be proven at trial.

6    230.    In addition, because the Defendants' violations of the Robbins-Rosenthal

7    Act were committed willingly and knowingly, Plaintiffs are entitled to recover, in

8    addition to his actual damages, penalties of at least $1,000 per violation as provided for in

9    the Act.

10   231.    Pursuant to § 1788.30(c) Robbins-Rosenthal Act, Plaintiffs are entitled to

11   recover all attorneys' fees, costs and expenses incurred in the bringing of this action.

12   232.    In doing the actions as herein alleged, defendants acted wilfully,

13   intentionally, maliciously, and /or fraudulently, entitling plaintiffs to punitive damages.

14                              TENTH CAUSE OF ACTION

15              UNFAIR AND FRAUDULENT BUSINESS PRACTICES

16        (Violation of California Business and Professions Code §§ 17200 et seq.)

17                   (Against All Defendants and DOES 1-10,000)

18   233.    Plaintiffs fully incorporate as though fully set forth herein all paragraphs

19   heretofore alleged in the complaint.

20   234.    The above-described conduct of the defendants constituted unlawful,

21   unfair, deceptive, and fraudulent business practices within the purview of California

22   Business and Professions Code §§ 17200 et seq. Among other things, defendants'

23   representations to plaintiff and other similarly situated consumers were false, misleading

24   and deceptive within the meaning of these statutes.

25   235.    Defendants, and each of them, have no substantiation to support the false

26   and deceptive representations made. The defendants, and each of them, derived

27   substantial profits and ill-gotten gains as a direct and proximate result of the unlawful,

28   deceptive and fraudulent representations, as well as omissions and nondisclosures of

1  material facts which needed to be disclosed.

2      236.    As a result of the above-described conduct, the defendants have been, and

3  will continue to be, unjustly enriched in profits, income and ill-gotten gains at the

4  expense of the plaintiff and all similarly situated consumers who used Defendants'

5  services in reliance on the defendants' false and fraudulent representations and marketing

6  materials.

7      237.    As a direct and legal result of the defendants' fraudulent conduct as

8  described above, plaintiff suffered damage within the meaning of Business and

9  Professions Code §17537.4 in an amount to be proven at trial, plus pre and post-judgment

10  interest at the legal rate as a result of plaintiff's use of defendants' services based on

11  defendants' false, misleading and deceptive representations and marketing materials.

12      238.    The damages of the plaintiff and other consumers similarly situated are

13  within the jurisdictional limits of this Court.

14      239.    Moreover, Plaintiffs are entitled to an award of treble damages and

15  reasonable attorneys fees pursuant to Section 17537.4.

16      240.    By committing the acts alleged above, defendants, and each of them, have

17  acted unfairly and deceptively, and have engaged in an unlawful business practice within

18  Business & Professions Code §17200.

19      241.    An action for injunctive relief and restitution under the Unfair

20  Competition Act is specifically authorized by Business & Professions Code §17203.

21      242.    Continuing commission by defendants, and each of them, of the acts

22  alleged above will irreparably harm plaintiff and other similarly situated consumers, for

23  which harm they have no plain, speedy or adequate remedy at law.

24      243.    By reason of the foregoing, plaintiffs and other similarly situated

25  consumers are entitled to recover actual damages and equitable relief including

26  restitutionary disgorgement from defendants, as shown by the evidence and determined

27  by the trier of fact.

28      WHEREFORE, plaintiffs prays judgment against defendants, and each of them, as

COMPLAINT AND DEMAND FOR JURY TRIAL                                -38-

1  set forth hereinbelow.

2  ELEVENTH CAUSE OF ACTION

3  UNFAIR AND FRAUDULENT BUSINESS PRACTICES

4  (Violation of California Business and Professions Code §§ 17500 et seq.)

5  (Against All Defendants and DOES 1-10,000)

6  244.   Plaintiffs fully incorporate as though fully set forth herein all paragraphs

7  heretofore alleged in the complaint.

8  245.   The above-described conduct of the defendants constituted unlawful,

9  unfair, deceptive, and fraudulent business practices within the purview of California

10  Business and Professions Code §§ 17500 et seq.

11  246.   Among other things, defendants' representations and advertising to

12  plaintiff and other similarly situated consumers were false, misleading and deceptive

13  within the meaning of these statutes.

14  247.   Defendants, and each of them, have no substantiation to support the

15  representations made.

16  248.   The defendants, and each of them, derived substantial profits and ill-gotten

17  gains as a direct and proximate result of the unlawful, deceptive and fraudulent

18  representations.

19  249.   As a result of the above-described conduct, the defendants have been, and

20  will continue to be, unjustly enriched in profits, income and ill-gotten gains at the

21  expense of the plaintiff and all consumers who used defendants' services in reliance on

22  the defendants' false and fraudulent representations and marketing materials.

23  250.   As a direct and legal result of the defendants' fraudulent conduct as

24  described above, plaintiff suffered damage within the meaning of Business and

25  Professions Code §17537.4 in an amount to be proven at trial, plus pre and post-judgment

26  interest at the legal rate as a result of plaintiff's use of defendants' services based on

27  defendants' false, misleading and deceptive representations and marketing materials.

28  251.   The damages of the plaintiff and other consumers similarly situated are

COMPLAINT AND DEMAND FOR JURY TRIAL

1  within the jurisdictional limits of this Court. Moreover, Plaintiffs are entitled to an award

2  of treble damages and reasonable attorneys fees pursuant to Section 17537.4.

3       252.   By committing the acts alleged above, defendants, and each of them, have

4  acted unfairly and deceptively, and have engaged in an unlawful business practice within

5  Business & Professions Code §17500.

6       253.   An action for injunctive relief and restitution under the Unfair

7  Competition Act is specifically authorized by Business & Professions Code §17203.

8       254.   Continuing commission by defendants, and each of them, of the acts

9  alleged above will irreparably harm plaintiff and other similarly situated consumers, for

10 which harm they have no plain, speedy or adequate remedy at law.

11      255.   By reason of the foregoing, Plaintiffs are entitled to recover actual

12 damages and equitable relief including restitutionary disgorgement from defendants, as

13 shown by the evidence and determined by the trier of fact.

14      WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as

15 set forth hereinbelow.

16                     TWELFTH CAUSE OF ACTION

17              VIOLATION OF CONSUMER LEGAL REMEDIES ACT,

18                 CALIFORNIA CIVIL CODE §§1750 et seq

19                 (Against All Defendants and DOES 1-10,000)

20      256.   Plaintiffs reallege and incorporates by reference each and every allegation

21 set forth in the paragraphs heretofore stated in this complaint.

22      257.   Plaintiffs bring this action seeking injunctive relief pursuant to the

23 Consumer Legal Remedies Act (CLRA), California Civil Code §§ 1770 and 1780.

24 Section 1770(n) of the CLRA specifically prohibits representations that a transaction

25 confers or involves rights, remedies, or obligations which it does not have or involve or

26 which are prohibited by law. Section 1770(s) of the CLRA prohibits insertion of an

27 unconscionable provision in a contract.

28      258.   Defendants failed to conduct proper investigations of disputed credit

COMPLAINT AND DEMAND FOR JURY TRIAL                              -40-

1   entries, in violation of the Consumer Legal Remedies Act.

2       259.   Defendants continued to list plaintiff as past-due, delinquent, in default,

3   and foreclosed on their credit reports even after being notified that the underlying debt

4   entries were false or erroneous, all in violation of the CLRA.

5       260.   Defendants prevented plaintiff from explaining in credit reports that he

6   contested certain accounts, also in violation of the CLRA.

7       261.   Defendants failed to conduct proper investigations of disputed credit

8   entries, in violation of the CLRA.

9       262.   Defendants continued to list plaintiff as past-due, delinquent, and in

10   default, on his credit reports even after being notified that the underlying debt entries

11   were false or erroneous, also in violation of the CLRA.

12       263.   By their actions, defendants have jointly and severally injured plaintiff.

13       264.   As a result of the foregoing, plaintiff has suffered damages to an extent

14   and in an amount reserved for determination at trial.

15       265.   Pursuant to California Civil Code §§ 1770 and 1780, plaintiff is entitled

16   to recover his actual damages sustained as a result of defendants' violations of the CLRA,

17   including resulting monetary losses and damages, and emotional distress damages

18   suffered by plaintiff, in an amount which will be proven at trial.

19       266.   Pursuant to California Civil Code §§ 1770 and 1780, Plaintiffs are entitled

20   to enjoin implementation of the debt collection provisions and to recover his reasonable

21   attorneys' fees and costs.

22                  THIRTEENTH CAUSE OF ACTION

23                     UNJUST ENRICHMENT

24            (Against All Defendants and DOES 1-10,000)

25       267.   Plaintiffs reallege all prior allegations of the complaint, and incorporates

26   them herein by reference as if fully set forth herein.

27       268.   The misconduct of defendants, individually and severally , in engaging in

28   false, misleading and deceptive mailing and advertising techniques, and in originating,

1  servicing, collecting or transferring the mortgage loan taken out by plaintiff resulted in

2  the defendants being unjustly enriched.

3      269.    As a result of the foregoing, plaintiff has suffered damages to an extent

4  and in an amount reserved for determination at trial.

5      270.    Moreover, as a result of the actions of defendants as described above,

6  defendants have bee n unjustly enriched and should return to plaintiff the amount of

7  money by which defendants have been unjustly enriched.

8      271.    As a result of their having been unjustly enriched, defendants should be

9  made to disgorge and return to plaintiff, the amount of money by which they have been

10  unjustly enriched.

11                 FOURTEENTH CAUSE OF ACTION

12                 NEGLIGENT MISREPRESENTATION

13          (Against All Defendants and DOES 1-10,000)

14      272.    Plaintiffs fully incorporate herein by reference all paragraphs heretofore

15  set forth in this complaint.

16      273.    Defendants, to the extent they did not act intentionally, negligently

17  misrepresented the facts, terms and conditions to plaintiff proximately resulting in harm

18  suffered by plaintiff.

19      WHEREFORE, plaintiff prays judgment against defendants as set forth

20  hereinbelow.

21                 FIFTEENTH CAUSE OF ACTION

22                      NEGLIGENCE

23          (Against All Defendants and DOES 1-10,000)

24      274.    Plaintiffs fully incorporate herein by reference all paragraphs heretofore

25  set forth in this complaint.

26      275.    Each person has a duty to act as a reasonable and prudent person would act

27  under the same or similar circumstances so as not to cause injury or harm to others,

28  according to Civil Code section 1714 and voluminous caselaw.

1    276.    As set forth above, defendants failed to act as reasonable prudent persons

2  proximately resulting in harm to plaintiff.

3    WHEREFORE, plaintiff prays judgment against defendants as set forth

4  hereinbelow.

5                SIXTEENTH CAUSE OF ACTION

6          NEGLIGENT PERFORMANCE OF CONTRACT

7            (Against All Defendants and DOES 1-10,000)

8    277.    Plaintiffs fully incorporate herein by reference all paragraphs heretofore

9  set forth in the complaint.

10    278.    Defendants were negligent in their performance of the contract as set forth

11  above proximately resulting in damages suffered by plaintiff. A claim for negligent

12  performance of a contract is well-established in California law (See e.g. J'Aire Corp,

13  North American Chemical,

14  Ochs, etc.).

15    WHEREFORE, plaintiffs pray judgment against defendants as set forth

16  hereinbelow.

17              SEVENTEENTH CAUSE OF ACTION

18        BREACH OF WRITTEN PROMISE OR AGREEMENT

19            (Against All Defendants and DOES1-10,000)

20    279.   Plaintiffs fully incorporate herein by reference all paragraphs set forth

21  above as though fully set forth herein.

22    280.    Defendants breached their written promise(s) or agreement(s) as set forth

23  above

24  proximately resulting in harm suffered by plaintiff.

25    WHEREFORE, plaintiff prays judgment against defendants as set forth

26  hereinbelow.

27              EIGHTEENTH CAUSE OF ACTION

28          BREACH OF ORAL PROMISE OR AGREEMENT

COMPLAINT AND DEMAND FOR JURY TRIAL                    -43-

1              (Against All Defendants and DOES 1-10,000)

2      281.    Plaintiffs fully incorporate herein by reference all paragraphs set forth

3   above as though fully set forth herein.

4      282.    Defendants breached their oral promise(s) or agreement(s) as set forth

5   above proximately resulting in harm suffered by plaintiff.

6      WHEREFORE, plaintiffs pray judgment against defendants as set forth

7   hereinbelow.

8              NINETEENTH CAUSE OF ACTION

9          NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

10             (Against All Defendants and DOES 1-10,000)

11     283.    Plaintiffs fully incorporate herein by reference all paragraphs set forth

12   above as though fully set forth herein.

13     284.    Defendants negligently inflicted severe emotional distress upon plaintiff

14   proximately resulting in harm suffered by plaintiff.

15     WHEREFORE, plaintiff prays judgment against defendants as set forth

16   hereinbelow.

17             TWENTIETH CAUSE OF ACTION

18         BREACH OF IMPLIED AND/OR EXPRESS WARRANTY

19             (Against All Defendants and DOES 1-10,000)

20     285.    Plaintiffs fully incorporate as though fully set forth herein all paragraphs

21   heretofore alleged in the complaint.

22     286.    Defendants breached an implied or express warranty with plaintiff as set

23   forth above proximately resulting in harm suffered by plaintiff.

24           TWENTY-FIRST CAUSE OF ACTION

25               PROMISSORY ESTOPPEL

26             (Against All Defendants and DOES 1-10,000)

27     287.    Plaintiffs fully incorporate as though fully set forth herein all paragraphs

28   heretofore alleged in the complaint.

288.   Plaintiff justifiably detrimentally relied on the false promises, representations and assurances of defendants.

289.   Defendants in equity cannot and should not be allowed to retain any income, profits and gains acquired by way of their false promises, representations and assurances which induced plaintiff to enter into the defendants' fraudulent scheme resulting in justifiable detrimental reliance by plaintiff.

290.   Equity regards as done what ought to be done. Thus, defendants must pay for all damages incurred by plaintiff due to defendants' fraudulent scheme perpetrated upon plaintiff.

WHEREFORE, plaintiffs pray judgment against defendants as set forth hereinbelow.

## TWENTY-SECOND CAUSE OF ACTION
## RESTITUTION FOR UNJUST ENRICHMENT
### (Against All Defendants and DOES 1-10,000)

291.   Plaintiffs fully incorporate as though fully set forth herein all paragraphs heretofore alleged in the complaint.

292.   As set forth above, defendants made false promises, assurances and representations regarding facts, terms and conditions of the loss mitigation and active foreclosure scheme and artifice to defraud perpetrated upon plaintiff. As a result of reliance on said false representations, the defendants received and continue to receive benefits of profits and material gains by unjustly retaining profits, income and ill-gotten gains at the expense of the plaintiff who acted in detrimental reliance upon the defendants' false assurances, representations and promises.

293.   As a proximate result of the defendants' scienter, artifice and connivance in making the above representations, defendants have been unjustly enriched and plaintiff has sustained damages.

WHEREFORE, plaintiffs pray judgment against defendants as set forth hereinbelow.

COMPLAINT AND DEMAND FOR JURY TRIAL                                    -45-

TWENTY-THIRD CAUSE OF ACTION

MISAPPROPRIATION AND CONVERSION OF FUNDS

(Against All Defendants and DOES 1-10,000)

294.    Plaintiffs fully incorporate as though fully set forth herein all paragraphs heretofore alleged in the complaint.

295.    As set forth above, defendants misappropriated and converted funds from plaintiff proximately resulting in harm suffered by plaintiff.

296.    Defendants committed the acts herein alleged maliciously and oppressively, and in conscious disregard of plaintiff's rights and welfare, and Plaintiffs are thus entitled to recover punitive damages from defendants in an amount according to proof at trial.

WHEREFORE, plaintiff prays judgment against defendants as set forth hereinbelow.

TWENTY-FOURTH CAUSE OF ACTION

VIOLATION OF CONSUMER LEGAL REMEDIES ACT, CAL. CIV. §1750, ET SEQ.

(Against All Defendants and DOES 1-10,000)

297.    Plaintiffs fully incorporate as though fully set forth herein all paragraphs heretofore set forth below.

298.    Defendants violated Civil Code section 1770(a)(4) by unlawfully, unfairly and deceptively using deceptive representations in connection with their services.

299.    Defendants violated Civil Code § 1770(a)(5) by unlawfully, unfairly and deceptively representing that their services had characteristics, benefits, approval and/or qualities that it did not have.

300.    Defendants violated Civil Code § 1770(a)(7) by unlawfully, unfairly and deceptively representing that their services are of a particular standard, quality, or grade, when they are of another.

301.    Defendants violated Civil Code § 1770(a)(9) by unlawfully, unfairly and deceptively advertising services with intent not to sell them as advertised. Defendants

COMPLAINT AND DEMAND FOR JURY TRIAL                    -46-

1 violated Civil Code § 1770(a)(14) by unlawfully, unfairly and deceptively representing

2 that a transaction confers or involves rights, remedies, or obligations which it does not

3 have or involve.

4     302.    Defendants violated Civil Code § 1770(a)(16) by unlawfully, unfairly and

5 deceptively representing that the subject of a transaction has been supplied in accordance

6 with a previous representation when it has not.

7     303.    Plaintiff proximately suffered damage within the meaning of Civil Code

8 §1780(a) as a result of his transaction with defendants' loss mitigation and active

9 foreclosure scheme and artifice to defraud.

10     304.    Plaintiffs are entitled to an award of reasonable attorneys fees pursuant to

11 Civil Code Section 1780.

12     305.    The conduct of defendants, and each of them, was willful and intentional

13 and done with fraud, oppression and malice against plaintiffs with a conscious disregard

14 of the plaintiff's rights.

15     306.    Defendants' conduct under these circumstances is despicable and such

16 conduct warrants the imposition of punitive damages in a sum appropriate to punish

17 defendants, set an example of defendants, and to deter future similar misconduct.

18     WHEREFORE, plaintiff prays judgment against defendants as set forth

19 hereinbelow.

20              TWENTY-FIFTH CAUSE OF ACTION

21                   CONSPIRACY

22       (Against All Defendants and DOES 1-10,000)

23     307.    Plaintiffs fully incorporate as though fully set forth herein all paragraphs

24 heretofore alleged in the complaint.

25     308.    Defendants schemed and conspired to engage and did engage in the

26 wrongful conduct alleged hereinabove proximately resulting in harm suffered by plaintiff

27 as set forth above.

28

309.   The conduct of the defendants, and each of them, was willful and intentional and done with fraud, oppression and malice against plaintiffs with a conscious disregard of the plaintiff's rights.

310.   The defendants' conduct under these circumstances is despicable and such conduct warrants the imposition of punitive damages in a sum appropriate to punish the defendants, set an example of defendants, and to deter future similar misconduct.

WHEREFORE, plaintiffs pray judgment against defendants as set forth hereinbelow.

TWENTY-SIXTH CAUSE OF ACTION

APPRAISAL FRAUD

(Against All Defendants and DOES 1-10,000)

311.   Plaintiffs are informed and believe, and thereon allege that the mortgage loan was initiated by DOES 1-10,000, who brokered the loan between plaintiff and the defendants.

312.   Defendant DOES 1-10,000 brokered the loan

313.   The actions of defendants constitute fraudulent dealings.

314.   Defendants DOES 1-10,000 artificially and unscrupulously inflated the value of the subject property or someone pressured the appraiser to inflate the estimated value of the property.

315.   As a result of the actions as aforesaid stated, defendant mortgage broker and DOES 1-10,000 acquired a greater profit.

316.   As a result, of the fraud of the appraiser defendant and DOES 1-10,000, plaintiff was left to deal with market fluctuations, including housing depreciation, financial loss due to inadequate housing values, and were forced to default on the loan.

317.   Wherefore, plaintiff prays judgment for this cause of action against defendants and each of them, as follows: (i) for an order compelling said defendants, and each of them, to transfer legal title and possession of the subject property to plaintiff herein; (ii) for a declaration and determination that plaintiffs are the rightful holders of

COMPLAINT AND DEMAND FOR JURY TRIAL                        -48-

1  title to the subject property and a further declaration that defendants herein, and each of

2  them, have no estate, right, title or interest in the subject property and defendants, and

3  each of them, be forever enjoined from asserting any estate, right, title or interest in the

4  subject property adverse to plaintiff herein; (iii) a judgment forever enjoining said

5  defendants, and each of them, from claiming any estate, right, title or interest in the

6  subject property; (iv) for costs of suit herein incurred; and (v) for such other and further

7  relief as the Court may deem just and proper.

8                    TWENTY-SEVENTH CAUSE OF ACTION

9                                  RESPA

10                 (Against All Defendants and DOES 1-10,000)

11        318.    Plaintiff fully incorporates herein by reference all paragraphs heretofore

12  set forth in this complaint.

13        319.    Defendants violated the Real Estate Settlement Procedures Act

14  ("RESPA") as set forth above proximately resulting in harm suffered by plaintiff.

15        320.    Defendants committed the acts herein alleged maliciously and

16  oppressively, and in conscious disregard of plaintiff's rights and welfare, and Plaintiffs

17  are thus entitled to recover punitive damages from defendants in an amount according to

18  proof at trial.

19        WHEREFORE, plaintiff prays judgment against defendants as set forth

20  hereinbelow.

21                    TWENTY-EIGHTH CAUSE OF ACTION

22                          TRUTH IN LENDING ACT

23                 (Against All Defendants and DOES 1-10,000)

24        321.    Plaintiff fully incorporates herein by reference all paragraphs heretofore

25  set forth in this complaint.

26        322.    Defendants violated the Truth in Lending Act ("TILA"), as set forth above,

27  proximately resulting in harm suffered by plaintiff.

28

1   323.   Defendants committed the acts herein alleged maliciously and

2   oppressively, and in conscious disregard of plaintiff's rights and welfare, and Plaintiffs

3   are entitled to recover punitive damages from defendants in an amount according to proof

4   at trial.

5   WHEREFORE, plaintiff prays judgment against defendants as set forth

6   hereinbelow.

7   TWENTY-NINTH CAUSE OF ACTION

8   EQUAL CREDIT OPPORTUNITY ACT

9   (Against All Defendants and DOES 1-10,000)

10   324.   Plaintiffs fully incorporate herein by reference all paragraphs heretofore

11   set forth in this complaint.

12   325.   Defendants violated the Equal Credit Opportunity Act ("ECOA") as set

13   forth above, proximately resulting in harm suffered by plaintiff.

14   326.   Defendants committed the acts herein alleged maliciously and

15   oppressively, and in conscious disregard of plaintiff's rights and welfare, and Plaintiffs

16   are thus entitled to recover punitive damages from defendants in an amount according to

17   proof at trial.

18   WHEREFORE, plaintiff prays judgment against defendants as set forth

19   hereinbelow.

20   THIRTIETH CAUSE OF ACTION

21   VIOLATION OF HOME OWNERSHIP AND EQUITY PROTECTION ACT (HOEPA)

22   (Against All Defendants and DOES 1-10,000)

23   327.   Plaintiff fully incorporates as though fully set forth herein all paragraphs

24   heretofore alleged in the complaint.

25   328.   Defendants violated HOEPA proximately resulting in harm suffered by

26   plaintiff as set forth above.

27   WHEREFORE, plaintiff prays judgment against defendants as set forth

28   hereinbelow.

COMPLAINT AND DEMAND FOR JURY TRIAL                           -50-

THIRTY-FIRST CAUSE OF ACTION

VIOLATION OF THE UCC3-104

(Against All Defendants and DOES 1-10,000)

329.    Plaintiffs fully incorporate as though fully set forth herein all paragraphs heretofore alleged in the complaint.

330.    Article 3 of the UCC governs negotiable instruments – it defines what a negotiable instrument is and defines how ownership of those pieces of paper is transferred. For the precise definition, see § 3-104(a) ("an unconditional promise or order to pay a fixed amount of money, with or without interest . . . .") The instrument may be either payable to order or bearer and payable on demand or at a definite time, with or without interest.

331.    Ordinary negotiable instruments include notes and drafts (a check is a draft drawn on a bank). See § 3-104(e).

332.    Negotiable paper is transferred from the original payor by negotiation. §3-301. "Order paper" must be endorsed; bearer paper need only be delivered. §3-305. However, in either case, for the note to be enforced, the person who asserts the status of the holder must be in possession of the instrument. See UCC § 1-201 (20) and comments.

333.    The original and subsequent transferees are referred to as holders. Holders who take with no notice of defect or default are called "holders in due course," and take free of many defenses. See §§ 3-305(b).

334.    The UCC says that a payment to a party "entitled to enforce the instrument" is sufficient to extinguish the obligation of the person obligated on the instrument. Clearly, then, only a holder – a person in possession of a note endorsed to it or a holder of bearer paper – may seek satisfaction or enforce rights in collateral such as real estate.

335.    Defendants have no standing to enforce the note, and therefore, conduct the foreclosure, because only a person who is the holder of the note has standing to enforce the note.

COMPLAINT AND DEMAND FOR JURY TRIAL                    -51-

336.   Defendants must show that it holds the note or (1) that it is an agent of the holder and that (2) the holder remains the holder. In addition, the owner of the note, if different from the holder, must join in the motion.

337.   Defendants must be enjoined from proceeding with the foreclosure proceedings, therefore, until it shows it is the holder of this note original by transfer, with all necessary rounds; it had possession of the note before it was lost; if it can show that title to the note runs to it, but the original is lost or destroyed, the holder must be prepared to post a bond; and if the person seeking to enforce is an agent, it must show its agency status and that its principal is the holder of the note (and meets the above requirements).

THIRTY-SECOND CAUSE OF ACTION

VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

(Against All Defendants and DOES 1-10,000)

338.   Plaintiffs incorporate by reference all other paragraph of this Complaint as if fully set forth here and further alleges as follows.

339.   Defendants were at all times herein a debt collector within the meaning of the FDCPA.

340.   Defendants were at all times hereto a debt collector within the meaning of the FDCPA.

341.   In violation of the FDCPA, defendants' debt collection letters did not comport with the mandate that a debt collector must send a notice to the consumer which advises consumers of their federal rights to dispute a debt, request verification of a debt, or obtain certain information about the creditor within 30 days of an initial communication from a debt-collector.

342.   Defendant's validation notices, to the extent incorporated into its dunning letters, were not effectively communicated, and were overshadowed, confounded or diluted as seen from the perspective of the least sophisticated consumer, which defendants' letters did by the un fair and deceptive statements in its contents.

COMPLAINT AND DEMAND FOR JURY TRIAL                                   -52-

343.   Defendants were engaged in the use of an instrumentality of interstate commerce or the mails in a business the principal purpose of which was the collection or attempted collection of consumers debts owed or due or asserted to be owed.

344.   Defendants violated the FDCPA by mailing debt collection letters which created a false sense of urgency and misrepresented the importance, cost, purpose and urgency of the communication in violation of 15 U.S.C. §§1692e.

345.   Defendants imposed and/or collected service charge s in the of course of collection debts from Plaintiff, even though such amounts were not expressly authorized by the mortgage contracts with plaintiff, or otherwise permitted by California law, in violation of 15 U.S.C. 1692f(1).

346.   Defendants were engaged in the use of an instrumentality o f interstate commerce or the mails in a business the principal purpose of which was the collection or attempted collection of consumers debts owed or due or asserted to be owed.

347.   In direct violation of the debt collection statute, some form collection letters from defendants to plaintiff stated the unpaid principal balance of the loan, but added that this amount did not include accrued but unpaid interest, unpaid late charges, esc row advances or other charges. Plaintiff was then advised to call defendants for further information on their debt, thereby failing to disclose the amount of the debt.

348.   Notwithstanding the standard debt validation notice on the reverse side of its communication, defendant violated the FDCPA, §1692(a)(4), by contradicting or confusing the letter's statutorily required language clearly, thereby making plaintiff uncertain as to what the mixed message meant in actuality.

349.   Notwithstanding the standard debt validation notice on the reverse side of its communication, defendants violated the FDCPA, §1692g(b) by failing to cease collection efforts during the statutory verification period.

350.   Defendants' debt collection communications to plaintiffs were intentionally frightening, and contained false threats and misrepresentations of fact.

COMPLAINT AND DEMAND FOR JURY TRIAL                                    -53-

351.   These debt collection communications were made to plaintiff within one year of the filing of this lawsuit.

WHEREFORE, plaintiffs pray judgment against defendants as set forth hereinbelow.

WHEREFORE, Plaintiffs having set forth the claims for relief against Defendants, respectfully pray that this Court grant the following relief against the Defendants:

(1)   An order enjoining all defendants and their agents, assigns, employees, officers, attorneys, and representatives are enjoined and restrained from engaging in or performing any act to deprive plaintiff of ownership or possession of the subject property, including but not limited to instituting, prosecuting or maintaining foreclosure or sale proceedings on the property, from recording any deeds or mortgages regarding the property or from otherwise taking any steps whatsoever to deprive plaintiff of ownership in the property, and in particular from proceeding within the sale of the property scheduled for December 16, 2009.

(2)   For all compensatory, economic and money damages, past, present and future, in an amount to fully compensate plaintiff according to proof;

(3)   For punitive and exemplary damages, as appropriate, according to proof;

(4)   For attorneys' fees and costs, as appropriate, according to proof;

(5)   For incidental and/or consequential damages, as appropriate, according to proof;

(6)   For all interest, including prejudgment and postjudgment interest;

(7)   For all applicable statutory damages, as appropriate, according to proof;

(8)   For all applicable special damages, as appropriate, according to proof;

(9)   For appropriate equitable relief such as rescission and/or disgorgement;

////
////
////

COMPLAINT AND DEMAND FOR JURY TRIAL                                      -54-

1      (10)    For all applicable general damages, including emotional and mental

2                 distress, past, present, and future, according to proof.

3 DATED: December 10, 2009.

4                            BOTTOMLINE LAWYERS

5

6               By:

7                            RICHARD A. HALL
                           Attorneys for Plaintiffs

8

9                   **DEMAND FOR JURY TRIAL**

10     Plaintiffs hereby demand a jury trial of all causes of action.

11 Dated: December 10, 2009.

12                            BOTTOMLINE LAWYERS

13

14               By:                 RICHARD A. HALL

15                            Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

                        COMPLAINT AND DEMAND FOR JURY TRIAL         -55-



January 6, 2010

Honorable Nelson Keith Brooks                              Facsimile Only
El Dorado County Superior Court                            530-672-2413
Department 9
3321 Cameron Park
Cameron Park, California 95682

Re:  Edstrom v. NDex West, LLC
     Case No. 2009-0773

Dear Judge Brooks:

Defense counsel requested of me that, as a professional courtesy, plaintiff stipulate to
the continuance of the hearing on the preliminary injunction for approximately 30 days.
This letter confirms my telephone conversation with the clerk this afternoon that,
pursuant to the Court's approval and the parties' stipulation (copy attached), the hearing
on the preliminary injunction currently scheduled for tomorrow, January 7, 2010, will not
proceed and the temporary restraining order currently in place will remain in place, until
the newly scheduled order to show cause hearing. The stipulating parties request the
hearing on the preliminary injunction be set for February 11, 2007, and the Opposition
and Reply dates as provided on the stipulation. All parties who were served with Notice
of the hearing on the preliminary injunction have been notified telephonically of the
continuance.

Thank you.

                         Sincerely,

                         Richard A. Hall
                         Attorney at Law


Cc:  Christopher A. Carr ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL &
     TRYTTEN LLP


                    Box 237   Auburn, CA 95604
              T (530) 888-7100   F (866) 305-1238

FILED

09 DEC 24  PM 12: 01

ELDORADO COUNTY
SUPERIOR COURT

_____ DEPUTY

1   RICHARD A. HALL (SBN 135483)
    **BOTTOMLINE LAWYERS**
2   985 Lincoln Way, Suite 206
    Auburn, California 95601
3   Telephone: (530) 888-7100
    Facsimile: (866) 305-1238
4

5   Attorneys for Plaintiffs
    DANIEL MAJOR EDSTROM, an individual;
6   and TERI ANNE EDSTROM, an individual

7                SUPERIOR COURT OF CALIFORNIA

8                     COUNTY OF EL DORADO

9

10  DANIEL MAJOR EDSTROM, an            )   CASE NO.  PC 2009-0773
    individual; and TERI ANNE           )
11  EDSTROM, an individual,             )   NOTICE OF PENDENCY OF ACTION
                                        )
12          Plaintiffs,                 )
                                        )
13  v.                                  )
                                        )
14  NDEX WEST, LLC, a Delaware limited  )
    liability company; MORTGAGE         )
15  LENDERS NETWORK USA, INC., a        )
    Delaware corporation; AMERICA'S     )
16  SERVICING COMPANY, an entity        )
    form unknown; MORTGAGE              )
17  ELECTRONIC REGISTRATION             )
    SERVICES (MERS); and DOES 1-        )
18  10,000,                             )
                                        )
19          Defendants.                 )
                                        )
20

21          NOTICE IS GIVEN THAT an action was commenced on December 14, 2009, in the

22  above-entitled court, which concerns real property or affects the title or the right of possession of

23  real property. The names of all parties to the action are as follows:

24          DANIEL MAJOR EDSTROM, an individual; and TERI ANNE
                EDSTROM, an individual, Plaintiffs, v. NDEX WEST, LLC, a
25              Delaware limited liability company; MORTGAGE LENDERS
                NETWORK USA, INC., a Delaware corporation; AMERICA'S
26              SERVICING COMPANY, an entity form unknown; MORTGAGE
                ELECTRONIC REGISTRATION SERVICES (MERS); and
27              DOES 1-10,000, Defendants.

28          The property in question is described as follows: 2690 Brown Bear Court, Cool,

                        NOTICE OF PENDENCY OF ACTION

1   California 95614; in the County of El Dorado, California, more particularly described as follows:

2          Lot 885 of Auburn Lake Trails Unit No. 4, filed May 8, 1970, in
           Book E, of Maps, at page 61, El Dorado County Records.

3

4          APN: 073-141-03-100.

5   DATED: December 23, 2009

6                                      **BOTTOMLINE LAWYERS**

7

8                          By:_____
                              RICHARD A. HALL
9                             Attorneys for Plaintiffs
                              DANIEL MAJOR EDSTROM and
10                            TERI ANNE EDSTROM

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF PENDENCY OF ACTION                                    -2-

**PROOF OF SERVICE**
**CCP §§ 1013(a) and 2015.5**
**STATE OF CALIFORNIA**

| | |
|---|---|
| CASE NAME: | Edstrom v. NDex West, LLC |
| CASE NO.: | El Dorado County Sup. Ct. Case No. 20090773 |
| DOCUMENT(S): | NOTICE OF PENDENCY OF ACTION |

I am employed in the County of Placer, State of California. I am over the age of 18 and not a party to the within action. My business address is 985 Lincoln Way, #206 Auburn, CA 95601 On December 23, 2009, I served the following parties with copies of the captioned document as follows:

☑ **(BY MAIL)** - In a sealed envelope, addressed as stated below, with postage thereon fully prepaid, and caused such envelope to be placed in the United States mail in Auburn, California. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice, mail is deposited for mailing with the United States Postal Service in Sacramento in the ordinary course of business on the same day mail is placed in the office receptacle for mailing, with postage thereon fully prepaid. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

| | | |
|---|---|---|
| NDEX West, LLC<br>c/o CT Corporation Systems<br>818 West Seventh Street, Suite 200<br>Los Angeles, California 90017 | Mortgage Lenders Network, USA Inc.<br>c/o Mark Mitchell Geyer<br>16027 Ventura Boulevard, #600<br>Encino, California 91426 | America's Servicing Company<br>Post Office Box 10388<br>Des Moines, Iowa 50306-0388 |
| Mortgage Electronic Registration Systems, Inc.<br>3321 Vincent Road<br>Pleasant Hill, California 94523 | | |

☐ **(BY CERTIFIED MAIL AND RETURN RECEIPT)** - In a sealed envelope, addressed as stated above, with postage thereon fully prepaid for Certified Mail and Return Receipt and caused such envelope to be placed im the United States mail in Auburn, California.

☐ **(BY EXPRESS MAIL OR ANOTHER METHOD OF DELIVERY PROVIDING FOR OVERNIGHT DELIVERY)** - In a sealed envelope, addressed as stated above, with postage (Express Mail) or delivery fees (another method of delivery providing for overnight delivery) thereon fully prepaid, and caused such envelope to be deposited in Auburn, California, in a receptacle or at a facility regularly maintained by the United States Postal Service (Express Mail) or in a receptacle or at a facility of a carrier providing for overnight delivery.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct. Executed on December 23, 2009, at Auburn, California.

_____
RICHARD A. HALL

NOTICE OF PENDENCY OF ACTION                                    -3-

1    RICHARD A. HALL (SBN 135483)
     **BOTTOMLINE LAWYERS**
2    985 Lincoln Way, Suite 206
     Auburn, California 95601
3    Telephone: (530) 888-7100
     Facsimile: (866) 305-1238
4

5    Attorneys for Plaintiffs
     DANIEL MAJOR EDSTROM, an individual;
6    and TERI ANNE EDSTROM, an individual

**EL DORADO CO. SUPERIOR CT.**

**FILED**   DEC 2 4 2009

BY _____
        **Deputy**

7             SUPERIOR COURT OF CALIFORNIA

8               COUNTY OF EL DORADO

9

10   DANIEL MAJOR EDSTROM, an      )    CASE NO.  PC 2009-0773
     individual; and TERI ANNE          )
11   EDSTROM, an individual,          )    PROOF OF SERVICE
                               )
12         Plaintiffs,              )
                               )
13   v.                           )
                               )
14   NDEX WEST, LLC, a Delaware limited )
     liability company; MORTGAGE       )
15   LENDERS NETWORK USA, INC., a   )
     Delaware corporation; AMERICA'S    )
16   SERVICING COMPANY, an entity     )
     form unknown; MORTGAGE         )
17   ELECTRONIC REGISTRATION      )
     SERVICES (MERS); and DOES 1-    )
18   10,000,                      )
                               )
19         Defendants.           )
                               )

20

21

22

23

24

25

26

27

28

RECEIVED
DEC 2 4 2009
-1-

**J. Dawes**

**PROOF OF SERVICE**
CCP §§ 1013(a) and 2015.5
STATE OF CALIFORNIA

| | |
|---|---|
| CASE NAME: | Edstrom v. NDex West, LLC |
| CASE NO.: | El Dorado County Sup. Ct. Case No. 20090773 |
| DOCUMENT(S): | (1) Plaintiff's Ex Parte Application in Support of Request for Temporary Restraining Order and Order To Show Cause Re Preliminary Injunction; (2) Memorandum of Points and Authorities in Support of Plaintiff's Ex Parte Request for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction; (3) Declaration of Richard A. Hall in Support of Plaintiffs' Ex Parte Application for Temporary Restraining Order and Order To Show Cause re Preliminary Injunction; (4) [Endorsed] Temporary Restraining Order; and (5) [Endorsed] Order To Show Cause |

I am employed in the County of Sacramento, State of California. I am over the age of 18 and not a party to the within action. My business address is 1420 River Park Drive, Suite 100, Sacramento, California 95815. On December 15, 2009, I served the following parties with copies of the captioned documents as follows:

☑ **(BY FACSIMILE)** - I caused the document(s) to be transmitted to the facsimile numbers of the parties or attorneys for the parties, as stated below. The transaction report generated by the facsimile machine of sending party, with facsimile number (916) 569-1618, stated all pages were transmitted with no error stated in the report.

| | | |
|---|---|---|
| NDEX West, LLC<br>(972) 661-7800 | Mortgage Electronic Registration Systems, Inc.<br>(703) 748-0183 | America's Servicing Company<br>(866) 453-6315 |
| Mortgage Lenders Network, USA Inc. | | |

☐ **(BY CERTIFIED MAIL AND RETURN RECEIPT)** - In a sealed envelope, addressed as stated above, with postage thereon fully prepaid for Certified Mail and Return Receipt and caused such envelope to be placed im the United States mail in Auburn, California.

☐ **(BY EXPRESS MAIL OR ANOTHER METHOD OF DELIVERY PROVIDING FOR OVERNIGHT DELIVERY)** - In a sealed envelope, addressed as stated above, with postage (Express Mail) or delivery fees (another method of delivery providing for overnight delivery) thereon fully prepaid, and caused such envelope to be deposited in Auburn, California, in a receptacle or at a facility regularly maintained by the United States Postal Service (Express Mail) or in a receptacle or at a facility of a carrier providing for overnight delivery.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct. Executed on December 23, 2009, at Sacramento, California.

_____
C.J. SIDHU

PROOF OF SERVICE                                         -2-

1  RICHARD A. HALL (SBN 135483)
   **BOTTOMLINE LAWYERS**
2  985 Lincoln Way, Suite 206
   Auburn, California 95601
3  Telephone: (530) 888-7100
   Facsimile: (866) 305-1238
4

5  Attorneys for Plaintiffs
   DANIEL MAJOR EDSTROM, an individual;
6  and TERI ANNE EDSTROM, an individual

FILED

09 DEC 15  AM 8: 26

ELDORADO COUNTY
SUPERIOR COURT

BY _____ DEPUTY

7              SUPERIOR COURT OF CALIFORNIA

8              COUNTY OF EL DORADO

9

10  DANIEL MAJOR EDSTROM, an            )   CASE NO.  **PC 20090773**
    individual; and TERI ANNE           )
11  EDSTROM, an individual,             )   ORDER TO SHOW CAUSE RE
                                        )   PRELIMINARY INJUNCTION
12          Plaintiffs,                 )
                                        )   DATE: 12-15-09
13  v.                                  )   TIME: 8:15 a.m.
                                        )   DEPT: 9
14  NDEX WEST, LLC, a Delaware limited  )
    liability company; MORTGAGE         )
15  LENDERS NETWORK USA, INC., a        )
    Delaware corporation; AMERICA'S     )
16  SERVICING COMPANY, an entity        )
    form unknown; MORTGAGE              )
17  ELECTRONIC REGISTRATION             )
    SERVICES (MERS); and DOES 1-        )
18  10,000,                             )
                                        )
19          Defendants.                 )

20

21      IT IS HEREBY ORDERED, pursuant to Code of Civil Procedure section 527and 528,

22  that defendants shall appear on ~~12/16/09~~ 1/7/10 , at

23  8:15 A. M., in department 9 , of the El Dorado County Superior Court, located at

24  3321 Cameron Park Drive, in Cameron Park, California, to show cause, if any there be, why this

25  Court should not enter a preliminary injunction, pending final ruling on the claims in the

26  complaint, enjoining defendants from further violations of the California Civil Code; continuing

27  the terms of this order; and, imposing such additional relief as may be appropriate.

28      IT IS FURTHER ORDERED that the moving party shall serve on the Court and on all

ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

**M. Thompson**

1   other parties all memoranda, affidavits, and other evidence on which plaintiffs intend to rely, at

2   the preliminary injunction, by no later than ___12/18/09___. Any

3   opposition to the motion papers must be filed and served by no later than

4   ___12/29/09___. Any reply must be filed and served by no

5   later than ___1/4/10___. Service of all papers shall be in a manner that

6   guarantees receipt of the documents by no later than forty-eight hours after they have been filed.

7       IT IS FURTHER ORDERED THAT this order be served upon all defendants forthwith.

8

9   DATED: ___12/15/09___

10        DEC 15 2009

11

12        _____

13        JUDGE OF THE SUPERIOR COURT
          COUNTY OF EL DORADO

14        **NELSON KEITH BROOKS**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION                    -2-

1  RICHARD A. HALL (SBN 135483)
   **BOTTOMLINE LAWYERS**
2  985 Lincoln Way, Suite 206
   Auburn, California 95601
3  Telephone: (530) 888-7100
   Facsimile: (866) 305-1238
4

5  Attorneys for Plaintiffs
   DANIEL MAJOR EDSTROM, an individual;
6  and TERI ANNE EDSTROM, an individual

FILED

09 DEC 15  AM 8:30

ELDORADO COUNTY
SUPERIOR COURT
BY _____ DEPUTY

7              SUPERIOR COURT OF CALIFORNIA

8                  COUNTY OF EL DORADO

9

10  DANIEL MAJOR EDSTROM, an          )   CASE NO.  **PC  20090773**
    individual; and TERI ANNE         )
11  EDSTROM, an individual,           )   TEMPORARY RESTRAINING ORDER
                                      )
12       Plaintiffs,                  )   DATE: December 15, 2009
                                      )   TIME:  8:15
13  v.                                )   DEPT:  9
                                      )
14  NDEX WEST, LLC, a Delaware limited )
    liability company; MORTGAGE       )
15  LENDERS NETWORK USA, INC., a      )
    Delaware corporation; AMERICA'S   )
16  SERVICING COMPANY, an entity      )
    form unknown; MORTGAGE            )
17  ELECTRONIC REGISTRATION           )
    SERVICES (MERS); and DOES 1-      )
18  10,000,                           )
                                      )
19       Defendants.                  )
                                      )
20  _____

21       Plaintiffs, Daniel Major Edstrom and Teri Anne Edstrom, have filed a complaint seeking

22  injunctive, declaratory and other relief, and also filed an ex parte application for a temporary

23  restraining order (TRO), pursuant to Code of Civil Procedure section 527 and 528. This Court has

24  considered the submissions filed in support of the TRO, including the application for TRO, the

25  exhibits, memoranda, and declarations, and now being advised in the premises, finds that:

26       1.    There is good cause to believe that defendants have engaged, and are likely to

27             continue to engage, in acts or practices that violate the Civil Code of California;

28             and that plaintiffs are, therefore, likely to prevail on the merits of this action.

TEMPORARY RESTRAINING ORDER                                      -1-

2.     There is good cause to believe that plaintiffs will suffer immediate and continuing harm unless defendants are immediately restrained by an order of this Court.

3.     Plaintiffs' memorandum in support of their TRO application and the accompanying declarations and exhibits demonstrate that it is likely that defendants have engaged in a concerted course of illegal activity in initiating foreclosure proceedings against plaintiffs' home, including scheduling a trustee sale at which plaintiffs' home will be put on the auction block, on December 16, 2009, at 10 a.m.

4.     In compliance with the California Rules of Court, counsel for plaintiff has submitted a certification evidencing the efforts to provide notice to defendant of the submission of plaintiff's TRO motion and copies of all pleadings and papers filed in the action to date.

5.     Notice to all parties herein by this TRO has been given, pursuant to the certification provided by plaintiff.

6.     The court finds, under its discretionary authority, that plaintiff does not have to give any security at this time to postpone the foreclosure sale.

7.     This temporary restraining order is in the public interest.

**THEREFORE, THE COURT HEREBY ORDERS** as follows:

(1)    All defendants and their agents, assigns, employees, officers, attorneys, and representatives are enjoined and restrained from engaging in or performing any act to deprive plaintiff of ownership or possession of the real property located at 2690 Brown Bear Court, Cool, California 95614 (hereafter, "the property"), including but not limited to instituting, prosecuting or maintaining foreclosure or sale proceedings on the property, from recording any deeds or mortgages regarding the property or from otherwise taking any steps whatsoever to deprive plaintiff of ownership in the property, and in particular from proceeding with the sale of the property scheduled for December 16, 2009, at 10 a.m.

(2)    This temporary restraining order shall be binding upon the parties to this action

TEMPORARY RESTRAINING ORDER        -2-

1     and all other persons or entities who receive actual notice of this order by personal

2     service or other acceptable means of service.

3  (3)    Plaintiff shall forthwith serve a copy of this order upon all defendants, together

4     with all other documentation filed with the court in this action.

5  (4)    This temporary restraining order is entered this 15th day of December 2009 at

6     _1/7/10 9_ m., Pacific Standard Time.

7  (5)    Because all defendants were informed prior to this TRO that a TRO was being

8     sought, this Court, under *Hewlett v. Squaw Valley Ski Corp.* (1997) 54

9     Cal.App.4th 499, 534, has discretion to extend the duration of this TRO beyond

10     the statutorily required 15-22 day period (Code Civ. Proc. Section 527(d)(1), and

11     hereby orders, therefore, this temporary restraining order will be in full force and

12     effect until _1-7-10_ .

13

14  DATED: _12/15/09_

15

16

17                      JUDGE OF THE SUPERIOR COURT
                             COUNTY OF EL DORADO

18

19

20

21

22

23

24

25

26

27

28

TEMPORARY RESTRAINING ORDER          -3-

SUPERI.   COURT OF THE STATE OF CAl   ORNIA
IN AND FOR THE COUNTY OF EL DORADO


MINUTE ORDER


CASE NO: PC20090773        DANIEL ESTROM, ETAL VS NDEX WEST LLC, ETAL
DATE: 12/15/09            TIME:  8:15        DEPT: 9


HEARING: EX-PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION BY DANIEL
MAJOR EDSTROM, TERI ANNE EDSTROM

---

Honorable JUDGE NELSON K. BROOKS presiding. Clerk: Melissa D
Thompson. Court Reporter: Cindy M Billalon CSR 10618.

DANIEL MAJOR EDSTROM, TERI ANNE EDSTROM present by counsel Richard
Hall.

Court notes the Defendants have not provided opposition.

Application for Temporary Restraining Order is read and considered.

No objections having been filed,

THE COURT ORDERS:

Temporary Restraining Order is granted.

HEARING PRELIMINARY INJUNCTION set for 01/07/10 at  8:15 in
department 9.

Mr. Hall is to provide notice and serve all documents not later than
12/18/09.

Opposition is to be filed not later than 12/29/09.

Any reply shall be filed not later than 01/04/10

Order presented and signed.

1   RICHARD A. HALL (SBN 135483)
    **BOTTOMLINE LAWYERS**
2   985 Lincoln Way, Suite 206
    Auburn, California 95601
3   Telephone: (530) 888-7100
    Facsimile: (866) 305-1238
4

5   Attorneys for Plaintiffs
    DANIEL MAJOR EDSTROM, an individual;
6   and TERI ANNE EDSTROM, an individual

7               SUPERIOR COURT OF CALIFORNIA

8                  COUNTY OF EL DORADO

9

10  DANIEL MAJOR EDSTROM, an            )   CASE NO.  **PC  20090773**
    individual; and TERI ANNE           )
11  EDSTROM, an individual,             )   DECLARATION OF RICHARD A. HALL IN
                                        )   SUPPORT OF PLAINTIFFS' EX PARTE
12       Plaintiffs,                    )   APPLICATION FOR TEMPORARY
                                        )   RESTRAINING ORDER AND ORDER TO
13  v.                                  )   SHOW CAUSE RE PRELIMINARY
                                        )   INJUNCTION
14  NDEX WEST, LLC, a Delaware limited  )
    liability company; MORTGAGE         )   DATE: December 15, 2009
15  LENDERS NETWORK USA, INC., a        )   TIME: 8:15
    Delaware corporation; AMERICA'S     )   DEPT: 9
16  SERVICING COMPANY, an entity        )
    form unknown; MORTGAGE              )   **BY FAX**
17  ELECTRONIC REGISTRATION             )
    SERVICES (MERS); and DOES 1-        )
18  10,000,                             )
                                        )
19       Defendants.                    )
                                        )
20

21       I, Richard A. Hall, declare:

22       1.    I am an attorney licensed to practice before all courts in California, and am

23  attorney of record for plaintiff in this action. I make this declaration in support of plaintiffs' ex

24  parte application for temporary restraining order and order to show cause re preliminary

25  injunction. I have personal knowledge of the matters stated in this declaration, except for those

26  stated on information and belief, and as to those matters, I believe they are true and if called as a

27  witness to testify to the truth of the matters stated herein, will competently do so.

28       2.    Attached hereto, marked exhibit 1, is a true and correct copy of the "Deed of

DECL. OF R.A. HALL ISO PLFS' EXPARTE APP FOR TRO AND OSC RE PRELIM INJUNCTION   -1-

EL DORADO CO. SUPERIOR CT.

**FILED**   DEC 1 4 2009

BY _____

        **Deputy**

E. Romero

1    Trust,"executed by plaintiffs, on the property known as 2690 Brown Bear Court, Cool, California

2    95614, which copy I received direct from Placer Title Company, in Rocklin, California.

3          3.      Attached hereto, marked exhibit 2, is a true and correct copy of "Notice of Default

4    and Election To Sell Under Deed of Trust," issued December 19, 2008, and recorded December

5    23, 2008, which I received direct from Placer Title Company, in Rocklin, California.

6          4.      Attached hereto, marked exhibit 3, is a true and correct copy of "Substitution of

7    Trustee," executed January 26, 2009, and recorded on February 5, 2009, in which NDEx West

8    was purportedly substituted for Mitchell L. Heffernan, which copy I received direct from Placer

9    Title Company, in Rocklin, California.

10         5.      Attached hereto, marked exhibit 4, is a true and correct copy of "Assignment of

11   Deed of Trust," executed on February 6, 2009, by MERS, as nominee for Mortgage Lenders

12   Network transferring all interests in the note and deed of trust to U.S. Bank National Association

13   as Trustee by Residential Funding Company, LLC FKA Residential Funding Corporation,

14   Attorney in Fact," which copy I received direct from Placer Title Company, in Rocklin,

15   California.

16         6.      Attached hereto, marked exhibit 5, is a true and correct copy of "Notice of

17   Trustee's Sale," executed March 24, 2009 and recorded March 30, 2009.

18         7.      Attached hereto, marked exhibit 6, is a true and correct copy of "Assignment of

19   Deed of Trust," executed on July 7, 2009 and recorded July 15, 2009, and signed by MERS, as

20   nominee for Mortgage Lenders Network, purportedly assigning all rights and interests to the note

21   and deed of trust to "U.S. Bank National Association, as Trustee."

22         8.      On November 2, 2009, I checked the website for PriorityPosting, which is

23   identified on the notice of trustee's sale, as the party that maintains sale information on behalf of

24   defendant NDEx West. According to the posting that day, on November 2, 2009, the subject

25   property had been sold on August 7, 2009. Attached hereto, collectively marked exhibit 7, is a

26   true and correct copy of a printout, and facsimile of printout, from the Priorityposting website,

27   which I printed out on November 2, 2009.

28         9.      I obtained direct from Placer Title Company, in Rocklin, California, all records

DECL. OF R.A. HALL ISO PLFS' EXPARTE APP FOR TRO AND OSC RE PRELIM INJUNCTION    -2-

1  that have been recorded with the El Dorado County Recorder's Office, from the time of

2  recordation of the subject deed of trust, in or about September 14, 2005, to the present time. No

3  trustee's deeds of sale have ever been recorded.

4      10.      Attached hereto, marked exhibit 8, is a true and correct copy of the "Notice of

5  Trustee's Sale," dated November 17, 2009 and recorded on December 1, 2009, scheduling the

6  sale date of the subject property for December 16, 2009.

7      11.      As stated above, I obtained direct from Placer Title Company, in Rocklin,

8  California, all records that have been recorded with the El Dorado County Recorder's Office,

9  from the time of recordation of the subject deed of trust, in or about September 14, 2005, to the

10 present time; and no rescission of the first assignment of deed of trust has been recorded with the

11 El Dorado County Recorder's Office.

12      I declare under penalty of perjury under the laws of California that the foregoing is true

13 and correct and that this declaration is executed on December 14, 2009, at Auburn, California.

14

15

16

17

18  RICHARD A. HALL

19

20

21

22

23

24

25

26

27

28

DECL. OF R.A. HALL ISO PLFS' EXPARTE APP FOR TRO AND OSC RE PRELIM INJUNCTION   -3-

# Exhibit 1

Branch :P06,User :4007                    Comment:                              Station Id :NNAU

4040021649
FNT 321335
Recording Requested By:
MORTGAGE LENDERS NETWORK USA, INC.

Return To:
MORTGAGE LENDERS NETWORK USA, INC.
213 COURT ST. MIDDLETOWN, CT 06457

Prepared By:
MORTGAGE LENDERS NETWORK USA, INC.
213 Court St. Middletown CT 06457

El Dorado, County Recorder
William Schultz Co Recorder Office
DOC- 2005-0077328-00
Acct 2-FIDELITY NATL TITLE CO
Wednesday, SEP 14, 2005 14:30:00
Ttl Pd   $72.00        Nbr-0000775348
                       LJP/C1/1-22

──────────── [Space Above This Line For Recording Data] ────────────

# DEED OF TRUST

MIN 1002610-4040021649-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated September 7, 2005
together with all Riders to this document.
(B) "Borrower" is
DANIEL MAJOR EDSTROM AND
TERI ANNE EDSTROM , HUSBAND AND WIFE

Borrower's address is 2690 BROWN BEAR COURT  , COOL, CA 95614
. Borrower is the trustor under this Security Instrument.
(C) "Lender" is MORTGAGE LENDERS NETWORK USA, INC.

Lender is a corporation or association
organized and existing under the laws of Delaware

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3005 1/01

-6A(CA) (0207)
Page 1 of 15                    Initials: RE JE
VMP MORTGAGE FORMS - (800)521-7291

Branch :P06,User :4007                    Comment:                    Station Id :NNAU

077328
4040021649

Lender's address is  213 Court St. Middletown CT 06457

(D) "Trustee" is Mitchell L. Heffernan

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated September 7, 2005
The Note states that Borrower owes Lender  Five Hundred Thousand and No/100 -------
-------------------------------------------------------------- Dollars
(U.S. $   500,000.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than October 1, 2035

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: REJE

-6A(CA) (0207)                    Page 2 of 16                    Form 3005  1/01

EL DORADO,CA                      Page 2 of 22                    Printed on 12/10/2009 11:23:39 AM
Document: DOT 2005.77328

Branch :P06,User :4007                    Comment:                              Station Id :NNAU

077328

4040021649

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                                    of EL DORADO                        :
        [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
SEE ATTACHED SCHEDULE A

Parcel ID Number:                                        which currently has the address of
2690 BROWN BEAR COURT                                                        [Street]
COOL                                     [City], California 95614           [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

Initials: _____

-6A(CA) (0207)              Page 3 of 15                              Form 3005  1/01

Branch :P06,User :4007                    Comment:                                      Station Id :NNAU

077328

4040021649

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

-6A(CA) (0207)                     Page 4 of 15                   Initials: ____                  Form 3005  1/01

077328

4040021649

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

@ -6A(CA) (0207)                    Page 6 of 16            Initials: PEJE            Form 3005  1/01

Branch :P06,User :4007                    Comment:                         Station Id :NNAU

4040021649                    077328

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6A(CA) (0207)              Page 6 of 16         Initials: _DE JE_         Form 3005  1/01

EXHIBIT B - Page 77

· Branch :P06,User :4007                     Comment:                              Station Id :NNAU

077328

4040021649

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(CA) (0207)                          Page 7 of 15              Initials: _____          Form 3005  1/01

077328

4040021649

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

$\begin{array}{lll}\text{\Large{VMP}}\text{®}\text{ -6A(CA) (0207)} & \text{Page 8 of 15} & \text{Initials:}\textit{PJS} \qquad \text{Form 3005  1/01}\end{array}$

. Branch :P06,User :4007                    Comment:                              Station Id :NNAU

077328

4040021649

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

-6A(CA) (0207)                         Page 9 of 15                 Initials: _____       Form 3005  1/01

Branch.:P06,User :4007                    Comment:                    Station Id :NNAU

4040021649                 **077328**

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

-6A(CA) (0207)                    Page 10 of 15              Initials:         Form 3005  1/01

4040021649

077328

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: _____

—6A(CA) (0207)                    Page 11 of 15                    Form 3005  1/01

Branch :P06,User :4007                          Comment:                                Station Id :NNAU

077328

4040021649

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6A(CA) (0207)                        Page 12 of 15          Initials: _____          Form 3005   1/01

·Branch :P06,User :4007                    Comment:                                    Station Id :NNAU

077328

4040021649

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's' deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by. Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6A(CA) (0207)                          Page 13 of 15                 Initials: *[signature]*              Form 3005  1/01

EXHIBIT B - Page 84

· Branch :P06,User :4007                      Comment:                                   Station Id :NNAU

077328

4040021649

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____            _Daniel Major Edstrom_____(Seal)
                                    **DANIEL MAJOR EDSTROM**          -Borrower

_____            _Teri Anne Edstrom_____(Seal)
                                    **TERI ANNE EDSTROM**             -Borrower

_____(Seal)       _____(Seal)
                 -Borrower                            -Borrower

_____(Seal)       _____(Seal)
                 -Borrower                            -Borrower

_____(Seal)       _____(Seal)
                 -Borrower                            -Borrower

-6A(CA) (0207)                  Page 14 of 15                Form 3005  1/01

EL DORADO,CA                    Page 14 of 22          Printed on 12/10/2009 11:23:45 AM
Document: DOT 2005.77328

EXHIBIT B - Page 85

. Branch :P06,User :4007                    Comment:                    Station Id :NNAU

077328

4040021649

State of California
County of Sacramento                                    } ss.

On September 7, 2005          before me, Laura Capparelli
DANIEL MAJOR EDSTROM
TERI ANNE EDSTROM                                              personally appeared

, personally known to me

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



LAURA CAPPARELLI
Commission # 1477976
Notary Public - California
Placer County
My Comm. Expires Mar 21, 2008

⊞ -6A(CA) (0207) .          Page 16 of 15          Initials: ___          Form 3005  1/01

EL DORADO,CA                        Page 15 of 22          Printed on 12/10/2009 11:23:46 AM
Document: DOT 2005.77328

Branch :P06,User :4007                  Comment:                          Station Id :NNAU

077328

4040021649

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **7th**    day of    **September    2005** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **MORTGAGE LENDERS NETWORK USA, INC.**

("Lender") of the same date and covering the property described in the Security Instrument and located at:
**2690 BROWN BEAR COURT  , COOL, CA 95614**

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of          **7.200**%. The Note provides for changes in the interest rate and the monthly payments, as follows:
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the first day of **October 1, 2007** and on that day every  **6th**             month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding  **Six**                                                  percentage points
(  **6.00000**          %) to the Current Index. The Note Holder will then round the result of

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) - Single Family - Fannie Mae Uniform Instrument
⊗-838R (0402)   Form 3138 1/01
Page 1 of 3    Initials: _____
VMP Mortgage Solutions, Inc.
(800)521-7291

MIN- 1002610-4040021649-3

EL DORADO,CA                      Page 16 of 22            Printed on 12/10/2009 11:23:46 AM
Document: DOT 2005.77328

077328

4040021649

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.2000** % or less than **7.2000** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage points ( **1.0000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **13.2000** * %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

**\*My interest rate will never be less than 7.2%**

Initials: *PEJE*

ⓋⓂⓅ-838R (0402)                    Page 2 of 3                    Form 3138 1/01

EXHIBIT B - Page 88

Branch :P06,User :4007                    Comment:                          Station Id :NNAU

077328

4040021649

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
DANIEL MAJOR EDSTROM    -Borrower          TERI ANNE EDSTROM     -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower

VMP-838R (0402)              Page 3 of 3              Form 3138 1/01

EL DORADO,CA                    Page 18 of 22        Printed on 12/10/2009 11:23:47 AM
Document: DOT 2005.77328

EXHIBIT B - Page 89

Branch :P06,User :4007                    Comment:                              Station Id :NNAU

077328

4040021649

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 7th                    day of
**September        2005**                              , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the
"Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to
**MORTGAGE LENDERS NETWORK USA, INC.**

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:
**2690 BROWN BEAR COURT    , COOL, CA 95614**

[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in
**the covenants, conditions**
**and restrictions in the declarations of AUBURN LAKE TRAILS**

(the "Declaration"). The Property is a part of a planned unit development known as
**AUBURN LAKE TRAILS**

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association
or equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.
     **PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
     **A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the
PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii)
articles of Incorporation, trust Instrument or any equivalent document which creates the
Owners Association; and (iii) any by-laws or other rules or regulations of the Owners
Association. Borrower shall promptly pay, when due, all dues and assessments imposed
pursuant to the Constituent Documents.

**MULTISTATE PUD RIDER** - Single Family - Fannie Mae/Freddie Mac **UNIFORM**
**INSTRUMENT**
Form 3150 1/01              MIN- 1002610-4040021649-3
                                           Page 1 of 3                    Initials: *PEJE*
(vmp)-7R (0411)    VMP Mortgage Solutions, Inc. (800)521-7291

· Branch :P06,User :4007                    Comment:                                        Station Id :NNAU

4040021649                    0 7 7 3 2 8

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _PEJE_

-7R (0411)                    Page 2 of 3                    Form 3150 1/01

EXHIBIT B - Page 91

Branch :P06,User :4007                    Comment:                              Station Id :NNAU

4040021649              077328

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
DANIEL MAJOR EDSTROM      -Borrower        TERI ANNE EDSTROM         -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                  -Borrower


VMP-7R (0411)                    Page 3 of 3                    Form 3150 1/01


EL DORADO,CA                     Page 21 of 22        Printed on 12/10/2009 11:23:49 AM
Document: DOT 2005.77328

EXHIBIT B - Page 92

Branch :P06,User :4007                    Comment:                              Station Id :NNAU

077328

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA, COUNTY OF EL DORADO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 885, of Auburn Lake Trails Unit No. 4, filed May 8, 1970, in Book E, of Maps, at page 61, El Dorado County Records.

APN: 073-141-03-100



EL DORADO,CA                        Page 22 of 22                    Printed on 12/10/2009 11:23:49 AM
Document: DOT 2005.77328

**Exhibit 2**

Branch :P06,User :4007                     Comment:                                         Station Id :NNAU

Recording requested by:
LandAmerica United Title Company- CA

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013



El Dorado, County Recorder
William Schultz Co Recorder Office
DOC- 2008-0060612-00
Check Number  51603
Tuesday, DEC 23, 2008 10:24:32
Ttl Pd  $17.00        Nbr-0001139015
                                          JLB/C1/1-3

DFF20080134014711

Space above this line for Recorder's use only

Trustee Sale No. : 20080134014711          Title Order No.: 20863960

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is $29,373.66 as of 12/19/2008 and will increase until your account becomes current.  While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier then the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

FCUS_NoticeOfDefault.rpt(09/05/2008)Ver-24

Page 1 of 2

060612

**IMPORTANT NOTICE**
**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No. : 20080134014711          Title Order No.: 20863960

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**AMERICA'S SERVICING COMPANY**
c/o NDEx West, LLC
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

**NOTICE IS HEREBY GIVEN THAT:** NDEx West, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated **09/07/2005**, executed by **DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM**, as Trustor, to secure obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)**, as Beneficiary Recorded on **09/14/2005** as Instrument No. **2005-0077328-00** of official records in the Office of the Recorder of **EL DORADO** County, California, as more fully described on said Deed of Trust. Including a Note(s)/ Unconditional Guaranty which had a principal amount of **$500,000.00** that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

**THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 7/1/2008 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.**

**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED: 12/19/2008

NDEx West, LLC as Agent for Beneficiary

By: _Aaron W. Brown, Agent_

060612

# NOTICE OF DEFAULT DECLARATION
## PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

America's Servicing Company
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower: DANIEL M EDSTROM
Property Address: 2690 BROWN BEAR COU
            COOL            CA  95614

The undersigned mortgagee, beneficiary, or their authorized agent (collectively, the "Beneficiary") represent and declares that the requirements of CA Civil Code 2923.5 have been met. This Declaration is required for any residential owner occupied property in which the loan was originated between January 1, 2003 and December 31, 2007. Non-owner occupied and vacant properties are exempt from the requirements of CA Civil Code 2923.5.

One of the below necessary requirements was met by the Beneficiary:

*   The Beneficiary has made contact with the borrower pursuant to CA Civil Code 2923(a)(2). Contact with the borrower was made in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

*   Due Diligence to contact the borrower was exercised pursuant to CA Civil Code 2923.5(g)(2) by the Beneficiary.

*   The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, Trustee, beneficiary, or authorized agent pursuant to CA Civil Code 2923.5(h)(1).

*   The borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries pursuant to CA Civil Code 2923.5(h)(2).

*   The borrower has filed for bankruptcy and the proceedings have not been finalized pursuant to CA Civil Code 2923.5(h)(3).

Dated:   12/18/2008

                                        America's Servicing Company

                                                John Kennerty

12/23/2008,20080060612

EL DORADO,CA                          Page 3 of 3                    Printed on 12/10/2009 11:23:51 AM
Document: NDF 2008.60612

**Exhibit 3**

Branch :P06,User :4007                         Comment:                                    Station Id :NNAU

Recording requested by:
**LAWYERS TITLE COMPANY**

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500,
Addison, Texas 75001-9013



El Dorado, County Recorder
William Schultz Co Recorder Office
DOC- 2009-0004996-00
Check Number 55232
Thursday, FEB 05, 2009 13:51:51
Ttl Pd $14.00        Nbr-0001147839
                     JLR/C1/1-2

**\*SUB200801340**
SUB20080134014711

Space above this line for Recorder's use only

Trustee Sale No. : 20080134014711   Title Order No.: 20863960

## SUBSTITUTION OF TRUSTEE

WHEREAS, DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM was the original Trustor, MITCHELL L. HEFFERNAN was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) was the original Beneficiary Recorded on 09/14/2005 as Instrument No. 2005-0077328-00 of official records in the Office of the Recorder of EL DORADO County, California, as more fully described on said Deed of Trust.; and WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said prior Trustee.

NOW, THEREFORE, the undersigned hereby substitutes, NDEx West, L.L.C., WHOSE ADDRESS IS: 15000 Surveyor Boulevard, Suite 500, Addison, Texas 75001-9013, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED:                           Wells Fargo Bank NA, attorney in fact for  U S BANK NATIONAL
                                 ASSOCIATION, AS TRUSTEE
**01/26/2009**

                                 Karan Abernethy Assistant Secretary

State of    South Carolina  }
County of   York  }

On  01/26/2009  before me, _____ **Carmen Y. Pickett** _____, Notary Public, personally appeared Karan Abernethy who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that  he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

(If signed and notarized in South Carolina ):                    **SEE ATTACHED AFFIDAVIT**

I certify under PENALTY OF PERJURY under the laws of the State of South Carolina that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _Carmen Pickett_ (Seal)

My commission expires: _____



OFFICIAL SEAL
Notary Public
State of South Carolina
CARMEN Y PICKETT
My Commission Expires Jan. 14, 2018

FCUS_SubstituteOfTrustee.rpt - 12/28/2007 - Ver-24                                    Page 1 of 1

EL DORADO,CA                     Page 1 of 2                    Printed on 12/10/2009 11:23:51 AM
Document: DOT SBT 2009.4996

Branch :P06,User :4007                          Comment:                              Station Id :NNAU

NDEx West, L.L.C
15000 Surveyor Boulevard, Suite 500    **004996**
Addison, Texas 75001-9013
Telephone:  (866) 795-1852
Telecopier:  (972) 661-7800

## AFFIDAVIT

**TRUSTEE'S SALE NUMBER:**    20080134014711

I, Jeremy Briggs, the undersigned, a United States Citizen declare that:

I am an employee, over the age of eighteen years, of

NDEx West, L.L.C., and/or NDEX,

whose business address is:

15000 Surveyor Boulevard, Suite 500, Addison, Texas 75001-9013

In compliance with Section 2934a(b) of the Civil Code of the State of California, Notice has been given to the prior trustee then of record, that NDEx West, L.L.C. has been substituted as trustee under the Deed of Trust described in the attached copy of Substitution of Trustee and a copy of said Substitution of Trustee has been mailed prior to the recording thereof, in the manner provided in Section 2924(b) of the Civil Code of the State of California to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.

NDEx West, L.L.C., and/or NDEX

_____        ___January 29, 2009___
Jeremy Briggs                                              DATED
(Declarant)

State of    TEXAS     }
County of  DALLAS    }

On January 29, 2009 before me, Sandra Pitka Notary Public, personally appeared Jeremy Briggs personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____ (Seal)

My commission expires: _____

SANDRA PITKA
Notary Public
State of Texas
My Comm. Exp. 04-11-2012

SBC20080134014711

*02/05/2009.20090004996*

# Exhibit 4

Branch :P06,User :4007                    Comment:                              Station Id :NNAU

2

El Dorado, County Recorder
William Schultz Co Recorder Office
DOC- 2009-0006093-00
Check Number 1994124259
Thursday, FEB 12, 2009 14:07:02
Ttl Pd    $11.00      Nbr-0001149389
                              LJP/C1/1-1

Recording requested by:
LAWYERS TITLE COMPANY

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

ASSG20080134014711

Space above this line for Recorder's use only

Trustee Sale No. : 20080134014711        Title Order No.: 20863960

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION ATTORNEY IN FACT all beneficial interest under that certain Deed of Trust dated 09/07/2005, executed by DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM, as Trustor to MITCHELL L. HEFFERNAN, Trustee, and Recorded on 09/14/2005 as Instrument No. 2005-0077328-00 of Official Records in the County Recorder's office of EL DORADO County, California. Describing land therein: AS DESCRIBED IN DEED OF TRUST MENTIONED ABOVE.

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated

FEB 0 6 2009

State of          Texas}
County of         Dallas}

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INC.

Stephen C. Porter, Assistant Secretary

Before me ___Leanna Kimball___, the undersigned Notary Public, on this day personally appeared Stephen C. Porter, who is the Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INC., a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ___ day of   FEB 0 6 2009   , 2009.

My Commission Expires:

3-22-12

Notary Public Signature

Leanna Kimball
Printed Name of Notary Public

LEANNA KIMBALL
Notary Public
State of Texas
My Comm. Exp. 03-22-2012

Page 1 of 1

CAASGNDOT.rpt - (01/25/08) / Ver-12

02/12/2009,20090006093

EL DORADO,CA                    Page 1 of 1                    Printed on 12/10/2009 11:23:53 AM
Document: DOT ASN 2009.6093

**Exhibit 5**

Branch :P06,User :4007                    Comment:                              Station Id :NNAU

Recording requested by:
LAWYERS TITLE

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

NOTS20080134014711



El Dorado, County Recorder
William Schultz Co Recorder Office
DOC- 2009-0014351-00
Check Number 1894125232
Monday, MAR 30, 2009 14:31:17
Ttl Pd   $11.00       Nbr-0001160467
                                    KMV/C1/1-1

Space above this line for Recorder's use only

Trustee Sale No.: 20080134014711        Title Order No: 20863960        FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A   DEED OF TRUST,   DATED 09/07/2005.   UNLESS YOU TAKE ACTION TO
PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.   IF YOU NEED AN EXPLANATION OF THE
NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NDEx West, LLC, as duly appointed Trustee under and pursuant to Deed of Trust Recorded on 09/14/2005 as Instrument No.
2005-0077328-00 of official records in the office of the County Recorder of EL DORADO County, State of CALIFORNIA.

EXECUTED BY:    DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM,
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other
form of payment authorized by 2924h(b), (payable at time of sale in lawful money of the United States).
DATE OF SALE:  04/15/2009       TIME OF SALE:       10:00 AM
PLACE OF SALE:     AT   THE   MAIN   ENTRANCE   OF   THE   COUNTY   COURTHOUSE,   495 MAIN   ST.,   PLACERVILLE,
                   CA.
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
                   2690 BROWN BEAR COURT, COOL, CALIFORNIA 95614
APN#:        073-141-03-100

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any,
shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or
encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in
said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by
said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable
estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $524,658.88.   The beneficiary
under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale,
and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded
in the county where the real property is located.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
PRIORITY POSTING & PUBLICATION              NDEx West, L.L.C. MAY BE ACTING AS A DEBT
17501 IRVINE BLVD., SUITE ONE               COLLECTOR   ATTEMPTING   TO   COLLECT   A
TUSTIN, CA 92780                            DEBT.   ANY   INFORMATION   OBTAINED   WILL
714-573-1965                                BE USED FOR THAT PURPOSE.
www.priorityposting.com

NDEx West, L.L.C. as Authorized Agent



                                                        Dated: 03/24/2009

BY: Randy Middleton

03/30/2009,20090014351

FCUS_NoticeOfTrusteeSale.rpt - Record - 01/09/2009 - Ver-20                                Page 1 of 1

EL DORADO,CA                    Page 1 of 1              Printed on 12/10/2009 11:23:55 AM
Document: DOT SLE 2009.14351

**Exhibit 6**

Branch :P06,User :4007                          Comment:                                          Station Id :NNAU

El Dorado, County Recorder
William Schultz Co Recorder Office
**DOC- 2009-0035006-00**
Check Number  4127650
Wednesday, JUL 15, 2009 13:06:34
Ttl Pd    $12.00        Nbr-0001188307
                          LJP/C1/1-1

Recording requested by:
LAWYERS TITLE

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

ASSG20080134014711

Space above this line for Recorder's use only

Trustee Sale No. : 20080134014711      Title Order No.: 20863960

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to U S BANK NATIONAL ASSOCIATION, AS TRUSTEE all beneficial interest under that certain Deed of Trust dated 09/07/2005, executed by **DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM**, as Trust or to MITCHELL L. HEFFERNAN, Trustee, and Recorded on 09/14/2005 as Instrument No. 2005-0077328-00 of Official Records in the County Recorder's office of EL DORADO County, California. Describing land therein: AS DESCRIBED IN DEED OF TRUST MENTIONED ABOVE.

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated _____                 MORTGAGE ELECTRONIC REGISTRATION
       JUL 0 7 2009                             SYSTEMS, INC. AS NOMINEE FOR
                                                MORTGAGE LENDERS NETWORK USA, INC.

                                                
                                                David Seybold, Assistant Secretary

State of    Texas}
County of   Dallas}

Before me _____, the undersigned Notary Public, on this day personally appeared David Seybold, who is the Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INC., a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of  JUL 0 7 2009 , 2009

My Commission Expires: _____          _____
                                                 Notary Public Signature

          SONIA CARDONA
          Notary Public
          State of Texas                          _____
          My Comm. Exp. 06-20-2011                Printed Name of Notary Public

CAASGNDOT.rpt - (01/25/08) / Ver-12                                        Page 1 of 1

07/15/2009, 20090035006

EL DORADO,CA                          Page 1 of 1              Printed on 12/10/2009 11:23:54 AM
Document: DOT ASN 2009.35006

EXHIBIT B - Page 106

**Exhibit 7**

AUCTIONS matching [ TS#/Client Ref.: 20088124014711

| TS Number | Address | | Estimated Debt | Opening Bid | Status | Auction Time | User Time |
|---|---|---|---|---|---|---|---|
| Friday, August 27, 2009 | | | | | | | |
| 20088124014711 | 2690 BROWN BEAR COURT, COOL, CA 95614 | | $521,650.00 | $230,000.00 | Sold to Beneficiary | 10:00 AM | 11:00 AM |

AUCTIONS matchingTS#/Client Ref.: 20080134014711

| TS Number | Address | Estimated Debt | Opening Bid | Status | Auction Time | User Time |
|---|---|---|---|---|---|---|
| **Friday, August 07, 2009** | | | | | | |
| 20080134014711 | 2690 Brown Bear Court, Cool, CA 95614 | $524,658.88 | $230,000.00 | Sold to Beneficiary | 10:00 AM | 11:00 AM |

**Exhibit 8**

Branch :P06,User :4007                    Comment:                              Station Id :NNAU

Recording requested by:
LAWYERS TITLE

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852



El Dorado, County Recorder
William Schultz Co Recorder Office
DOC- 2009-0060453-00
Check Number 78502
Tuesday, DEC 01, 2009 13:49:45
Ttl Pd  $15.00      Nbr-0001222998
                    DRW/C1/1-2



NOTS2008013401471l

Space above this line for Recorder's use only

Trustee Sale No.: 20080134014711        Title Order No.: 20863966        FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 09/07/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NDEX WEST, LLC, as duly appointed Trustee under and pursuant to Deed of Trust Recorded on 09/14/2005 as Instrument No. 2005-0077328-00 of official records in the office of the County Recorder of EL DORADO County, State of CALIFORNIA.

EXECUTED BY:   DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM,
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (payable at time of sale in lawful money of the United States).
DATE OF SALE:  12/16/2009     TIME OF SALE:       10:00 AM
PLACE OF SALE:    AT THE MAIN ENTRANCE OF THE COUNTY COURTHOUSE, 495 MAIN ST., PLACERVILLE, CA.
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
          2690 BROWN BEAR COURT, COOL, CALIFORNIA 95614
APN#:     073-141-03-100 -

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $554,812.31. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
PRIORITY POSTING & PUBLICATION                          NDEx West, L.L.C. MAY BE ACTING AS A DEBT
17501 IRVINE BLVD., SUITE ONE                           COLLECTOR ATTEMPTING TO COLLECT A
TUSTIN, CA 92780                                        DEBT. ANY INFORMATION OBTAINED WILL
714-573-1965                                            BE USED FOR THAT PURPOSE.
www.priorityposting.com

NDEx West, L.L.C. as Authorized Agent

                                        Dated: 11/17/2009
BY: Randy Middleton

                    SEE ATTACHED DECLARATION

FCUS_NoticeOfTrusteeSale.rpt - Record-01/09/2009 - Ver-20                      Page 1 of 1

EL DORADO,CA                         Page 1 of 2           Printed on 12/10/2009 11:23:54 AM
Document: DOT SLE 2009.60453

060453

## CALIFORNIA DECLARATION

I, _____ China Brown _____, of America's-Servicing Company ("Mortgage Loan Servicer"), declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

The Mortgage Loan Servicer __X__ has or ___ has not obtained from the Commissioner of Corporation a final or temporary order of exemption pursuant to California Civil code Section 2923.53 that is current and valid on the date the accompanying Notice of Sale is filed.

AND/OR

The timeframe for giving Notice of Sale specified in subdivision (a) of Civil Code Section 2923.52 ___ does or __X__ does not apply pursuant to Section 2923.52 or 2923.55.

07/01/2009    Fort Mill, South Carolina
DATE AND PLACE

_____          Loan Administration Supervisors
Name of Signor                    Title and/or Position

China Brown

12/01/2009, 20090060453

EL DORADO,CA                    Page 2 of 2          Printed on 12/10/2009 11:23:55 AM
Document: DOT SLE 2009.60453

EXHIBIT B - Page 112

1  RICHARD A. HALL (SBN 135483)
   **BOTTOMLINE LAWYERS**
2  985 Lincoln Way, Suite 206
   Auburn, California 95601
3  Telephone: (530) 888-7100
   Facsimile: (866) 305-1238
4

5  Attorneys for Plaintiffs
   DANIEL MAJOR EDSTROM, an individual;
6  and TERI ANNE EDSTROM, an individual

EL DORADO CO. SUPERIOR CT.

FILED   DEC 1 4 2009

BY _____
                Deputy

7              SUPERIOR COURT OF CALIFORNIA

8                 COUNTY OF EL DORADO

9

10  DANIEL MAJOR EDSTROM, an
    individual; and TERI ANNE
11  EDSTROM, an individual,

12          Plaintiffs,

13  v.

14  NDEX WEST, LLC, a Delaware limited
    liability company; MORTGAGE
15  LENDERS NETWORK USA, INC., a
    Delaware corporation; AMERICA'S
16  SERVICING COMPANY, an entity
    form unknown; MORTGAGE
17  ELECTRONIC REGISTRATION
    SERVICES (MERS); and DOES 1-
18  10,000,

19          Defendants.

CASE NO.  PC  20090773

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF PLAINTIFFS'
EX PARTE REQUEST FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO
SHOW CAUSE RE PRELIMINARY
INJUNCTION

DATE: December 15, 2009
TIME: 8:15
DEPT: 9

**BY FAX**

20
21
22
23
24
25
26
27
28

MPA ISO PLFS' EX PARTE APP FOR TRO AND PRELIM INJUNCTION **E. Romero** -1-

# INTRODUCTION

Plaintiffs request this Court halt the game being played by defendant NDEx West and its accomplices, all of whom are rushing to sell plaintiffs' home before anyone discovers their wrongdoing. Aiming to get things done–and fast–defendants scheduled the foreclosure sale to occur fifteen days after the most recent notice of trustee's sale was recorded, on December 1, 2009. Defendants scheduled the foreclosure with very little notice, putting plaintiffs' home on the auction block with only one day left before this Court will consider this ex parte application. The sale is scheduled to proceed tomorrow, December 16, 2009, at 10 a.m.

The facts supporting this Court's halting the sale are short, simple, clear and to the point. They follow.

# PERTINENT FACTS

On September 5, 2005, plaintiffs executed a deed of trust on their property, located at 2690 Brown Bear Court, Cool, California 95614. ("Declaration of Richard A. Hall in Support of Plaintiffs' Ex Parte Application for Temporary Restraining Order and Order To Show Cause Re Preliminary Injunction" [hereafter, "Hall decl."], filed concurrently herewith, ¶2 & exh. 1, thereto, "Deed of Trust," executed by Daniel Major Edstrom and Teri Anne Edstrom.) The parties to the trust deed were designated as follows: Borrower - Daniel Major Edstrom and Teri Anne Edstrom, husband and wife; Lender – Mortgage Lenders Network USA, Inc.; and Trustee – Mitchell L. Heffernan. The trust deed was subsequently recorded, with the el Dorado County Recorder's Office, on September 14, 2005. (Ibid.)

On December 19, 2008, a default notice was issued, and thereafter recorded on December 23, 2008. (Hall decl., ¶3, & exh. 2, thereto, "Notice of Default and election To Sell Under Deed of Trust," recorded on December 23, 2008.)

Defendant Ndex West, LLC asserts it is the "duly appointed trustee," authorized to conduct the subject foreclosure proceedings, under a "Substitution of Trustee," executed by "Wells Fargo Bank, N.A., as attorney in fact for U.S. National Bank Association, as Trustee," in which NDEx West, LLC was substituted for Mitchell L. Heffernan. (Hall decl., ¶4 & exh. 3, thereto, "Substitution of Trustee," signed January 26, 2009 and recorded February 5, 2009.)

1  Likewise, "U.S. National Bank, as Trustee," purportedly executed the trustee substitution under

2  an assignment of deed of trust from the original lender, Mortgage Lenders Network. In this

3  regard, two assignments of deed of trust are on record with the El Dorado County Recorder. The

4  first one is dated February 6, 2009–one day after the trustee substitution had been recorded–in

5  which MERS, as nominee for Mortgage Lenders, purportedly transferred all rights and title in the

6  note and deed of trust to "U.S. Bank National Association as Trustee by Residential Funding

7  Company, LLC FKA Residential Funding Corporation Attorney in Fact." (Hall decl., ¶5 & exh.

8  4, thereto, "Assignment of Deed of Trust," signed February 6, 2009, and recorded February 12,

9  2009.)

10        Before the second assignment of deed of trust was executed, on July 7, 2009, a notice of

11  trustee's sale was issued by NDEx West, purportedly the duly appointed trustee, under the trustee

12  substitution that had been recorded on February 5, 2009. (Hall decl., ¶6 & exh. 5, thereto,

13  "Notice of Trustee's Sale," executed March 24, 2009 and recorded March 30, 2009.) The second

14  assignment of deed of trust, recorded thereafter on July 15, 2009, was executed by MERS, as

15  nominee for Mortgage Lenders Network, and purportedly assigned all rights and interests to the

16  note and deed of trust to "U.S. Bank National Association, as Trustee." (Hall decl., ¶7 & exh. 6,

17  thereto, "Assignment of Deed of Trust," executed July 7, 2009, and recorded July 15, 2009.)  No

18  rescission of the first assignment of deed of trust has been recorded with the El Dorado County

19  Recorder's Office. (Hall decl., ¶11.)

20        According to the records of defendant NDEx West, dated November 2, 2009, the subject

21  property was sold on August 7, 2009. (Hall decl., ¶8 & exh. 7, thereto, printout and facsimile of

22  printout from Priorityposting website, dated November 2, 2009.) But, no Trustee's Deed of Sale

23  has ever been recorded. (Hall decl., ¶9.) Defendant NDEx West, thereafter, issued a second

24  trustee's sale notice, on November 17, 2009, scheduling the sale for December 16, 2009. (Hall

25  decl., ¶10 & exh. 8, thereto, "Notice of Trustee's Sale," dated November 17, 2009, and recorded

26  on December 1, 2009.) Attached to this memorandum is a "Chronology of the Events," as

27  heretofore described, which is incorporated herein, and specifically made a part of this

28  memorandum.

## SUMMARY OF ARGUMENT

1.     Plaintiffs seek a temporary restraining order halting the sale of their home. Preliminarily, the trustee with power of sale and legal authority to conduct the foreclosure proceedings is Mitchell L. Heffernan, the original trustee, and not NDex West, because neither Mortgage Lenders Network (the original beneficiary) nor any of its successors nor MERS, as the nominee for Mortgage Lenders Network or any of its successors, signed the trustee substitution, dated January 26, 2009. Therefore, the trustee substitution is null and void as a matter of law and NDEx West has no authority to conduct the foreclosure sale.

    Secondly, the declaration required under Civil Code section 2923.5 is not under penalty of perjury, as required under California law. Therefore, the notice of default is, too, null and void, as a matter of law.

    Furthermore, uncertainty exists as to the true owner of the note and deed of trust, based on the records of the El Dorado County Recorder's Office. That is, one assignment, executed on February 6, 2009, signed by MERS, as nominee for Mortgage Lenders Network, purports to assign all title and interest to "U.S. Bank National Association as Trustee by Residential Funding Company, LLC FKA, Residential Funding Corporation, Attorney in Fact." (See Hall decl., ¶5 & exh. 4, thereto.) Yet, a second assignment, signed July 7, 2009, also by MERS, as nominee for Mortgage Lenders Network, purports to assign all title and interest to "U.S. Bank National Association, as Trustee." (See Hall decl., ¶7 & exh. 6, thereto.) If the first assignment is valid, then the second assignment is invalid, because Mortgage Lenders Network would have had nothing to assign, on July 7, 2009, having assigned all of its rights and title and interest to "U.S. Bank National Association as Trustee by Residential Funding Company, LLC FKA, Residential Funding Corporation, Attorney in Fact."

## LEGAL STANDARDS

    Code of Civil Procedure section 527(a) authorizes issuance of injunctions before trial "if sufficient grounds exist therefor." Code of Civil Procedure section 526(a)(2) lists the traditional consideration of "irreparable harm" that will be suffered if injunctive relief is not granted. The avowed purpose of a preliminary injunction is to preserve the status quo pending a trial on the

1 merits. (*Continental Baking Company v. Katz* (1968) 68 Cal.2d 512, 528.) Plaintiffs will suffer

2 irreparable harm in a way which cannot be later repaired if a temporary restraining order and

3 preliminary injunction are not issued. (*People ex rel. Gow v. Mitchell Brothers' Santa Ana*

4 *Theater* (1981) 118 Cal.App.3d 863, 870-871.)

5         In the instant case, a bona fide dispute exists as to enforceability of the trust deed, because

6 the foreclosure sale is scheduled to proceed on Wednesday, December 16, 2009, at 10 a.m.,

7 notwithstanding substantial, prejudicial irregularities in the foreclosure proceedings have

8 occurred. (*Baypoint Mortgage v. Crest Premium Real Estate Investments Retirement Trust*

9 (1985) 168 Cal.App.3d 818, 827.) Substantial evidence of prejudicial procedural irregularity

10 exists in the instant case that undeniably overcomes the common law presumption that "the

11 foreclosure sale [if allowed to proceed] was conducted regularly and fairly." (*Brown v. Busch*

12 (1957) 152 Cal.App.2d 200, 204; see also *Stevens v. Plumas Eureka Annex Min. Co.* (1935) 2

13 Cal.2d 493, 497; *6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.* (2001) 85 Cal.App.4th 1279,

14 1284.) The Court is requested to enter the temporary restraining order to prevent the foreclosure

15 proceeding from taking place tomorrow, December 16, 2009.

16                                    **ARGUMENT**

17 **I.      PLAINTIFFS ARE ABLE TO SHOW A REASONABLE PROBABILITY OF
          SUCCESS ON THE MERITS BECAUSE SUBSTANTIAL EVIDENCE OF**
18 **        SUBSTANTIAL, PREJUDICIAL PROCEDURAL IRREGULARITIES EXIST IN
          THE FORECLOSURE PROCEEDINGS.**
19

20         It is reasonably probable that plaintiffs will prevail on the merits (*San Francisco*

21 *Newspaper Printing Co., Inc. v. Sup. Ct. (Miller)* (1985) 170 Cal.App.3d 438, 442), because

22 substantial, prejudicial procedural irregularities in the foreclosure proceedings have occurred,

23 which are explained below. Foreclosure sales are governed by a comprehensive statutory scheme.

24 (*Moeller v. Lien* (1994) 25 Cal.App. 4th 822, 830.) This schema, which is found in Civil Code

25 sections 2923, et seq., through 2924k, evidences a legislative intent that a sale that is properly

26 conducted "constitutes a final adjudication of the rights of the borrower and lender." (*Moeller v.*

27 *Lien*, supra, 25 Cal. App. 4th at p. 831.) And because as a general rule, there is a common law

28 rebuttable presumption that a foreclosure sale has been conducted regularly and fairly" (4 Miller

1  & Starr, Cal. Real Estate (3d ed. 2000) § 10:211, p. 647, fn. omitted; *Brown v. Busch* (1957) 152

2  Cal. App. 2d 200, 204), a successful challenge to the sale requires evidence of a failure to comply

3  with the procedural requirements for the foreclosure sale that caused prejudice to the person

4  attacking the sale." (4 Miller & Starr, *supra*, § 10:210, at p. 640.) Whether there is sufficient

5  evidence to overcome this presumption is generally a question of fact. (*Wolfe v. Lipsy* (1985) 163

6  Cal.App. 3d 633, 639, disapproved on another ground in *Droeger v. Friedman, Sloan & Ross*

7  (1991) 54 Cal.3d 26, 36.) Where substantial evidence of a prejudicial procedural irregularity

8  exists, the presumption must not prevail. (*Stevens v. Plumas Eureka Annex Min. Co.* (1935) 2 Cal

9  2d 493, 497.)

10       Based on the above, the Court's failing to enter the temporary restraining order at this

11  juncture will result in substantial prejudice to plaintiffs because they will be required to not only

12  overcome the common law presumption of regularity in the proceedings, but they will also have

13  to expend additional time, money and efforts to set aside any unlawful foreclosure (if the sale

14  proceeds) and possible unlawful detainer action that may be filed.

15       A.    **The Trustee Substitution Under Which the Trustee Is Operating is Null and Void, Because It Was Not Executed and Acknowledged By Either the**

16             **Beneficiary Under the Trust Deed or Any of the Beneficiary's Successors-in-Interest.**

17

18       Civil Code section 2934a.(a)(1) governs trustee substitutions:

19             "The trustee under a trust deed upon real property ... may be
               substituted by the recording in the county in which the property is

20             located of a substitution executed and acknowledged by: (A) all of
               the beneficiaries under the trust deed, or their successors in

21             interest, ...

22  In the instant case, the trustee substitution was executed on January 26, 2009, and recorded on

23  February 5, 2009. The substitution, although recorded prior to the trustee's sale notice, was

24  nevertheless not signed by the beneficiary or any of the beneficiary's successors' in interest.

25  According to the face of the document, the trustee substitution was signed by Wells Fargo Bank,

26  N.A., as the attorney in fact for U.S. Bank National Association, as Trustee. However, no

27  assignment of deed of trust (from Mortgage Lenders Network or its successors-in-interest),

28  transferring all rights and title from Mortgage Lenders Network to U.S. Bank National

MPA ISO PLFS' EX PARTE APP FOR TRO AND PRELIM INJUNCTION          -6-

1   Association, as Trustee, had been executed or recorded prior to execution and recordation of the

2   trustee substitution. Therefore, the trustee substitution, purportedly signed by "U.S. Bank

3   National Association, as Trustee," was not executed and acknowledged by the beneficiary or its

4   successors in interest, pursuant to section 28934a.(a)(1), of the Civil Code, and it the trustee

5   substitution is therefore null and void as a matter of law. And, if the trustee substitution is null

6   and void as a matter of law, then any notice of trustee's sale issued by NDEx West, thereafter, is

7   also null and void; as would any sale that would be conducted pursuant to any trustee's sale

8   notice.

9          For the beneficiary (whoever that might be) to claim the benefits of conducting a non-

10  judicial foreclosure, including proceeding with a trustee other than that which is identified in the

11  deed of trust, the beneficiary must bring itself within the spirit of the statute allowing the

12  beneficiary to proceed with a trustee other than that named in the original deed of trust, pursuant

13  to a valid trustee substitution, or in other words the beneficiary must show that it is entitled to

14  conduct the non-judicial foreclosure proceedings through a successor trustee under a legitimate

15  trustee substitution. Again, the burden is upon the beneficiary to show that it is entitled to pursue

16  the non-judicial foreclosure (otherwise provided for under a power of sale) using a substituted

17  trustee under a legitimate trustee substitution. These rules necessarily mean that a beneficiary

18  who has designated a trustee to conduct the foreclosure proceedings must establish that right by

19  evidence, by facts. That has not been done, and the foreclosure sale must be enjoined therefore.

20  **A.      The Notice of Default Was Not in Compliance With the Law Because The**
    **Declaration Attached to the Notice Is Void As a Matter of Law.**

21

22         In July 2008 the California Legislature passed Civil Code section 2923.5 to help

23  borrowers facing foreclosure by requiring lenders, mortgagees, services and trustees make

24  contact with the borrower, prior to commencing foreclosure proceedings, to assess the borrower's

25  financial situation and explore options to avoid foreclosure. The newly enacted 2923.5 was

26  inserted and became part of the strict statutory scheme governing foreclosure proceedings in this

27  state. The law became effective on September 8, 2008. It requires, among other things, that

28  before lenders on loans secured by owner-occupied residential mortgages may file a notice of

MPA ISO PLFS' EX PARTE APP FOR TRO AND PRELIM INJUNCTION                                    -7-

1  default to begin the foreclosure process, the lender must contact the borrower in order to assess
2  the borrower's financial situation and to explore options for the borrower to avoid foreclosure."

3       Th law requires that contact with the borrower must be achieved in person or by
4  telephone, and the lender must advise the borrower during the contact that he or she is entitled to
5  request a subsequent meeting with the lender within 14 days. The lender must also provide the
6  borrower with the toll-free number made available by the U.S. Department of Housing and Urban
7  Development to find a HUD-certified counseling agency. In the event contact with the borrower
8  is not made, Section 2923.5 provides a laundry list of due diligence requirements. They include:
9  1) sending a letter by first class mail that includes the toll-free HUD number, 2) after the letter is
10 sent, phoning at least three times at different hours on different days, and 3) if the borrower does
11 not respond within two weeks after the telephone call requirements have been satisfied, sending a
12 certified letter, return receipt requested.

13      Most importantly, before commencing foreclosure proceedings, the lender is required,
14 under section 2923.5(b), where the notice of default has not yet been filed, to submit a
15 "declaration" with its notice of default stating that the lender either has contacted the borrower or
16 tried with due diligence to contact the borrower as required under the section.

17      As will be discussed below, the defendants have not abided by the strict statutory scheme
18 governing foreclosure proceedings, including the newly enacted Civil Code section 2923.5, and
19 must therefore not be allowed to proceed with the foreclosure scheduled for December 16, 2009.

20         1.    <u>The "declaration" required under Civil Code section 2923.5 is not under</u>
                 <u>penalty of perjury.</u>
21

22      Code of Civil Procedure section 2015.5 governs declarations in California. It states, in
23 pertinent part, the following:

24         *" Whenever, under any law of this state ... any matter is required*
         *or permitted to be supported, evidenced, established, or proved by*
25         *the ... declaration ... in writing of the person making the same ... ,*
         such matter may with like force and effect be supported,
26         evidenced, established or proved by the ... declaration ...  in writing
         of such person which recites that it is ... *declared by him or her to*
27         *be true under penalty of perjury, is subscribed by him or her, and*
         *... if executed at any place,* within or *without this state, states the*
28         *date of execution and that it is so... declared under the laws of the*
         *State of California.* The ... declaration may be in substantially the

1    following form: ... [i]f executed at any place, within or without this
     state: "I ... declare under penalty of perjury under the laws of the
2    State of California that the foregoing is true and correct":
     _____ _____ (Date and Place) (Signature)"
3

4  Civil Code section 2923.5 is clear that the notice of default must have a "declaration" attached to

5  it. The "Notice of Default Declaration," attached to the default notice, is not under penalty of

6  perjury. The whole point of permitting a declaration *under penalty of perjury*, in lieu of a sworn

7  statement, is to help ensure that declarations contain a truthful factual representation and are

8  made in good faith. (*Ancora-Citronelle Corp. v. Green* (1974) 41 Cal.App.3d 146, 148.)

9         "The oath or declaration must be in such form that criminal
          sanctions of perjury might apply where material facts so declared
10        to be true, are in fact not true or are not known to be true."

11  (*Id.* at p. 150; see Pen. Code, § 118.)

12         2. ·    The "declaration" required under Civil Code section 2923.5 is insufficient
                   in form and substance.
13

14         The "declaration" in the instant case must be sufficient in form and substance to prove the

15  fact that the requirements under Civil Code section 2923.5 have been adhered to. In that regard,

16  the "declaration" attached to the default notice states the following, in pertinent part:

17         "The undersigned mortgagee, beneficiary, or their authorized agent
           (collectively, the "Beneficiary") represents and declare that the
18         requirements of CA Civil Code 2923.5 have been met.

19         " • The Beneficiary has made contact with the borrower pursuant to
           CA Civil Code 2923.5(g)(2). Contact with the borrower was made
20         in person or by telephone to assess the borrower's financial
           situation and explore options for the borrower to avoid foreclosure.
21
           " • Due Diligence to contact the borrower was exercised pursuant
22         to CA Civil Code 2923.5(g)(2) by the Beneficiary.

23         " • The borrower has surrendered the property... pursuant to CA
           Civil Code 2923.5(h)(1).
24
           " • The borrower has contracted with an organization, person, or
25         entity whose primary business is advising people who have decided
           to leave their homes ... pursuant to CA Civil Code 2923.5(h)(2);
26
           " • The borrower has filed for bankruptcy ...pursuant to CA Civil
27         Code 2923.5(h)(3)."

28

                    MPA ISO PLFS' EX PARTE APP FOR TRO AND PRELIM INJUNCTION          -9-

1    The "declaration" is insufficient in form, and no facts based on personal knowledge are therein
2    stated. Preliminarily, the affiant (John Kennerty) nowhere states that he himself ever made
3    contact with the borrower nor otherwise state he, in fact, has knowledge or familiarity of the
4    requirements under Civil Code section 2923.5 regarding the manner laundry list of actions that
5    must be had in making contact with a borrower. The fact is that the "declaration" is nothing more
6    than a jumble of legal conclusions; that is, predicated by a statement, each of which is then
7    followed by "pursuant to CA Civil Code 2923 [subsection]," or "pursuant to CA Civil Code
8    2923.5 subsection]."

9         No facts are stated in the declaration. The declaration omits any statement of the
10   requirements of section 2923.5. The "declaration" is simply the declarant's conclusion of what
11   presumably occurred. It is not based on any factual evidence. The opinion is expressed in the
12   declaration that "one of the below necessary requirements was met by the Beneficiary." That, of
13   course, is a statement only of the conclusion of the declarant. Again, that is not a statement that
14   the contact that must be made with the borrower was actually made in accordance with the
15   requirements of Civil Code section 2923.5, upon which this Court could draw a conclusion or
16   make an order allowing the foreclosure sale to proceed.

17        Without any statements as to the declarant's knowledge or familiarity with the pertinent
18   Code section or subsections or any statement as to the basis upon which the declarant attests the
19   actions required under Civil Code section 2923.5 actually occurred, pursuant to that section, this
20   Court cannot conclude that the requirements under Civil Code section 2923.5 have been met. The
21   opinion of the declarant, as expressed in the affidavit, may or may not be correct, but without any
22   facts stated in the declaration upon which the opinion of the declarant is expressed, nothing of
23   substance has been presented to show compliance with the strict schema of Civil Code section
24   2923.5, and nothing therefore exists for this Court to allow the foreclosure sale to proceed.

25        That a declaration or affidavit which sets forth only conclusions or opinions of the affiant
26   is insufficient, is sustained by a long list of cases. The rule as to the sufficiency of affidavits is
27   clearly stated in 2 C.J., page 350, as follows:

28              "Facts should be stated positively and with legal definiteness and
                certainty. ... The statement in an affidavit of mere matters of

MPA ISO PLFS' EX PARTE APP FOR TRO AND PRELIM INJUNCTION          -10-

1    opinion, or of legal conclusions is not sufficient. The facts on
     which such conclusions are based should be set forth so that the
2    court may draw its own inferences. Thus, where a remedy is given
     by statute in certain specified cases, an affidavit is not sufficient
3    which merely alleges that the case is one of those mentioned in the
     statute, without stating the facts from which such conclusions may
4    be drawn."

5    Likewise, in 1 California Jurisprudence, page 670, the rule is set forth as follows:

6        "An affidavit which merely repeats the language or substance of
         the statute is not ordinarily sufficient. The statute cannot go into
7        details, but is compelled to content itself with a statement of the
         ultimate facts which must be made to appear, leaving the details to
8        be supplied by the affidavit, from the circumstances of the
         particular case. ... The ultimate facts of the statute must be proved,
9        so to speak, by the affidavit, by showing the probatory facts upon
         which the ultimate fact depends. These ultimate facts are
10       conclusions drawn from the existence of other facts, to disclose
         which, it is the special office of the affiant."

11

12   Thus, the declaration in the instant case must disclose the facts necessary to give this Court the

13   basis to allow the foreclosure sale of plaintiffs' home to proceed Based on the above, therefore,

14   because the "declaration" merely follows the language of the statute, it proves nothing.

15   Therefore, the faulty declaration constitutes and is another substantial and prejudicial irregularity

16   in the foreclosure proceedings. Without the required declaration having been attached to the

17   notice of default, the notice is null and void as a matter of law.

18       Civil Code section 2923.5 mandates a "declaration." Here, the declaration attached to the

19   default notice lacks any indicia of reliability or credibility, for the reasons stated above.

20   **B.    The Power of Sale Can Only Vest In a Person Entitled to Money Payments,
            and Based on the Facts Stated Above, Uncertainty Exists as to the Current
21          Holder of the Note and Deed of Trust.**

22       In California, California Civil Code § 2932.5 governs the power of sale under an assigned

23   mortgage, and provides that the power of sale can only vest in a person entitled to money

24   payments:

25       "Where a power to sell real property is given to a mortgagee, or
         other encumbrancer, in an instrument intended to secure the
26       payment of money, the power is part of the security and vests in
         any person who by assignment becomes entitled to payment of the
27       money secured by the instrument. The power of sale may be
         exercised by the assignee if the assignment is duly acknowledged
28       and recorded."

1  As stated elsewhere in this brief, uncertainty exists a to who has the power of sale at the current

2  time to conduct the foreclosure proceedings, under Civil Code section 2932.5, because two

3  conflicting assignments of deeds of trust are currently on record with the El Dorado County

4  Recorder's Office. The need to verify that the promissory note secured by a deed of trust or

5  mortgage has been assigned is sometimes overlooked. The California Forms and Practices

6  Manual contains the following on this subject.

7        "Although the ownership of a promissory note cannot be
         ascertained from examination of the records of county recorders of
8        the right of a transferee of a note to enforce the mortgage or deed
         of trust securing that note, it is usually evidenced by an assignment
9        of the mortgagee's or beneficiary's interest. Such assignment is
         often recorded in the county where the real property is located. But,
10       to assume that the record assignee of the security, is also owner of
         the promissory note it secures is to make the unwarranted
11       assumption that: a. The note was properly endorsed and b. The
         note was delivered to and is in possession of the assignee of
12       record."

13 Additionally, a promissory note is personal property and the deed of trust securing a note is a

14 mere incident of the debt it secures, with no separable ascertainable market value. (California

15 Civ. Code §§ 657, 663; *Kirby v. Palos Verdes Escrow Co.,* 183 Cal.App. 3d 57, 62.) Any

16 transfers of the notice and mortgage fundamentally flow back to the note: "The assignment of a

17 mortgage without a transfer of the Indebtedness confers no right, since debt and security are

18 inseparable and the mortgage alone is not a subject of transfer." (*Hyde v. Mangan* (1891) 88 Cal.

19 319; *Johnson v. Razy* (1919) 181 Cal 342; *Bowman v. Sears* (1923) 63 Cal App 235; *Treat v.*

20 *Burns* (1932) 216 Cal 216.)

21       "A mortgagee's purported assignment of the mortgage without an assignment of the debt

22 which is secured is a legal nullity." (*Kelley v. Upshaw* (1952) 39 Cal 2d 179.) "A trust deed has

23 no assignable quality independent of the debt; it may not be assigned or transferred apart from

24 the debt; and an attempt to assign the trust deed without a transfer of the debt is without effect."

25 (*Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal. App. 2d 543.) The promissory note is a

26 negotiable instrument and transferring a deed of trust by itself does not allow enforcement of the

27 instrument unless the promissory note is properly negotiated. Where an instrument has been

28 transferred, enforceability is determined based upon possession. Moreover, California Comm.

1   Code § 3301 limits a negotiable instrument's enforcement to the following:

2   "Person entitled. to enforce" an Instrument means (a) the holder of
    the instrument, (b) a nonholder in possession of the instrument
3   who has the rights of a holder, or (c) a person not in possession of
    the instrument who is entitled to enforce the instrument pursuant to
4   Section 3309 or subdivision (d) of Section 3418.  A person may be
    a person entitled to enforce the instrument even though the person
5   is not the owner of the instrument or is in wrongful possession of
    the instrument."

6

7   As demonstrated elsewhere in this brief, uncertainty exists as to the current holder of the note and

8   deed of trust. The fact is whoever the true beneficiary is, currently is unknown to plaintiffs and

9   this Court. Without knowing the true identity of the current holders of the note and deed of trust,

10  allowing this foreclosure sale to proceed could in all likelihood result in a wrongful foreclosure

11  of plaintiffs' home, under this separate ground.

12          By virtue of the method and manner defendants are attempting to carry out this

13  foreclosure sale, the foreclosure of the subject property is void ab initio as a matter of law.

14  **III.    PLAINTIFFS HAVE SHOWN SUBSTANTIAL, PREJUDICIAL
            IRREGULARITIES IN THE PROCEEDINGS THAT WARRANTS A TRO AT
15          THIS TIME.**

16          Clearly, under the facts of this case, as discussed above, substantial, egregious and

17  prejudicial irregularities in the proceedings have occurred and will result in substantial prejudice

18  to plaintiffs if the Court refuses to enter the restraining order. Plaintiffs, therefore, request the

19  Court enter the restraining order, at this time, and a subsequent preliminary injunction.

20  **IV.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF INJUNCTIVE RELIEF IS
            NOT GRANTED, BECAUSE THEY WILL LOSE HIS HOME, WHICH IS ALSO
21          THEIR FAMILY RESIDENCE.**

22          On the basis of the instant application and supporting documentation, plaintiffs will suffer

23  irreparable injury if the Court does not grant the temporary restraining order. Defendants are

24  scheduled to foreclose on plaintiffs' property on Wednesday, December 16, 2009. Losing one's

25  home through foreclosure is an irreparable injury. Real property is usually deemed "unique,"

26  because the injury or loss cannot be compensated in damages and injunctive relief is therefore

27  readily granted. Civ. Code §3387–damages presumed inadequate on breach of agreement to

28  convey real property.  Without the court's intervention, irreparable harm is imminent. As stated

1  above, plaintiffs' home is unique, and if it is sold to a bona fide purchaser, plaintiffs would be

2  unable to purchase the exact same home anywhere else. In addition, if defendants' foreclosure

3  sale is permitted to happen, the Edstrom family would be forced to move from their home, and

4  they would be further subjected to the irreparable harm of public humiliation and loss of

5  reputation in the community in which they live.

6  **V.   THE BALANCE OF HARDSHIPS CLEARLY POINTS IN PLAINTIFFS'**
   **DIRECTION BECAUSE THE HARDSHIP PLAINTIFFS WILL FACE WITH**
7  **THE LOSS OF THEIR HOME FAR OUTWEIGHS ANY HARDSHIP POSED BY**
   **POSTPONING THE FORECLOSURE SALE.**

8

9         For plaintiffs to lose their house would present a far greater hardship than postponing the

10  foreclosure sale to allow for an additional hearing and further briefing. Because the balance of

11  hardship so clearly points in plaintiffs' direction, plaintiffs are allowed to make a lesser showing

12  on the merits. Moreover, here, plaintiffs have shown a reasonable probability of success on the

13  merits because they have shown substantial defects in the foreclosure proceedings. The status

14  quo is that plaintiffs have control of their home, while defendants purportedly possess a security

15  interest in it. If a temporary restraining order is granted, it will do nothing more than preserve this

16  status quo, pending resolution of the case. Defendants' position will not change and neither will

17  that of plaintiffs. However, if defendants are allowed to proceed with the foreclosure sale,

18  plaintiffs will be displaced and lose their home. Therefore, in light of the lopsided balance of

19  hardship in this case and the human suffering facing plaintiffs, a temporary restraining order is

20  warranted.

21  **VI.   THE IRREPARABLE HARM PLAINTIFFS WILL SUFFER IF THEIR**
   **RESIDENCE IS SOLD THROUGH FORECLOSURE FAR OUTWEIGHS ANY**
22  **HARM TO DEFENDANTS.**

23         If the foreclosure sale is permitted to happen and plaintiffs ultimately succeed on the

24  merits of their claims, plaintiffs will have suffered irreparable harm. However, if plaintiffs do not

25  succeed on their claims, defendants will be free to continue with their foreclosure sale of

26  plaintiffs' residence and will have ultimately lost nothing in affording plaintiffs the opportunity

27  to have their claims adjudicated.

28  **VII.  PUBLIC INTEREST FACTORS ARGUABLY WEIGH IN FAVOR OF**
   **INJUNCTIVE RELIEF IN THIS CASE.**

1    Arguably, public interest factors weigh in favor of injunctive relief in this case. That is, to

2    allow the foreclosure sale of plaintiffs' home without first determining the validity of the trustee

3    substitution and assignments of deed of trust will be a gross injustice and violation of all notions

4    of public policy with regard to a borrower's rights to avoid foreclosure. To allow the foreclosure

5    to proceed without the Court's first determining the validity of these documents will wreak more

6    uncertainties and injustices in which these same defendants are involved as co-conspirators with

7    one another.

8    Furthermore, to allow the foreclosure proceeding to take place without the Court's first

9    determining the validity of the assignments and trustee substitution will only serve to undermine

10    the thrust of the statute and the strict legislative schema required for non-judicial foreclosures.

11    **VIII.    THE COURT HAS DISCRETION TO WAIVE THE BOND REQUIREMENT AT**
         **THIS TIME.**
12

13    While a preliminary injunction will not be issued without security, under Code of Civil

14    Procedure section 529, or without a cash deposit in lieu of bond, under Code of Civil Procedure

15    section 995.710, the Court has discretion to waive the bond requirement. No realistic harm to the

16    defendants exists from a temporary restraint of the foreclosure proceedings. That is, if the

17    defendants' position is correct that the documents recorded on the subject property are valid, then

18    the foreclosure sale will proceed. Should the non-judicial foreclosure be temporary halted, the

19    defendants are still free to counterclaim against plaintiffs for relief by judicial foreclosure. Thus,

20    defendants' interests are adequately secured by both the deed on the property, if the trustee

21    substitution and assignments of deeds of trust are valid, and any future counterclaim that seeks to

22    establish the validity of those documents. Therefore, no bond should be required at this time.

23    **CONCLUSION**

24    Based on the facts and authorities stated above, plaintiffs request the Court find that

25    plaintiffs' allegations on the merits are sufficient to grant the temporary restraining order, at this

26    time, and order therefore, that all defendants and their agents, assigns, employees, officers,

27    attorneys, and representatives be enjoined and restrained from engaging in or performing any act

28    to deprive plaintiffs of ownership or possession of the real property located at 2690 Brown Bear

MPA ISO PLFS' EX PARTE APP FOR TRO AND PRELIM INJUNCTION          -15-

1  Court, Cool, California, including but not limited to instituting, prosecuting or maintaining

2  foreclosure or sale proceedings on the property, from recording any deeds or mortgages regarding

3  the property or from otherwise taking any steps whatsoever to deprive plaintiffs of ownership in

4  the property, and in particular from proceeding with the sale of the property scheduled for

5  December 16, 2009, at 10 a.m.

6  DATED: December 14, 2009

**BOTTOMLINE LAWYERS**

By: _____

RICHARD A. HALL
Attorneys for Plaintiffs

## CHRONOLOGY OF EVENTS

| Document Date | Rec'd Date | Document | Parties and Signatures | |
|---|---|---|---|---|
| 9.05.2005 | 9.14.2005 | Deed of Trust | Trustor:<br>Lender:<br>Trustee:<br>Nominee: | Daniel Major Edstrom and Teri Anne Edstrom<br>Mortgage Lenders Network USA Inc.;<br>Mitchell L. Heffernan<br>MERS |
| 12.19.2008 | 12.23.2008 | Notice of Default | Signed by: | "NDEx West, LLC, as agent for beneficiary" |
| 01.26.2009 | 02.05.2009 | Substitution of Trustee | Signed by: | "Wells Fargo Bank, N.A., attorney in fact for US Bank National Association, as Trustee," substituting NdexWest, LLC for Mitchell L. Heffernan; |
| 02.06.2009 | 02.12.2009 | Assignment of DOT | Signed by: | MERS, as "Nominee for Mortgage Lenders Network, U.S.A., Inc.," from Mortgage Lenders Network, U.S.A., Inc. to "U.S. Bank National Association as Trustee by Residential Funding Company, LLC FKA Residential Funding Corporation, Attorney in Fact" |
| 03.24.09 | 03.30.2009 | Notice of Trustee's Sale | Signed by: | NDEx West, LLC, as "duly appointed trustee" |
| 7.07.2009 | 07.15.2009 | Assignment of DOT | Signed by: | MERS, as "Nominee for Mortgage Lenders Network, U.S.A., Inc.," from Mortgage Lenders Network, U.S.A., Inc. to "U.S. Bank National Association, as Trustee" |
| 8.07.2009 | | PROPERTY SOLD | | |
| 11.17.2009 | 12.01.2009 | Notice of Trustee's Sale | Signed by: | NDEx West, LLC, as "duly appointed trustee" |
| 12.16.2009 | | CURRENT SALE DATE | | |

1 | RICHARD A. HALL (SBN 135483)
**BOTTOMLINE LAWYERS**
2 | 985 Lincoln Way, Suite 206
Auburn, California 95601
3 | Telephone: (530) 888-7100
Facsimile: (866) 305-1238
4

5 | Attorneys for Plaintiffs
DANIEL MAJOR EDSTROM, an individual;
6 | and TERI ANNE EDSTROM, an individual

**EL DORADO CO. SUPERIOR CT.**

**FILED**   DEC 1 4 2009

BY _____
Deputy

7 | SUPERIOR COURT OF CALIFORNIA

8 | COUNTY OF EL DORADO

9

10 | DANIEL MAJOR EDSTROM, an
individual; and TERI ANNE
11 | EDSTROM, an individual,

12 | Plaintiffs,

13 | v.

14 | NDEX WEST, LLC, a Delaware limited
liability company; MORTGAGE
15 | LENDERS NETWORK USA, INC., a
Delaware corporation; AMERICA'S
16 | SERVICING COMPANY, an entity
form unknown; MORTGAGE
17 | ELECTRONIC REGISTRATION
SERVICES (MERS); and DOES 1-
18 | 10,000,

19 | Defendants.

20

CASE NO.  PC  2 0 0 9 0 7 7 3

PLAINTIFFS' EX PARTE APPLICATION IN
SUPPORT OF REQUEST FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO
SHOW CAUSE RE PRELIMINARY
INJUNCTION

DATE: December 15, 2009
TIME:  8:15
DEPT:  9

21 | **TO DEFENDANTS AND THEIR ATTORNEY(S) OF RECORD:**

22 | PLEASE TAKE NOTICE THAT plaintiffs hereby apply for a temporary restraining order

23 | (TRO) and preliminary injunction, pursuant to Code of Civil Procedure section 527 and 528, and

24 | under applicable case law, enjoining defendants and their agents, assigns, employees, officers,

25 | attorneys, and representative from engaging in or performing any act to deprive plaintiffs of

26 | ownership or possession of the real property located at 2690 Brown Bear Court, Cool, California

27 | 95614, including but not limited to instituting, prosecuting, or maintaining foreclosure or sale

28 | proceedings on the property, from recording any deeds or mortgages regarding the property or

**E. Romero**
EXHIBIT B - Page 130

1  from otherwise taking any steps whatsoever to deprive plaintiffs of ownership in the property,

2  and in particular from proceeding with the sale of the property scheduled for December 16, 2009,

3  at 10 a.m.

4      Notice to all defendants affected by of this temporary restraining order has been given.

5  Therefore, plaintiffs requests this Court enter a temporary restraining order outside the 15-20 day

6  statutorily required time period, under Code of Civil Procedure section 527(d)(1), and under

7  *Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 534, enter a temporary restraining

8  order for at least thirty days.

9      This ex parte application is made and based on this notice and ex parte application; the

10  accompanying memorandum of points and authorities, the declarations of Richard A. Hall and

11  Carol.J. Sidhu; the proposed temporary restraining order and order to show cause; the complaint

12  and all other pleadings, filings and other oral and/or documentary evidence as may be presented

13  prior to and up to the time of the hearing of the instant application. No previous ex parte

14  applications have been made.

15  DATED: December 14, 2009.

**BOTTOMLINE LAWYERS**

By:
RICHARD A. HALL
Attorneys for Plaintiffs
DANIEL MAJOR EDSTROM and
TERI ANNE EDSTROM

**DECLARATION OF RICHARD A. HALL**

I, Richard A. Hall, declare:

1.      I am an attorney at law, licensed to practice before all courts in California, and am

attorney of record for plaintiffs Daniel Major Edstrom and Teri Anne Edstrom. I make this

declaration in support of plaintiffs' ex parte application for temporary restraining order and order

to show cause enjoining defendants from proceeding with the foreclosure sale currently

1   scheduled for December 16, 2009, at 10 a.m. I have personal knowledge of the matters stated in

2   this declaration, except for those stated on information and belief, and as to them, I believe they

3   are true; and if called as a witness to testify to the truth of the matters stated herein, will

4   competently do so.

5        2.   The foreclosure sale on plaintiffs' home is scheduled to proceed at 10 a.m., on

6   Wednesday, December 16, 2009, according to defendant NDex West, LLC, the purported trustee.

7        3.   Plaintiffs, concurrent with this ex parte application, have filed their complaint,

8   including claims for injunctive and declaratory relief, based on numerous egregious, and

9   substantially prejudicial irregularities in the foreclosure proceedings to date.

10       4.   Among these irregularities includes defendant NDEx West's conducting these

11  foreclosure proceedings under a trustee substitution that was not executed by the beneficiary.

12       5.   That is, the original lender, Mortgage Lenders Network USA, Inc., never signed a

13  trustee either in its own right or through MERS, the named nominee for the lender, in the original

14  trust deed.

15       6.   The trustee substitution, signed January 26, 2009, was by "Wells Fargo Bank,

16  N.A., as attorney in fact for U.S., Bank National Association, as Trustee."

17       7.   This substitution purportedly substituted defendant NDEx West for the original

18  trustee, named in the deed of trust (Mitchell L. Heffernan).

19       8.   However, no assignment of the deed of trust was ever recorded, prior to the

20  trustee substitution, transferring any rights or interests to either Wells Fargo Bank, N.A., or to

21  U.S. Bank National Association, as Trustee.

22       9.   Therefore, Mitchell L. Heffernan is the only trustee with any legal authority to be

23  conducting these foreclosure proceedings.

24       10.  Additionally, the notice of default lacks the declaration required under Civil Code

25  section 2923.5, because the declaration is not under penalty of perjury.

26       11.  Furthermore, two assignments of deeds of trust were recorded after the trustee

27  substitution.

28       12.  The first one, recorded February 12, 2009, purports to transfer from Mortgage

PLFS' EX PARTE APP ISO REQ FOR TRO AND PRELIM INJUNCTION          -3-

1   Lenders Network all rights and interests in the note and deed of trust to "U.S. Bank National

2   Association as Trustee by Residential Funding Company, LLC FKA Residential Funding

3   Corporation, Attorney in Fact."

4         13.     The second one, recorded July 15, 2009, purports to transfer from Mortgage

5   Lenders Network all rights and interests in the note and deed of trust to "U.S. Bank National

6   Association, as Trustee."

7         14.     No rescission of the first assignment of deed of trust was recorded between the

8   first assignment of deed of trust and the second assignment of deed of trust.

9         15.     Based on these facts and the record at the El Dorado County, U.S. Bank National

10   Association as Trustee by Residential Funding Company, LLC FKA Residential Funding

11   Corporation, Attorney in Fact," may be the current beneficiary.

12         16.     And because "U.S. Bank National Association as Trustee by Residential Funding

13   Company, LLC FKA Residential Funding Corporation, Attorney in Fact," has never executed a

14   trustee substitution, much less one substituting NDEx West for the original trustee (Mitchell L.

15   Heffernan), NDEx West has no authority to conduct the subject foreclosure proceedings,

16   including the sale of plaintiffs' home on December 16, 2009.

17         17.     Furthermore, according to the records of NDEx West, the subject property was

18   already sold on August 7, 2009, pursuant to a notice of trustee's sale, dated March 4, 2009, and

19   recorded March 220, 2009, and no notice of rescission has been recorded.

20         18.     Nevertheless, on November 17, 2009, a notice of trustee's sale was executed sand

21   recorded on December 1, 2009, less than thirteen days ago, at the time of execution of this

22   declaration, scheduling a sale date of the subject property for December 16, 2009, the purported

23   new sale date.

24         19.     This notice of trustee's sale was executed by defendant NDEx West, LLC, the

25   "duly appointed trustee," according to the notice of trustee's sale.

26         20.     Based on the above, substantial irregularities in the foreclosure proceedings have

27   occurred.

28         21.     If the Court refuses to hear the matter ex parte, on December 15, 2009, prior to the

PLFS' EX PARTE APP ISO REQ FOR TRO AND PRELIM INJUNCTION          -4-

1  sale, scheduled for December 16, 2009, plaintiffs will suffer irreparable harm because their home

2  will be put on the auction block for all interested buyers to bid upon, and  will ultimately, and

3  most probably, be sold on that date.

4        22.    If that happens, plaintiffs will have not only lost their home, but will be required

5  to expend additional time, energy, money and emotional stress to regain possession of their home

6  which will have been sold notwithstanding substantial and prejudicial irregularities in the

7  foreclosure proceedings occurred.

8        23.    Because of the time constraints posed by defendants in scheduling a foreclosure

9  date only days after filing a notice of trustee's sale (notice of trustee's sale recorded December 1,

10  2009 and sale date scheduled for December 16, 2009), plaintiffs have been forced to seek

11  emergency relief by way of this ex parte application for temporary restraining order.

12        24.    Based on the above, therefore, plaintiffs respectfully request this Court granting

13  the instant ex parte application and enter a temporary restraining order at this time.

14        25.    According to the Declaration of Carol J. Sidhu, below, defendants have been

15  notified of the date and hearing of the instant ex parte application.

16        26.    No other ex parte applications have been made to this Court in this case.

17        I  declare under penalty of perjury under the laws of California that the foregoing is true

18  and correct and that this declaration is executed on December 14, 2009, at Auburn, California.

19

20

21

22

23  RICHARD A. HALL

24

25  ////

26  ////

27  ////

28  ////

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## ARGUMENT

3

4

5

**PLAINTIFFS' COMPLAINT SETS FORTH A CAUSE OF
ACTION FOR INJUNCTIVE RELIEF, AND PLAINTIFFS HAVE ALSO
SATISFIED THE RULES UNDER THE CODE OF CIVIL PROCEDURE
THE CALIFORNIA RULES OF COURT, AND THE LOCAL RULES
FOR GRANTING THE EMERGENCY RELIEF OF A TRO**

6        Attempts to enjoin foreclosures under the usual power of sale provisions in deeds of trust

7 are common. The usual showing attempted is that there is a dispute over the right to sell the

8 property. That is exactly the case here. Based on the facts stated in the declaration of Richard A.

9 Hall, above a bona fide dispute exists as to the enforceability of the note and deed of trust,

10 including the authority of defendant NDEx West to conduct foreclosure proceedings against

11 plaintiff's home. (*Baypoint Mortgage v. Crest Premium Real Estate Investments Retirement*

12 *Trust* (1985) 168 Cal.App.3d 818, 827.)

13        Generally, the complaint must set forth a cause of action for injunctive relief to support

14 issuance of a TRO.  (Code Civ. Proc. §526(a)(3).) Where a temporary restraining order is sought,

15 the court may issue the temporary restraining order and at the same time order the defendant to

16 "show cause" why a preliminary injunction should not be issued. In that regard, plaintiffs have

17 submitted both a proposed temporary restraining order and a separate order to show cause. A

18 temporary restraining order must describe the conduct sought to be enjoined pending the hearing;

19 and an order to show cause must describe the terms of the injunction sought at the hearing. (Cal.

20 Rules of Court, Rule 359(c).) Plaintiffs, in that regard, also have submitted in their moving

21 papers, the conduct that they seek to be enjoined pending the hearing on the order to show cause.

22        Additionally, Local Rule 7.10.10, governing ex parte motions and applications states, in

23 relevant part, the following:

24
25
26

> "A. All ex parte motions and other ex parte applications shall be
> lodged with the Clerk. The Clerk will check the papers submitted
> for signatures, verifications, form, missing exhibits and compliance
> with the California Rules of Court, before submitting them to a
> bench officer.

27
28

> "B. Except as to an adverse party in default, Ex parte Motions and
> other applications shall comply with the notice to opposing parties
> requirement of California Rules of Court, rules 3.1200 through
> 3.1207. . . .

PLFS' EX PARTE APP ISO REQ FOR TRO AND PRELIM INJUNCTION        -6-

1           "C. All Ex Parte Motions or applications for Orders Shortening
2   Time shall be supported by a declaration showing good cause."
3   Included within this ex parte application, in addition to this memorandum of points and
4   authorities and the declaration of Richard A. Hall, above (which sets forth good cause for the
5   emergency relief) is the declaration of Carol J. Sidhu, which attests to compliance with the notice
6   requirements of California Rules of court, rule 3.1204.
7                   **CONCLUSION**
8       Therefore, based on this ex parte application, including the facts stated in the declaration
9   of Richard A. Hall (above), the authorities stated in the memorandum (above), and the
10  declaration of Carol J. Sidhu, below, this Court is respectfully requested to enter the emergency
11  relief requested at this time and grant the temporary restraining order.
12  DATED: December 14, 2009.
               **BOTTOMLINE LAWYERS**

16  By:     _____
17         RICHARD A. HALL
       Attorneys for Plaintiff
18         DANIEL MAJOR EDSTROM
       and TERI ANNE EDSTROM

20            **DECLARATION OF CAROL J. SIDHU**
21      I, Carol J. Sidhu, declare:
22      1.    I am an assistant to Richard A. Hall, attorneys for plaintiffs in this action. I make
23  this declaration in support of plaintiffs' ex parte application for temporary restraining order. I
24  have personal knowledge of the matters stated in this declaration and if called to testify to the
25  truth of the matters stated in this declaration, will competently do so.
26      2.    On Sunday, December 13, 2009, I emailed to defendant NDEx West, LLC, at
27  stephag@bbwcdf.com and faxed to 972-661-7800 a letter, of the same date, providing notice of
28  the ex parte hearing on December 15, 2009. In the letter I provided the name of the mortgagors

1 (plaintiffs), the loan number, the trustee sale number, and the property address. Ms. Goble is

2 associate counsel with NDex West. I stated in the letter that plaintiffs will be seeking ex parte

3 relief, on December 15, 2009, at 8:15 a.m., in department 9, of the El Dorado County Superior

4 Court, located at 3321 Cameron Park Drive, in Cameron Park, California. Specifically, I stated in

5 the letter that the borrowers will be seeking an order enjoining the sale of the subject property,

6 scheduled for December 16, at 10 a.m., and a concurrent order to show cause, setting a future

7 hearing, why a preliminary injunction should not issue.

8        3.      I also stated in the letter that I was required to give notice of the ex parte hearing

9 by 10 a.m.. the day before the hearing and required to attempt to determine whether they will

10 appear to oppose the application. In that regard, I stated to please feel free to telephone our office

11 or contact us by email to advise whether they will be appearing to oppose the application. To

12 date, our office has not heard from defendant. Finally, I stated we would be serving the

13 application and all supporting documents as soon as they were ready for filing. Attached hereto,

14 collectively marked exhibit 1, are true and correct copies of my December 13 letter with

15 confirmation sheet of receipt by recipient (faxed at 1:17 p.m.), along with proof of my December

16 13 email to NDex West.

17       4.      On Sunday, December 13, 2009, I faxed a letter at 1:15 p.m., to MERS, at number

18 703-748-0183 (which is the facsimile number for MERS on their website) giving notice of the ex

19 parte hearing in this case. In the letter I provided the name of the mortgagors (plaintiffs), the loan

20 number, the trustee sale number, and the property address. I stated in the letter that plaintiffs will

21 be seeking ex parte relief, on December 15, 2009, at 8:15 a.m., in department 9, of the El Dorado

22 County Superior Court, located at 3321 Cameron Park Drive, in Cameron Park, California.

23 Specifically, I stated in the letter that the borrowers will be seeking an order enjoining the sale of

24 the subject property, scheduled for December 16, at 10 a.m., and a concurrent order to show

25 cause, setting a future hearing, why a preliminary injunction should not issue.

26       5.      I also stated in the letter that I was required to give notice of the ex parte hearing

27 by 10 a.m. the day before the hearing and required to attempt to determine whether they will

28 appear to oppose the application. In that regard, I stated to please feel free to telephone our office

PLFS' EX PARTE APP ISO REQ FOR TRO AND PRELIM INJUNCTION          -8-

1  or contact us by email to advise whether they will be appearing to oppose the application. To

2  date, our office has not heard from defendant. Finally, I stated we would be serving the

3  application and all supporting documents as soon as they were ready for filing. Attached hereto,

4  marked exhibit 2, is a true and correct copy of my December 13 letter with confirmation sheet of

5  receipt by the recipient.

6        6.      On Sunday, December 13, 2009, I faxed a letter at 1:13 p.m., to defendant

7  America's Servicing Company, at 866-453-6315, which is the fax number for defendant, to give

8  defendant notice of the ex parte hearing on December 14, 2009. In the letter I provided the name

9  of the mortgagors (plaintiffs), the loan number, the trustee sale number, and the property address.

10 I stated in the letter that plaintiffs will be seeking ex parte relief, on December 15, 2009, at 8:15

11 a.m., in department 9, of the El Dorado County Superior Court, located at 3321 Cameron Park

12 Drive, in Cameron Park, California. Specifically, I stated in the letter that the borrowers will be

13 seeking an order enjoining the sale of the subject property, scheduled for December 16, at 10

14 a.m., and a concurrent order to show cause, setting a future hearing, why a preliminary injunction

15 should not issue.

16       7.      I also stated in the letter that I was required to give notice of the ex parte hearing

17 by 10 a.m. the day before the hearing and required to attempt to determine whether they will

18 appear to oppose the application. In that regard, I stated to please feel free to telephone our office

19 or contact us by email to advise whether they will be appearing to oppose the application. To

20 date, our office has not heard from defendant. Finally, I stated we would be serving the

21 application and all supporting documents as soon as they were ready for filing. Attached hereto,

22 marked exhibit 3, is a true and correct copy of my December 13 letter with confirmation sheet of

23 receipt by the recipient.

24       8.      On Sunday, December 13, 2009, I attempted to fax a letter to defendant Mortgage

25 Lenders Network USA, at 1:18 p.m. to 860-344-5707, which is the only number I was able to

26 acquire for a fax number, for their office in Connecticut, which is the address provided on the

27 deed of trust, but received a busy/no signal response on the fax return sheet. I attempted again to

28 fax the letter at 1:56 p.m., and received a busy/no signal reply on the fax return sheet. I then

PLFS' EX PARTE APP ISO REQ FOR TRO AND PRELIM INJUNCTION          -9-

1    telephoned their corporate office, in Connecticut, at 860-344-5700, and received the following
2    response: "You have reached the Middlesex Corporate Center. The number you have dialed is
3    not assigned at this time." I tried other telephone numbers for Mortgage Lenders Network, in
4    Illinois and Pennsylvania, but the numbers were "disconnected." Thereafter I checked for a
5    website for Mortgage Lenders Network, and found one "Mlnusa.com," which is "under
6    construction," according to the website. The website had no information for this company.
7    Attached hereto, collectively marked exhibit 4, are true and correct copies of the letter I
8    attempted to fax, and the fax return sheets advising of no signal/response, as well as a copy of the
9    Mlnusa.com website, which provides no information, along with a copy of the information from,
10   where I obtained the telephone number and fax number for Mortgage Lenders Network.

11        I declare under penalty of perjury under the laws of California that the foregoing is true
12   and correct and that this declaration is executed on December 13, 2009, at Sacramento,
13   California.

14

15

16   CAROL J. SIDHU

17

18

19

20

21

22

23

24

25

26

27

28

PLFS' EX PARTE APP ISO REQ FOR TRO AND PRELIM INJUNCTION                    -10-

# Exhibit 1

```
            ***********************
            ***   TX REPORT   ***
            ***********************

   TRANSMISSION OK

   TX/RX NO             3079
   DESTINATION TEL #    19726617800
   DESTINATION ID
   ST. TIME             12/13 14:17
   TIME USE             00'27
   PAGES SENT              2
   RESULT               OK
```

# BOTTOMLINE LAWYERS

## Facsimile Transmittal Letter

**DATE:**          December 13, 2009
**TO:**            Stephanie N. Goble – NDEx West
**FAX NO.:**       (972) 661-7800
**RE:**            *Edstrom v. NDEx West*

**FROM:**          Carol J. Sidhu
**DOCUMENTS:**     Letter of today's date providing notice of ex parte relief
**# PGS (incl cvr):**  2
**MESSAGE:**       Please call if you have any questions or concerns about the attached letter.

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY TO THE INTENDED RECIPIENT, KNOW THAT ANY USE, DISSEMINATION, DISTRIBUTION, OR COPYING BY YOU OF THIS COMMUNICATION IS

# BOTTOMLINE LAWYERS

December 13, 2009

Stephanie N. Goble
Associate Counsel
NDEx
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001

Facsimile (972) 661-7800
and email stephag@bbwcdf.com

Re: Mortgagor: Daniel and Teri Edstrom
Loan Number: 1115033372
Trustee Sale Number: 20080134014711
Property Address: 2690 Brown Bear Court, Cool, California 95614

Dear Ms. Goble:

The borrowers, Daniel and Teri Edstrom, will be seeking ex parte relief, on Tuesday, December 15, 2009, at 8:15 a.m., in department 9, of the El Dorado County Superior Court, located at 3321 Cameron Park Drive, Cameron Park, California 95682. Specifically, the borrowers will be seeking an order enjoining sale of the captioned property, scheduled for December 16, 2009, at 10 a.m., and a concurrent order to show cause, setting a future hearing, why a preliminary injunction should not issue.

I am required, by the California Rules of Court, rule 3.1204(a) to notify you of the date, time and place of the ex parte application, by no later than 10 a.m. the court day before the ex parte appearqnce (rule 3.1204(c).) I am also required to attempt to determine whether NDEx will appear to oppose the application. Please feel free to telephone our office, at the telephone number below, or by email, at dr@bottomlinelawyers.com, to advise whether you will be appearing to oppose the application.

We will serve the ex parte application and all supporting documents as soon as they are ready for filing. Thank you.

Very truly yours,

BOTTOMLINE LAWYERS

Carol J. Sidhu, J.D.
Legal Assistant

985 Lincoln Way, Suite 206
Auburn, California 95603
Telephone: (530) 888-7100 • Facsimile: (866) 305-1238

**Trustee Sale No. 20080134014711**

From:  C Sidhu <caroljsidhu@yahoo.com>     View Contact
To:  elspring@sbbwcat.com
     Letter to Goble.pdf (40KB)

Dear Ms. Goble:

Please see letter attached re captioned trustee sale, scheduled to proceed on December 16, 2009. Thank you. Carol J. Sidhu.

Carol J. Sidhu
BottomLine Lawyers
Box 237
Auburn, CA 95603
T (530) 888-7100
F (866) 305-1238 rh@bottomlinelawyers.com

# Exhibit 2

```
**********************
***   TX REPORT   ***
**********************

TRANSMISSION OK

TX/RX NO              3078
DESTINATION TEL #     17037480183
DESTINATION ID
ST. TIME              12/13 14:15
TIME USE              00'52
PAGES SENT            2
RESULT               OK
```

# BOTTOMLINE LAWYERS

## Facsimile Transmittal Letter

**DATE:** December 13, 2009
**TO:** MERS
**FAX NO.:** (703) 748-0183
**RE:** *Edstrom v. NDEx West*

**FROM:** Carol J. Sidhu
**DOCUMENTS:** Letter of today's date providing notice of ex parte relief
**# PGS (incl cvr):** 2
**MESSAGE:** Please call if you have any questions or concerns about the attached letter.

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED, IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY TO THE INTENDED RECIPIENT, KNOW THAT ANY USE, DISSEMINATION, DISTRIBUTION, OR COPYING BY YOU OF THIS COMMUNICATION IS

# BOTTOMLINE LAWYERS

December 13, 2009

MERS                                                                  Facsimile (703)748-0183
1818 Library Street, Suite 300
Reston, Virginia 20190

Re: Mortgagor: Daniel and Teri Edstrom
Loan Number: 1115033372
Trustee Sale Number: 20080134014711
Property Address: 2690 Brown Bear Court, Cool, California 95614

Dear MERS:

The borrowers, Daniel and Teri Edstrom, will be seeking ex parte relief, on Tuesday, December 15, 2009, at
8:15 a.m., in department 9, of the El Dorado County Superior Court, located at 3321 Cameron Park Drive,
Cameron Park, California 95682. Specifically, the borrowers will be seeking an order enjoining sale of the
captioned property, scheduled for December 16, 2009, at 10 a.m., and a concurrent order to show cause,
setting a future hearing, why a preliminary injunction should not issue.

I am required, by the California Rules of Court, rule 3.1204(a) to notify you of the date, time and place of the
ex parte application, by no later than 10 a.m. the court day before the ex parte appearqnce (rule 3.1204(c).)  I
am also required to attempt to determine whether NDEx will appear to oppose the application. Please feel
free to telephone our office, at the telephone number below, or by email, at dr@bottomlinelawyers.com, to
advise whether you will be appearing to oppose the application.

We will serve the ex parte application and all supporting documents as soon as they are ready for filing.
Thank you.

Very truly yours,

**BOTTOMLINE LAWYERS**

Carol J. Sidhu, J.D.
Legal Assistant

985 Lincoln Way, Suite 206
Auburn, California 95603
Telephone: (530) 888-7100 • Facsimile: (866) 305-1238

# Exhibit 3

```
**********************
***  TX REPORT   ***
**********************

TRANSMISSION OK

TX/RX NO              3076
DESTINATION TEL #     18664536315
DESTINATION ID
ST. TIME              12/13 14:13
TIME USE              00'41
PAGES SENT            2
RESULT               OK
```

# BOTTOMLINE LAWYERS

## Facsimile Transmittal Letter

| | |
|---|---|
| **DATE:** | December 13, 2009 |
| **TO:** | America's Servicing Company |
| **FAX NO.:** | (866) 453-6315 |
| **RE:** | *Edstrom v. NDEx West* |

| | |
|---|---|
| **FROM:** | Carol J. Sidhu |
| **DOCUMENTS:** | Letter of today's date providing notice of ex parte relief |
| **# PGS (incl cvr):** | 2 |
| **MESSAGE:** | Please call if you have any questions or concerns about the attached letter. |

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY TO THE INTENDED RECIPIENT, KNOW THAT ANY USE, DISSEMINATION, DISTRIBUTION, OR COPYING BY YOU OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

# BOTTOMLINE LAWYERS

December 13, 2009

America's Servicing Company                                      Facsimile (866) 453-6315
Post Office Box 10388
Des Moines, Iowa 50306-0388

Re: Mortgagor: Daniel and Teri Edstrom
Loan Number: 1115033372
Trustee Sale Number: 20080134014711
Property Address: 2690 Brown Bear Court, Cool, California 95614

Dear America's Servicing Company:

The borrowers, Daniel and Teri Edstrom, will be seeking ex parte relief, on Tuesday, December 15, 2009, at 8:15 a.m., in department 9, of the El Dorado County Superior Court, located at 3321 Cameron Park Drive, Cameron Park, California 95682. Specifically, the borrowers will be seeking an order enjoining sale of the captioned property, scheduled for December 16, 2009, at 10 a.m., and a concurrent order to show cause, setting a future hearing, why a preliminary injunction should not issue.

I am required, by the California Rules of Court, rule 3.1204(a) to notify you of the date, time and place of the ex parte application, by no later than 10 a.m. the court day before the ex parte appearance (rule 3.1204(c).)  I am also required to attempt to determine whether NDEx will appear to oppose the application. Please feel free to telephone our office, at the telephone number below, or by email, at dr@bottomlinelawyers.com, to advise whether you will be appearing to oppose the application.

We will serve the ex parte application and all supporting documents as soon as they are ready for filing. Thank you.

Very truly yours,

BOTTOMLINE LAWYERS

Carol J. Sidhu, J.D.
Legal Assistant

985 Lincoln Way, Suite 206
Auburn, California 95603
Telephone: (530) 888-7100 • Facsimile: (866) 305-1238

**Exhibit 4**

```
*****************************
***   ERROR TX REPORT    ***
*****************************
```

TX FUNCTION WAS NOT COMPLETED

| | |
|---|---|
| TX/RX NO | 3080 |
| DESTINATION TEL # | 18603445707 |
| DESTINATION ID | |
| ST. TIME | 12/13 14:56 |
| TIME USE | 00'36 |
| PAGES SENT | 0 |
| RESULT | NG      #0018 BUSY/NO SIGNAL |

# BOTTOMLINE LAWYERS

## Facsimile Transmittal Letter

**DATE:** December 13, 2009
**TO:** Mortgage Lenders Network
**FAX NO.:** (860) 344-5707
**RE:** *Edstrom v. NDEx West*

**FROM:** Carol J. Sidhu
**DOCUMENTS:** Letter of today's date providing notice of ex parte relief
**# PGS (incl cvr):** 2
**MESSAGE:** Please call if you have any questions or concerns about the attached letter.

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY TO THE INTENDED RECIPIENT. KNOW THAT ANY USE, DISSEMINATION, DISTRIBUTION, OR COPYING BY YOU OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE.

EXHIBIT 9 PG. 151

```
****************************
***    ERROR TX REPORT   ***
****************************

TX FUNCTION WAS NOT COMPLETED

TX/RX NO             3077
DESTINATION TEL #    18803445707
DESTINATION ID
ST. TIME             12/13 14:18
TIME USE             00'36
PAGES SENT           0
RESULT               NG        #0018 BUSY/NO SIGNAL
```

# BOTTOMLINE LAWYERS

## Facsimile Transmittal Letter

**DATE:**            December 13, 2009
**TO:**              Mortgage Lenders Network
**FAX NO.:**         (860) 344-5707
**RE:**              *Edstrom v. NDEx West*

**FROM:**            Carol J. Sidhu
**DOCUMENTS:**       Letter of today's date providing notice of ex parte relief
**# PGS (incl cvr):** 2
**MESSAGE:**         Please call if you have any questions or concerns about
                     the attached letter.

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY TO THE INTENDED RECIPIENT, KNOW THAT ANY USE, DISSEMINATION, DISTRIBUTION, OR COPYING BY YOU OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE.

EXHIBIT B Page 152

# B O T T O M L I N E   L A W Y E R S

December 13, 2009

Mortgage Lenders Network                                          Facsimile (860)344-5707
213 Court Street
Middlesex Corporate Center
11th Floor
Middletown , CT 06457

Re: Mortgagor: Daniel and Teri Edstrom
Loan Number: 1115033372
Trustee Sale Number: 20080134014711
Property Address: 2690 Brown Bear Court, Cool, California 95614

Dear Mortgagge Lenders Network:

The borrowers, Daniel and Teri Edstrom, will be seeking ex parte relief, on Tuesday, December 15, 2009, at
8:15 a.m., in department 9, of the El Dorado County Superior Court, located at 3321 Cameron Park Drive,
Cameron Park, California 95682. Specifically, the borrowers will be seeking an order enjoining sale of the
captioned property, scheduled for December 16, 2009, at 10 a.m., and a concurrent order to show cause,
setting a future hearing, why a preliminary injunction should not issue.

I am required, by the California Rules of Court, rule 3.1204(a) to notify you of the date, time and place of the
ex parte application, by no later than 10 a.m. the court day before the ex parte appearqnce (rule 3.1204(c).)  I
am also required to attempt to determine whether NDEx will appear to oppose the application. Please feel
free to telephone our office, at the telephone number below, or by email, at dr@bottomlinelawyers.com, to
advise whether you will be appearing to oppose the application.

We will serve the ex parte application and all supporting documents as soon as they are ready for filing.
Thank you.

Very truly yours,

BOTTOMLINE LAWYERS

Carol J. Sidhu, J.D.
Legal Assistant

985 Lincoln Way, Suite 206
Auburn, California 95603
Telephone: (530) 888-7100 • Facsimile: (866) 305-1238

# Mlnusa.com

Reo Companies          Reo Lists          Government Sel

Bank Owned Properties

Mortgage Lenders Network

Foreclosure Real Estate

Reo Property

Government Foreclosure Homes

Non Conforming Mortgage

Home Equity Financing



**Search the Web:**





**Quick Links**

**Broker Price Opinion**

**Bank Foreclosures**

**Residential Property**

Popular Categories:    Government Foreclosure Homes    Reo Property    Non Conforming Mortg





EXHIBIT B - Page 154



**BusinessWeek**

December 13, 2009 4:01 PM ET

# Mortgage Lenders Network USA, Inc.

Snapshot    People

## COMPANY OVERVIEW

Mortgage Lenders Network USA, Inc. engages in originating and servicing Alt-A/non-conforming and conforming mortgage and home equity loans for subprime mortgage brokers and bankers in the United States. The company specializes in providing mortgage and home equity financing to borrowers with impaired credit histories. It operates through retail and wholesale channels. The company has strategic partnership with GMAC Residential Funding Corporation, and USVO. It has retail production centers in Schaumburg, Illinois; and Horsham, Pennsylvania. The company was founded in 1996 and is headquartered in Middletown, Connecticut with regional wholesale offices in Horsham, Pennsylvania; Alpharetta, Geo...

Detailed Description

| | |
|---|---|
| 213 Court Street Middlesex Corporate Center 11th Floor Middletown, CT 06457 | **Phone:** 860-344-5700 **Fax:** 860-344-5707 |

United States

Founded in **1996**

## KEY EXECUTIVES

Mortgage Lenders Network USA, Inc. does not have any Key Executives recorded. If you would like to update data for this company, follow the link below and fill out the form.

Submit Company Information

## SIMILAR PRIVATE COMPANIES BY INDUSTRY

| Company Name | Region |
|---|---|
| The Peoples Bank of Talbotton | United States |
| Farmington Savings Bank | United States |

## RECENT PRIVATE COMPANIES TRANSACTIONS

| Type Date | Target |
|---|---|
| No transactions available in the past 12 months. | |

EXHIBIT B - Page 155

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF EL DORADO
3321 Cameron Park Drive
Cameron Park, California 95682
(530)621-5867                    Fax (530)672-2413

CASE NO. PC 20090773

**EL DORADO CO. SUPERIOR CT.**

                    Plaintiff,

DANIEL MAJOR EDSTROM
vs.

**FILED   DEC 1 4 2009**

                    Defendant.

**BY** _____ _EB_ _____

NDEX WEST LLC

                                                 Deputy

NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE
(Local Rule 7.12.05 and .09)

NOTICE IS HEREBY GIVEN that Case Management and Settlement Conference
authority is delegated to STEPHEN B.R. KELLER, Judge Pro Tem. A
challenge to a judge pro tem on the basis of non-agreement must be
made within 30 days after notice of the delegation or be deemed waived

NOTICE IS HEREBY GIVEN that a CASE MANAGEMENT CONFERENCE in the above
entitled case is set for  2:00 on 03/11/10, in Dept. 10.
3321 Cameron Park Drive, Cameron Park, California.

At the CASE MANAGEMENT CONFERENCE you will be assigned a Dispute Reso-
lution Conference Date, a Mandatory Settlement Conference Date, and a
Trial Date. In lieu of a Dispute Resolution Conference, the parties
may elect mediation, binding arbitration, or judicial arbitration.

In addition, the court may make orders (1)designating the case as a
Limited Civil Action, (2)bifurcating or severing issues, parties, or
causes of action, (3)establishing a discovery plan, (4)scheduling the
exchange of information and discovery with regard to expert witnesses,
and/or (5)scheduling dates for concluding Law and Motion.

A CASE MANAGEMENT STATEMENT must be filed and served not less than
fifteen (15) court days before the Conference.

Your attention is directed to the Local Rules for the Superior Court
of El Dorado County and, in particular, to the rules governing Trial
Court Case Management (rule 7.12.00, et seq.). The Court will require
full compliance therewith.

You must be prepared to discuss all matters and dates which are the
subjects of the Case Management Conference. Telephonic court appear-
ances are provided through CourtCall to the Court. To make arrange-
ments to appear by telephone, please call the Program Administrator
with CourtCall, at (310) 572-4670 or (888) 882-6878 at least five (5)
court days prior to the conference.

                                          Local Form C-1
                                          Rev 1/15/09
CMC1

**E. Romero**

EXHIBIT B - Page 156

CLERK'S CERTIFICATE OF SERVICE

I declare under penalty of perjury that I am over the age of 18 and
not a party to the above action; that a copy of NOTICE OF CASE
ASSIGNMENT AND CASE MANAGEMENT CONFERENCE was placed for mailing
through either the United State Post Office or Inter-Departmental
mail on the parties at the address shown herein.
Executed on 12/14/09, in Cameron Park, California.

Delivered to:

RICHARD A HALL
985 LINCOLN WAY
SUITE 206
~~LINCOLN~~ CA 95603
Auburn

Tania Ugrin-Capobianco, Court Executive Officer

By: _____
Deputy Clerk

EXHIBIT B - Page 157

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

NDEX WEST, LLC, a Delaware limited liability company; MORTGAGE LENDERS NETWORK USA, INC., a Delaware corporation; AMERICA'S SERVICING COMPANY, an entity form unknown; MORTGAGE ELECTRONIC REGISTRATION SERVICES (MERS); and DOES 1-10,000,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DANIEL MAJOR EDSTROM, an individual; and TERI ANNE EDSTROM, an individual,

---

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

EL DORADO CO. SUPERIOR CT.

FILED   DEC 1 4 2009

BY _____
Deputy

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>EL DORADO COUNTY SUPERIOR COURT, 3321 CAMERON PARK DRIVE, CAMERON PARK, CA 95682 | CASE NUMBER:<br>*(Número del Caso):*<br>PC 20090773 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Richard A. Hall (SBN 135483) Bottomline Lawyers, 985 Lincoln Way, Auburn, Ca 95601; Tel(530) 888-7100

| DATE:<br>*(Fecha)*<br>DEC 1 4 2009 | Clerk, by<br>*(Secretario)* _____ | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | SUMMONS | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>www.accesslaw.com |
|---|---|---|

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| RICHARD A. HALL (SBN 135483)<br>BOTTOMLINE LAWYERS<br>985 LINCOLN WAY, SUITE 206<br>AUBURN, CALIFORNIA 95601 | **EL DORADO CO. SUPERIOR CT.** |

TELEPHONE NO.: (530) 888-7100   FAX NO.: (866) 305-1238

ATTORNEY FOR *(Name):* Daniel Major Edstrom and Teri Anne Edstrom

SUPERIOR COURT OF CALIFORNIA, COUNTY OF PLACER
STREET ADDRESS: 3321 Cameron Park Drive
MAILING ADDRESS: Same
CITY AND ZIP CODE: Cameron Park 95682
BRANCH NAME: Cameron Park Branch

CASE NAME: Edstrom v. NDex West

**FILED** DEC 1 4 2009

BY _____

**Deputy**

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 20090773 |
|---|---|---|
| [X] Unlimited   [ ] Limited<br>(Amount   (Amount<br>demanded   demanded is<br>exceeds $25,000)   $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [X] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
        issues that will be time-consuming to resolve        in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive

4. Number of causes of action *(specify):* 32

5. This case [ ] is  [X] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 14, 2009

RICHARD A. HALL (SBN 135483)
_____
(TYPE OR PRINT NAME)                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal Solutions Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10



EXHIBIT B - Page 159

## CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the following document(s):

**NOTICE OF REMOVAL BY DEFENDANT AMERICA'S SERVICING COMPANY PURSUANT TO 28 U.S.C. §1441(b) [FEDERAL QUESTION]** on all interested parties in said case addressed as follows:

Served Electronically via Court's CM/ECF System:
**Served by Other Means:**

Richard A. Hall, Esq.
Bottomline Lawyers
985 Lincoln Way, Suite 206
Auburn, California 95601

Tel: (530) 888-7100                                    Fax (866) 305-1238

☒      **BY MAIL:**   By placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Pasadena, California, in sealed envelopes with postage fully thereon.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. This declaration is executed in Pasadena, California, on **January 13, 2010.**

_____Helene Saller_____                        _____
(Print name)                                              (Signature)